IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 13-cr-00392-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **George Thomas Brokaw,**
2. John J. Pawelski,
3. Mimi M. Vigil, and
4. Clara M. Mueller,

    Defendants.

---

**DEFENDANT GEORGE THOMAS BROKAW'S MOTION
TO REVIEW AND MODIFY CONDITIONS OF RELEASE**

---

George Thomas Brokaw, by his court-appointed attorney, Eric K. Klein of Johnson, Brennan & Klein, PLLC, and pursuant to 18 U.S.C. § 3145(a)(2) and 18 USC § 3142, hereby respectfully moves this Court to review and modify the conditions of release set on October 7, 2013.

**Background**

Mr. Brokaw is a sixty-seven-year-old man with no criminal record. He was arrested in the instant case on October 2, 2013, after he went to F.B.I. headquarters in Colorado Springs to collect items that had been previously seized from his home.[1]

---

[1] On information and belief, government agents contacted Mr. Brokaw and told him that he could recover his property if he came to the F.B.I. This appears to have been a ruse to facilitate Mr. Brokaw's arrest.

Mr. Brokaw and his three co-defendants made their initial appearance on October 2. On that date, the government did not oppose the release of Ms. Vigil and Ms. Mueller on $25,000 unsecured bond with minimal conditions. (Doc. 7, 13, 15.) Mr. Brokaw and Mr. Pawelski were held for a detention hearing, which was set for October 7, 2013, before Magistrate Judge Michael J. Watanabe. (Doc. 7.)

On October 7, 2013, Mr. Brokaw appeared with undersigned counsel before Magistrate Judge Watanabe. The government indicated that it was not seeking pretrial detention of Mr. Brokaw but asked for a $50,000 unsecured bond and several stringent conditions of release including home detention and 24-hour GPS monitoring. Magistrate Judge Watanabe granted the bond and conditions of release as requested by the government. (Doc. 41, 42.)

At the hearing, the Magistrate Judge first heard from defense counsel and then from the government. The government made several factual arguments and introduced two documents as exhibits. As soon as government counsel finished his argument, the Magistrate Judge immediately began making his ruling. The Magistrate Judge afforded the defense no opportunity to respond to the factual allegations or arguments presented by the government. When defense counsel asked to respond, the Magistrate Judge stated that he had made his ruling.[2]

On October 21, 2013, undersigned counsel spoke with James Murphy from United States Probation in Colorado Springs. Mr. Murphy stated that Mr. Brokaw has

---

[2] A transcript of the detention hearing has been ordered but, as of the date this motion is filed, is not yet complete. Accordingly, all representations herein are from undersigned counsel's notes and memory.

2

been doing well on pretrial supervision.  Mr. Murphy stated that Mr. Brokaw has adhered to the schedule that was set and has maintained contact with Mr. Murphy.

### Standard of Review

Pursuant to 8 U.S.C. § 3145(a), this Court determines de novo the necessity of the conditions of release under 18 USC § 3142.  *See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) ("The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo.").  The Court thus does not simply defer to the judgment of the Magistrate, but must reach its own independent conclusion.  *Id.*; *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

### Argument

It is presumed that Mr. Brokaw is to be released on his personal recognizance or an unsecured bond with only those further conditions included in 18 USC § 3142(b).  If such release is insufficient to reasonably assure the appearance of the defendant or the safety of any other person or the community, the Court shall order pretrial release with the "least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(c).  "The doctrine that the federal courts are obligated to release those accused of non-capital offenses under the least restrictive alternative conditions which will provide reasonable assurance that the accused will appear in court is founded on the Eighth Amendment and presumption of innocence."  *United States v. Cowper*, 349 F. Supp. 560, 562 (N.D. Ohio 1972).

As mentioned above, Mr. Brokaw is a sixty-seven-year-old man with no criminal record.  He is a longtime Colorado resident.  He has been married for almost forty-

seven years.  His wife was present for the arraignment and detention hearing.  Mr. Brokaw has three children and eight grandchildren, all of whom live in Colorado.  Mr. Brokaw is actively involved with his children and his grandchildren.

Mr. Brokaw also has a significant history of stable employment.  He worked for twenty-three years for Prudential Insurance, most recently as a sales manager.  After leaving Prudential, Mr. Brokaw continued as a licensed, independent insurance salesman, which he still is today.  He has clients all over the State of Colorado.

Mr. Brokaw is active in his community.  He regularly volunteers with his wife at their church and also at a mission tending to the homeless and needy.

As stated above, Mr. Brokaw was arrested when he walked into the F.B.I. office.

In support of the requested conditions, the government made no assertion that Mr. Brokaw is any sort of danger.  Rather, the government solely argued that the conditions were necessary to counter a risk of flight.  The government argued that home detention and 24-hour GPS monitoring were necessary for Mr. Brokaw—but not for Ms. Vigil or Ms. Mueller—because of what the government claims to be Mr. Brokaw's professed beliefs questioning the United States government's authority over him.  In support of this argument, the government offered two exhibits:

- Exhibit 2[3]: A document entitled, "Confidential Dispatch for the Governor's Eyes Only."[4]
- Exhibit 3: A document entitled, "Response to Order Dated September 13, 2011."

---

[3] There was no Exhibit 1 introduced.
[4] Exhibit 2 is a four-page document.  The first three pages consist of a "Warrant and Orders of Restoration."  The fourth page is a page of signatures that includes a signature purporting to be that of Mr. Brokaw.  The signature page is numbered "page 30 of 79."  There has been no explanation from the government regarding the other 78 pages.

4


The government argued that these documents—a legal exercise of Mr. Brokaw's First Amendment rights—demonstrated such a lack of recognition of government authority that Mr. Brokaw cannot be trusted to come to court when he is supposed to without home detention and 24-hour global positioning monitoring. In addition to these documents, the government proffered that at the time of his arrest, Mr. Brokaw made statements that he did not "consent" to the actions taken by the arresting agents.

Each of these purported reasons for requiring what is surely among the *most* restrictive combination of conditions of release[5] applies equally to Ms. Vigil and/or Ms. Mueller, for whom the government found no need to seek such conditions. Both Ms. Vigil and Ms. Mueller are signatories to Exhibit 2. Ms. Vigil likewise signed Exhibit 3. Furthermore, Exhibit 3 demonstrates that while Mr. Brokaw may object to proceedings against him, he will nonetheless participate in the judicial system. Exhibit 3 indicates that the document was sent to the United States District Court for the District of Colorado, the United States Attorney for the District of Colorado, members of Congress, the Administrative Office of the United States Courts, the Inspector General for the Department of Treasury, and local law enforcement. In no way is this document an indication that Mr. Brokaw is a flight risk, much less one so serious that home detention and 24-hour GPS monitoring are the *least restrictive* conditions that will ensure his appearance in court.

---

[5] Because of the severity of the punishment of home detention, the U.S. Sentencing Guidelines mandate that home detention may be used only as a substitute for imprisonment, U.S.S.G. § 5F1.2, and equates one day of home detention to one day of imprisonment, U.S.S.G. § 5C1.1(e)(3). *See also* 18 U.S.C. § 3553(b)(19) (home detention only as alternative to incarceration); 18 U.S.C. § 353(e)(4) (same).

Regarding comments demonstrating a lack of consent to the actions of the arresting agents, the arrest report indicates that after Mr. Brokaw voluntarily appeared at the FBI, Ms. Vigil and Mr. Brokaw *both* made comments "that they did not consent to being arrested and they wanted this put on the record."  Notably, there is no suggestion that Mr. Brokaw actively resisted arrest or in any way tried to flee.  In fact, the arrest report states, "Other than the various comments made by the arrestees expressing their lack-of-consent [sic], the entire arrest operation, including the processing of the arrestees with the US Marshalls [sic], and the initial court appearance occurred without incident."

In support of its request for these seriously restrictive conditions, the government last relied on an asserted association between Mr. Brokaw and a man named Ronald Hoodenpyle who was previously a defendant in a criminal case in the District of Colorado.  The government asserted that Mr. Brokaw was a flight risk because sometime after Mr. Hoodenpyle failed to appear for his sentencing he was located at a cabin in Grand Lake, and Mr. Brokaw was also there.  The government offered, however, absolutely no evidence that Mr. Brokaw had any idea that Mr. Hoodenpyle had failed to appear for sentencing and was at that time a fugitive or that Mr. Brokaw in any way knowingly aided Mr. Hoodenpyle.  Despite Mr. Hoodenpyle's arrest in Grand Lake being *three years ago*, Mr. Brokaw has never been chared with concealing a person from arrest, aiding a fugitive, or any other offense relating to Mr. Hoodenpyle.  Mr. Brokaw was at that cabin with several other individuals when Mr. Hoodenpyle appeared.  According to reports provided to the defense, after Mr. Hoodenpyle's arrest in Grand Lake, Mr. Brokaw voluntarily spoke to special agents from the Treasury

6

Inspector General for Tax Administration.  According to the agents' report, Mr. Brokaw agreed to speak to the agents and met them at a coffee shop in Colorado Springs.  Mr. Brokaw informed the agents that Mr. Hoodenpyle "had told him that he had received a stay on his sentence."  Mr. Brokaw also told the agents "that he would not have stayed around Hoodenpyle if he had known he was a fugitive."

During the three years since Mr. Hoodenpyle's arrest, federal agents have searched Mr. Brokaw's home, seized his property, and made clear that he was the target of a grand jury investigation.  But Mr. Brokaw never fled or hid.  Quite to the contrary, he tried to become involved in the judicial process; he petitioned his government to complain and even asked to testify before the grand jury.  Additionally, since Mr. Brokaw's release, he has shown the utmost respect for the Court's authority, adhering to his conditions despite any objections he may have.

Mr. Brokaw has been convicted of nothing.  The law presumes that he is innocent.  The law also presumes that he will appear in court upon release on his personal recognizance or an unsecured bond.  The issue here is not whether Mr. Brokaw is a vocal or persistent critic of his government.  The issue here is not whether Mr. Brokaw is guilty of the offenses with which he is charged.  The only issue is whether Mr. Brokaw will appear in court as ordered.  When this Court conducts an independent review of Mr. Brokaw's circumstances, the Court will see that the government's proffered evidence—most of which applies equally to co-defendants without such restrictive conditions—does not overcome the statutory presumption under § 3142(b).  To the extent that the Court finds any additional conditions to be necessary, there are

conditions less restrictive than home detention and 24-hour GPS monitoring that will ensure Mr. Brokaw's appearance in court.

Accordingly, pursuant to 18 U.S.C. § 3145(a)(2), Mr. Brokaw respectfully asks that the Court review the conditions of release imposed by the Magistrate Judge and modify the conditions to mirror those imposed on Ms. Vigil and Ms. Mueller. To the extent that there is any distinction between Mr. Brokaw and these two co-defendants, Mr. Brokaw's $50,000 bond versus their $25,000 bond is sufficient to account for any such difference.

DATED this 21st day of October 2013.

        Respectfully submitted,

        JOHNSON, BRENNAN & KLEIN, PLLC

          s/  Eric K. Klein  
        Eric K. Klein, #42185  
        1470 Walnut Street, Suite 101  
        Boulder, CO  80302  
        Telephone: (303) 444-1885  
        Facsimile:   (866) 340-8286  
        eklein@jbk-law.com  
        *Attorney for George Thomas Brokaw*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October 2013, I electronically filed the foregoing **DEFENDANT GEORGE THOMAS BROKAW'S MOTION TO REVIEW AND MODIFY CONDITIONS OF RELEASE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

All counsel of record.

                                                       *s/ Philip Lieder*
                                                      Philip Lieder