FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2014 FEB 26  PM 4: 02

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Criminal Case No. 13-cr-00392-CMA-2

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | C | |
| Plaintiff | C | |
| | C | |
| **V** | C | **Motion to Dismiss** |
| | C | |
| **JOHN J PAWELSKI** | C | |
| | C | |
| Defendant | C | |
| | C | |

---

## DEFENDANT'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE BASED ON SUPPORTING MEMORANDUM OF LAW RELATED TO 1099OIDS (ORIGINAL ISSUE DISCOUNTS)

Comes now Petitioner, John Joseph Pawelski, and hereby moves the court to dismiss the indictment with prejudice and presents the Memorandum of Law to support the dismissal. Petitioner incorporates Defendant's Memorandum of Law herein, by reference, as if fully set forth herein. Petitioner incorporates Defendant's other filings in this court, by reference, as if fully set forth herein.

This Memorandum supports Defendant's argument that 1099OIDs are perfectly legal and that the government cannot prove a crime and must dismiss the indictment with prejudice.

In fact, investigation shows that for years the Internal Revenue Service and the Treasury Department has accepted 1099OIDs from individuals without incident. The government has failed to produce the original accepted 1099OIDs to Defendant, depriving Defendant of material evidence in Defendant's case, further requiring dismissal of this case with prejudice, in violation of Brady v. Maryland, 373 U.S. 83 (1963).

Further investigation shows that Turbo Tax has 1099OIDs on its web site with instructions for completing them.

Defendant has no mens rea, no willful blindness, and never intended to commit a crime.

Based on the Memorandum of Law attached hereto, Petitioner moves the court to issue an order for dismissal of the indictment with prejudice.

## PRAYER FOR RELIEF

**Defendant moves the court to:**

1. Declare Defendant actually innocent as a matter of law;

2. Dismiss Defendant's indictment with prejudice;

3. Declare that 1099OID's are legal if presented properly.

4. For such other and further relief as the court deems just and proper.

Respectfully submitted,

John Joseph Pawelski
6432 Rockville Drive
Colorado Springs, Colorado

CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Motion to Dismiss and attached Memorandum of Law was filed this 26th day of February 2014 with the Clerk of the Court. Notification of such filing has been sent to all counsel of record.

John Joseph Pawelski
6432 Rockville Drive
Colorado Springs, Colorado

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Criminal Case No. 13-cr-00392-CMA-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2. JOHN PAWELSKI,

      Defendant.

**Memorandum of Law**

    Petitioner, John Joseph Pawelski, presents this Memorandum of Law, establishing that Petitioner committed no crime as a matter of law.

### QUESTIONS PRESENTED

1. Is the Form 1099OID applicable to individuals?

2. Are taxpayers the issuer of the obligation in question?

3. Is the law on this subject matter found at AmJur 2d 12400-12415?

4. Can an individual file a Form 1099OID to recover expenses?

5. Does P.L. 97-258 USC 31, Section 3101 apply?

6. Can the United States of America enter into Treaty agreements for the benefit of the United States citizens?

7. Is there a grantor trust relationship with the petitioner beneficiary?

8. Is there a different mechanism for recoupment?

9. Does Title 15 USC 1692 apply?

10. Is there a bond price differential between the securities spent and the original security known as a Birth Certificate (BC)?

11. Is the creditor legally allowed to file forms 1099OID, 1099-A, 1096, 1040v and Form 1040 for redemption and return of funds?

12. Can the IRS stop said method of filing and restrict an unrestricted right for collections and return of funds/securities?

## STATEMENT OF THE ISSUES

13. Whether Forms 1099OID, 1099-A, 1096, 1040v and Form 1040 for redemption and return of funds are valid.

14. Can the IRS question said method and restrict an unrestricted right for collections and return of funds/securities.

## STATEMENT OF THE FACTS

15. When a child is born at a hospital in the United States a process occurs whereby a birth certificate is issued. Said certificate becomes a registered security that represents that child's life-long labor on a general average basis in admiralty /maritime law. Said Certificate is run through various United States Administrative agencies.

16. Said process creates a trust agreement with the United States Attorney General, see Trust Memorandum.

17. Said process starts at the local hospital, which notifies the local COUNTY for its records, which notifies the STATE SECRETARY OF STATE (birth STATE), which notifies the United States Department of Commerce, which transfers the Certificate to the United States Treasury. The United States Treasury issues approximately nine (9) work orders to various other agencies. One of those is to the Social Security Administration to create (but not necessarily issue) the Social Security card for privileges and benefits with the first bond number listed on the back of the card. One work order is issued to the Internal Revenue Service to enter into their computer to start looking for tax filings in relation to said number among other issues. One work order is issued to the Department of Engraving and Printing (DEP). The DEP in turn issues a work order to the New York Federal Reserve to issue Federal Reserve Notes (FRNs) into circulation using the number on the backside of the Social Security number as law of future interest securities property to back the FRNs placed into circulation.

18. The Social Security Account has ten (10) separate bonds that are held at the Depository Trust Company and noted on the backside of the SS Card, a letter with eight digits. The CUSIP number is a zero plus the eight digits that can be tracked by referencing a NASDAQ computer search.

19. Title 14 Statutes at Large 4 states that U.S. citizens are stockholders of the United States of America.

20. The funds expended by the corporation known as the United States aka United States of America (capitalized or not) are obtained through the birth certificate process of using law of future interest securities to back that nation's currency.

21. Black's Law Dictionary 8th Edition, page 1133, defines "original-issue discount. The difference between a bond's face value and the price at which it is initially sold. – Abbr. OID."

22. The Internal Revenue Service (IRS) Form 1099OID is form used to report "The difference between a bond's face value and the price at which it is initially sold."

23. Barron's Law Dictionary (1991) defines, on page 422, "Redeemable Bond - a bond that is callable for payment by the issuer."

24. Said FRNs are fungible property.

25. Barron's Law Dictionary (1991) defines, on page 216, "Fungible a term applied to goods that are interchangeable or capable of substitution by nature or agreement." "Securities of the same issue are considered fungible; hence a person obligated to deliver securities may deliver any security of the specified issue. U.C.C. 8-107(l)."

26. The older UCC 8-107(1) stated, "(1) Unless otherwise agreed and subject to any applicable law or regulation respecting short sales, a person obligated to transfer securities may transfer any certificated security of the specified issue in bearer form or registered in the name of the transferee, or indorsed to him or in blank, or he may transfer an equivalent uncertificated security to the transferee or a person designated by the transferee."

27. The current section of the UCC regarding transfers is sections UCC 8-209 and 8-303.

28. Encyclopedia of banking and Finance, by Glenn G. Munn, 8th Edition, (1983), page 817, defines "Redeemable. Both bonds and preferred stock are sometimes issued with the redeemable feature-that is, optional retirement before the obligatory maturity."

29. The number on the backside of the Social Security card shows a number. Said number is eight (8) digits with a letter in front. The letter represents which Federal Reserve banking center holds those funds in trust on that bond. For example, the letter "F" would be the Atlanta, Georgia, Federal Reserve center.

30. Whether a party with a Social Security number is using a check book or cash in the form of FRNs, the FRNs are registered securities and the check currency is treated as FRNs. When said party uses said FRNs in commerce they are "redeemed" in the sale/transfer for that party who's Social Security (backside number) Bond is on file with the Depository Trust Company (DTC).

31. The party "born" (The Source) or whose name appears on the Birth Certificate is the source of the original issue of the securities known as FRNs.

32. The birth certificate based "funds" are kept at the DTC and invested in various transactions on planet earth by investment "managers."

33. The total number of bonds or Social Security card numbers (backside) is ten (10); hence there are allegedly 10 different bonds in investment/placement gaining interest.

34. Therefore, it appears that The Source is the ultimate Creditor/Lender and Recipient in some relations and Payor in others.

35. The redemption procedure or process of filing a [1040] "Return" is the process by which The Source makes claim to the fungible bonds (FRNs) exchanged are redeemed back to The Source.

36. A bank/bailee is defined as a party or institution that holds property in trust a grantor or third party bailor.

37. Therefore, when a party of The Source applies to a for-profit, licensed institution called a

"bank" holding registered securities called FRNs for grantors/beneficiaries who may be first party bailors.

38. Barron's Law Dictionary (1991) defines, on page 157, "Draw see draft." On page 156, "Draft an order in writing directing a person other than the maker to pay a specified sum of money to a named person;…"

39. For example, when a party of The Source seeks the assistance of a Federal Reserve chartered Bank for a "loan" what is really happening is the applicant is seeking a draw/draft from his own fungible trust funds to use to acquire a product/service.

40. The method of redemption of The Source's future interest is the filing of IRS Form 1099OID. This shows what was expended by The Source that is being redeemed.

41. In Title 33A American Jurisprudence (AmJur) section 12400 et. seq. the Original Issue Discount is discussed.

In section 12430 "Cash method debt instrument defined. For purposes of the issue price as 12429, a cash method debt instrument is a debt instrument issued in exchange for property (other than new section 38 property) if:
(a) The stated principle amount doesn't exceed a specified dollar limit [Code Sec. 1274A(b); Code Sec. 1274A(c)(2)(A)] ($3,307,400 for sales and exchanges in 2006; [Rev. Rul. 2005-76, 2005-49 IRB 1072]
(b) The lender doesn't use an accrual method of accounting;
(c) The lender isn't a dealer with respect to the property sold or exchanged; [Code Sec. 1274A(c)(2)(B)]
(d) The regular Code Sec. 1274 issue price rules would otherwise have applied to the debt instrument; [Code Sec. 1274A(c)(2)(C)] and
(e) An election to have the debt instrument treated as a cash method debt instrument is made (see 12431) jointly by the borrower and lender. [Code Sec. 1274A(c)(2)(D)]

A debt instrument issued in a debt-for-debt exchange that qualifies as an exchange under Code sec. 1001 is eligible to a cash method debt instrument if the requirements are met." [Reg. 1.1274A-1(c)(3)]

In section 12341. "How to elect cash method debt instrument treatment. The borrower and lender make the election to treat a debt instrument as a cash method debt instrument by jointly signing a statement that includes their names, addresses, and taxpayer identification number; a clear indication that the election is being made; and a declaration that the instrument with respect to which the election is being made fulfills the requirements of a cash method debt instrument. The borrower and lender must sign the statement by the due date (including extensions) for filing the borrower's or lender's return (whichever is earlier) for the tax year in which the instrument is issued, and attach it, or copy, to their timely filed returns." [Reg. 1.1274A-1(c)(1)]

42. In the post-1930s New Deal the UNITED STATES OF AMERICA is a parent company (28 USC 3002(15)(c)) to the STATES of that private Federal Union and is demonstrated by the case of Dyett vs. Turner, 439 P2d 266 (1968). This is significant in that the STATE BIRTH CERTIFICATE represents a future interest in securities by The Source and is lent to the STATE and therefore, to the UNITED STATES OF AMERICA and its alleged parent relations.

43. On STATE OF CALIFORNIA Birth Certificates in the bottom left hand corner it states, "American Bank Note Company." This writer believes that to be a tacit empirical admission that The Source is the ultimate creditor.

## DISCUSSION 1

## THE SECURITIES USED BY A SOURCE, CREDITOR,  IN COMMERCE ARE WORTH LESS THAN THOSE ORIGINALLY PLACED INTO COMMERCE

44. The notions of "fair play and substantial justice" as well as "good faith" in any relation require the Internal Revenue Service to perform the duties agreed upon in the agreement between taxpayer/Authorized Representative/Beneficiary and Trustee/United States Attorney General/Alien Property Custodian (50 USC Appx 12).

45. The United States Constitution states in Article 1 section 10, "no state . . . shall impair the obligation of contract."

46. FACT: all 50 several state constitutions recognize the right to contract in the preamble.

47. FACT: The People have a right to convert their future rights to property if they so choose.

48. FACT: The People have the right to lend their future labor to government(s).

49. FACT: Through the birth Certificate and other relations The People did individually lend their future labor interest by assent to the Federal (and therefore, the STATE) government to cover their issues, underwriting, expenses, etc.

50. FACT: The People are therefore owed property and not the reverse.

51. FACT: The method of collecting on that stock of the corporation known as UNITED

STATES OF AMERICA (14 Stat. 4) can be a number of different ways.

52. FACT: The individual Social Security grantor trust is not domiciled in the continental United States (aka CONUS).

53. FACT: The individual Social Security grantor trust is in most cases domiciled in the United States Virgin Islands (USVI).

54. FACT: Trusts are corporations, Bl. Comm. Vol. 1, Chapter 18.

55. FACT: said trust domiciled in the USVI is a foreign trust to CONUS.

56. FACT: said trust is a grantor trust.

57. FACT: Grantor trusts are trusts whereby the grantor is the same man/woman as the beneficiary.

58. FACT: the object of a grantor trust is to split/separate legal title (decision authority) from equitable/beneficial title (authority to use said property) while protecting said property from third parties via the Trustee.

59. FACT: The People can individually elect to revest title of the Social Security grantor trust by revesting legal title back from the United States Attorney General (USAG) and merging it with their individual beneficial property.

60. FACT: The People operating through the individual Social Security grantor trust can elect to year-by-year collect on the difference of the bonds (BC vs. FRN) by using the 1099OID process to collect on their expenses and offset any existing excise tax liabilities.

61. Therefore, unless the agency and its personnel known as the Internal Revenue Service and the US Treasury can demonstrate that the 1099OID process is incorrect. These charges should be dismissed.

62. It is a matter of historical record that today's taxpayers are using registered securities for acquisition of goods and services.

63. Said securities were originally issued as a result of a creditor's future labor being placed into commerce by way of the securities known as Federal Reserve Notes being placed into

commerce by and through that security instrument known as the BC.

64. The BC is a recognized registered security by the DTC, Federal Reserve, United States Coast Guard, among other administrative agencies and financial institutions.

## DISCUSSION 2

## THE MECHANICS OF FILING FOR THE REFUND ON THE ORIGINAL ISSUE

65. The Internal Revenue Code, if viewed through the "lenses" of the Social Security trust agreement demonstrates; 1) that a security interest was established at birth, 2) said personal property (labor) was placed in trust with the USAG, 3) the Social Security Administration's job is to track covered employment wages, 4) the IRS's job is to track excise taxable activities and keep an accounting of the trust's activities, 5) the Department of Justice's job is to keep track of the trust's accounting during criminal investigations to pay/setoff expenses and reimburse for administrative/court costs as well as reimburse victims from the perpetrators trust account.

66. Title 26 of the United States Code (USC) is the Internal Revenue Code (IRC).

67. Title 26 USC Section 671-679 deals with grantor trust rules.

Subpart E - Grantors and Others Treated as Substantial Owners
    Sec. 671. Trust income, deductions, and credits attributable to grantors and others as substantial owners.
    Sec. 672. Definitions and rules.
    Sec. 673. Reversionary interests.
    Sec. 674. Power to control beneficial enjoyment.
    Sec. 675. Administrative powers.
    Sec. 676. Power to revoke.
    Sec. 677. Income for benefit of grantor.
    Sec. 678. Person other than grantor treated as substantial owner.
    Sec. 679. Foreign trusts having one or more United States beneficiaries.

68. In light of the fact that qualified investors for the United States of America in accord with 14 Stat 4 is a stockholder, Title 26 USC Sec. 163 dealing with interest would apply to the refund through the OID process.

**Title 26 USC Sec. 163. Interest**
**(d) Limitation on investment interest**
    (4) Net investment income
    For purposes of this subsection —

(C) Investment expenses. The term "Investment expenses" **means the deductions allowed** under this chapter (other than for interest) **which are directly connected with the production of investment income.**

**(e) Original issue discount**
(1) In general
In the case of any **debt instrument** issued after July 1, 1982, the portion of the **original issue discount with respect to such debt instrument which is allowable as a deduction** to the issuer for any taxable year shall be equal to the aggregate daily portions of the original issue discount for days during such taxable year.
(2) Definitions and special rules
For purposes of this subsection –
    **(A) Debt instrument**
    **The term "debt instrument" has the meaning given such term by section 1275(a)(1).**


(f) Denial of deduction for interest on certain obligations not in registered form
(1) In general
Nothing in subsection (a) or in any other provision of law shall be construed to provide a deduction for interest on any registration-required obligation unless such obligation is in registered form.
(2) Registration-required obligation
For purposes of this section -
    (A) In general
    The term "registration-required obligation" means any obligation (including any
        obligation issued by a governmental entity) other than an obligation which -
        (i) is issued by a natural person,
        (ii) is not of a type offered to the public,
        (iii) has a maturity (at issue) of not more than 1 year, or
        (iv) is described in subparagraph (B).
    (B) Certain obligations not included
An obligation is described in this subparagraph if -
        (i) there are arrangements reasonably designed to ensure that such obligation will
be sold (or resold in connection with the original issue) only to a person who is not a
United States person, and
        (ii) in the case of an obligation not in registered form -
            (I) interest on such obligation is payable only outside the United States
and its possessions, and
            (II) on the face of such obligation there is a statement that any United
States person who holds such obligation will be subject to limitations under the
United States income tax laws.
    (C) Authority to include other obligations
Clauses (ii) and (iii) of subparagraph (A), and subparagraph
(B), shall not apply to any obligation if -
        (i) in the case of -
            (I) subparagraph (A), such obligation is of a type which the Secretary has
determined by regulations to be used frequently in avoiding Federal taxes, or
            (II) subparagraph (B), such obligation is of a type specified by the
Secretary in regulations, and
        (ii) such obligation is issued after the date on which the
regulations referred to in clause (i) take effect.

(3) Book entries permitted, etc.
For purposes of this subsection, rules similar to the rules of
section 149(a)(3) shall apply.

69. Title 26 USC 165(g) **Worthless Securities**

**(g) Worthless securities**
(1) General rule
If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.
(2) Security defined
For purposes of this subsection, the term "security" means -
  (A) a share of stock in a corporation;
  (B) a right to subscribe for, or to receive, a share of stock in a corporation; or
  (C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form.

70. Title 26 USC Part V lays out the rules for bonds and other debt instruments. The Federal Reserve Notes (FRNs) and the BC are debt instruments. The FRNs are public debt instruments from the Federal Reserve to the US Treasury. The BC is a future interest bond lent from the creditor to the US Treasury through the Bureau of Public Debt and the DTC supporting the public registered securities known as FRNs. However, the time span from original issue of the BC and the use of FRNs by the tax payer is at least 18 years. In that time to maturity (literally) the difference between Original Issue and redemption with the expansion of the FRNs in circulation is quite large because of the expansion and monetization of said securities/ FRNs. Therefore, what is being spent is a diminished security. Therefore, the refund of Original Issue being discounted applies to a transaction which funds have been reduced in value. Therefore the following IRC sections apply and support this premise of refund.

71. And, if any party (IRS included) charges a creditor's account (Social Security Account) for any issue (Liens, Levies, etc.) said party is tapping into the taxpayers' account. And, therefore, the 1099OID, 1099-A, etc. forms would apply towards refund.

72. **PART V - SPECIAL RULES FOR BONDS AND OTHER DEBT INSTRUMENTS**

Subpart
A. Original issue discount.
B. Market discount on bonds.
C. Discount on short-term obligations.
D. Miscellaneous provisions.

**Subpart A - Original Issue Discount**

Sec.
1271. Treatment of amounts received on retirement or sale or
exchange of debt instruments.
1272. Current inclusion in income of original issue discount.
1273. Determination of amount of original issue discount.
1274. Determination of issue price in the case of certain debt
instruments issued for property.
1274A. Special rules for certain transactions where stated
principal amount does not exceed $2,800,000.
**1275. Other definitions and special rules.**

73. When public funds are used to "buy" goods and services, when they are involved in a closed

loop of finance wherein the securities (FRNs or check book currency) used have already

been discounted due to time of delivery and use.

**74. Sec. 1271. Treatment of amounts received on retirement or sale or  exchange of debt**

**instruments**

(a) General rule
For purposes of this title -
(1) Retirement
**Amounts received by the holder on retirement of any debt instrument shall be
considered as amounts received in exchange
therefore.**
(2) Ordinary income on sale or exchange where intention to call
before maturity
(A) In general
If at the time of original issue there was an intention to call a debt instrument before maturity,
any gain realized on the sale or exchange thereof which does not exceed an amount equal to -
(i) the original issue discount, reduced by
(ii) the portion of original issue discount previously includible in the gross income of any
holder (without regard to subsection (a)(7) or (b)(4) of section 1272 (or the corresponding
provisions of prior law)), shall be treated as ordinary income.
(B) Exceptions
This paragraph (and paragraph (2) of subsection (c)) shall not apply to -
(i) any tax-exempt obligation, or
(ii) any holder who has purchased the debt instrument at a premium.
(3) Certain short-term Government obligations
(A) In general
On the sale or exchange of any short-term Government obligation, any gain realized which
does not exceed an amount equal to the ratable share of the acquisition discount shall be

treated as ordinary income.

(B) Short-term Government obligation

For purposes of this paragraph, the term "short-term Government obligation" means any obligation of the United States or any of its possessions, or of a State or any political subdivision thereof, or of the District of Columbia, which has a fixed maturity date not more than 1 year from the date of issue. Such term does not include any tax-exempt obligation.

(C) Acquisition discount

For purposes of this paragraph, the term "acquisition discount" means the excess of the stated redemption price at maturity over the taxpayer's basis for the obligation.

(D) Ratable share

For purposes of this paragraph, except as provided in subparagraph (E), the ratable share of the acquisition discount

is an amount which bears the same ratio to such discount as -

(i) the number of days which the taxpayer held the obligation, bears to

(ii) the number of days after the date the taxpayer acquired the obligation and up to (and including) the date of its maturity.

(E) Election of accrual on basis of constant interest rate

At the election of the taxpayer with respect to any obligation, the ratable share of the acquisition discount is the portion of the acquisition discount accruing while the taxpayer held the obligation determined (under regulations prescribed by the Secretary) on the basis of -

(i) the taxpayer's yield to maturity based on the taxpayer's cost of acquiring the obligation, and

(ii) compounding daily.

An election under this subparagraph, once made with respect to any obligation, shall be irrevocable.

(4) Certain short-term nongovernment obligations

(A) In general

On the sale or exchange of any short-term nongovernment obligation, any gain realized which does not exceed an amount equal to the ratable share of the original issue discount shall be treated as ordinary income.

(B) Short-term nongovernment obligation

For purposes of this paragraph, the term "short-term nongovernment obligation" means any obligation which -

(i) has a fixed maturity date not more than 1 year from the date of the issue, and

(ii) is not a short-term Government obligation (as defined in paragraph (3)(B) without regard to the last sentence thereof).

(C) Ratable share

For purposes of this paragraph, except as provided in subparagraph (D), the ratable share of the original issue discount is an amount which bears the same ratio to such discount as -

(i) the number of days which the taxpayer held the obligation, bears to

(ii) the number of days after the date of original issue and up to (and including) the date of its maturity.

(D) Election of accrual on basis of constant interest rate

At the election of the taxpayer with respect to any obligation, the ratable share of the original issue discount is the portion of the original issue discount accruing while the taxpayer held the obligation determined (under regulations prescribed by the Secretary) on the basis of -

(i) the yield to maturity based on the issue price of the obligation, and

(ii) compounding daily.

Any election under this subparagraph, once made with respect to any obligation, shall be irrevocable.

(b) Exception for certain obligations

(1) In general

This section shall not apply to -

(A) any obligation issued by a natural person before June 9, 1997, and

(B) any obligation issued before July 2, 1982, by an issuer which is not a corporation and is not a government or political subdivision thereof.

(2) Termination

Paragraph (1) shall not apply to any obligation purchased (within the meaning of section 1272(d)(1)) after June 8, 1997.

(c) Transition rules

(1) Special rule for certain obligations issued before January 1, 1955 Paragraph (1) of subsection (a) shall apply to a debt instrument issued before January 1, 1955, only if such instrument was issued with interest coupons or in registered form, or was in such form on March 1, 1954.

(2) Special rule for certain obligations with respect to which original issue discount not currently includible

(A) In general

On the sale or exchange of debt instruments issued by a government or political subdivision thereof after December 31, 1954, and before July 2, 1982, or by a corporation after December 31, 1954, and on or before May 27, 1969, any gain realized which does not exceed -

(i) an amount equal to the original issue discount, or

(ii) if at the time of original issue there was no intention to call the debt instrument before maturity, an amount which bears the same ratio to the original issue discount as the number of complete months that the debt instrument was held by the taxpayer bears to the number of complete months from the date of original issue to the date of maturity, shall be considered as ordinary income.

(B) Subsection (a)(2)(A) not to apply

Subsection (a)(2)(A) shall not apply to any debt instrument referred to in subparagraph (A) of this paragraph.

(C) Cross reference

For current inclusion of original issue discount, see section 1272.

(d) Double inclusion in income not required

This section and sections 1272 and 1286 shall not require the inclusion of any amount previously includible in gross income.

**75. Sec. 1272. Current inclusion in income of original issue discount**

(a) Original issue discount on debt instruments issued after July 1, 1982, included in income on basis of constant interest rate

(1) General rule

For purposes of this title, **there shall be included in the gross income of the holder of any debt instrument having original issue discount issued after July 1, 1982,** an

amount equal to the sum of the daily portions of the original issue discount for each day
during the taxable year on which such holder held such debt instrument.

(iii) Treatment of husband and wife
For purposes of this subparagraph, a husband and wife shall be treated as 1 person. The
preceding sentence shall not apply where the spouses lived apart at all times during the
taxable year in which the loan is made

**Sec. 1273. Determination of amount of original issue discount**
(2) Other debt instruments not issued for property
In the case of any issue of debt instruments not issued for
property and not publicly offered, the issue price of each such
instrument is the price paid by the first buyer of such debt
instrument.
(3) Debt instruments issued for property where there is public
trading
In the case of a debt instrument which is issued for property
and which -
(A) is part of an issue a portion of which is traded on an
established securities market, or
(B)(i) is issued for stock or securities which are traded on
an established securities market, or
(ii) to the extent provided in regulations, is issued for
property (other than stock or securities) of a kind regularly
traded on an established market, the issue price of such debt instrument shall be the fair
market value of such property.

**Sec. 1275. Other definitions and special rules**
(a) Definitions
For purposes of this subpart -
(1) Debt instrument
(A) In general
Except as provided in subparagraph (B), **the term "debt**
**instrument" means a bond, debenture, note, or certificate or**
**other evidence of indebtedness.** [a Federal Reserve Note would qualify under this
definition]

(C) Other debt instruments
In the case of any debt instrument not described in subparagraph (A) or (B), the term "date
of original issue"
means the date on which the debt instrument was issued in a
sale or exchange.
(3) Tax-exempt obligation
The term "tax-exempt obligation" means any obligation if -
(A) the interest on such obligation is not includible in gross income under section 103, or
(B) the interest on such obligation is exempt from tax (without regard to the identity of the
holder) under any other provision of law.
(4) Treatment of obligations distributed by corporations Any debt obligation of a
corporation distributed by such corporation with respect to its stock shall be treated as if it
had been issued by such corporation for property.
(b) Treatment of borrower in the case of certain loans for personal use

(1) Sections 1274 and 483 not to apply
In the case of the obligor under any debt instrument given in consideration for the sale or exchange of property, sections 1274 and 483 shall not apply if such property is personal use property.
(2) Original issue discount deducted on cash basis in certain cases
In the case of any debt instrument, if -
(A) such instrument -
(i) is incurred in connection with the acquisition or carrying of personal use property, and
(ii) has original issue discount (determined after the application of paragraph (1)), and
(B) the obligor under such instrument uses the cash receipts and disbursements method of accounting, notwithstanding section 163(e), the original issue discount on such instrument shall be deductible only when paid.
(3) Personal use property
For purposes of this subsection, the term "personal use property" means any property substantially all of the use of which by the taxpayer is not in connection with a trade or business of the taxpayer or an activity described in section 212. The determination of whether property is described in the preceding sentence shall be made as of the time of issuance of the debt instrument.

**Sec. 1283. Definitions and special rules**
(a) Definitions
For purposes of this subpart -
(1) Short-term obligation
(A) In general
Except as provided in subparagraph (B), the term "short-term obligation" means any bond, debenture, note, certificate, or other evidence of indebtedness which has a fixed maturity date not more than 1 year from the date of issue.
(d) Other special rules
(1) Basis adjustments
The basis of any short-term obligation in the hands of the holder thereof shall be increased by the amount included in his gross income pursuant to section 1281.
(2) Double inclusion in income not required Section 1281 shall not require the inclusion of any amount previously includible in gross income.
(3) Coordination with other provisions
Section 454(b) and paragraphs (3) and (4) of section 1271(a) shall not apply to any short-term obligation to which section 1281 applies.


## DISCUSSION 3

## IRS PERSONNEL CANNOT OVERRULE DECLARATIONS MADE BY THE

## ORIGINAL SOURCE OF THE CREDIT

76. The notions of "fair play and substantial justice" as well as "good faith" in any relation

require plaintiff to perform the duties agreed upon in the agreement between the taxpayer and

the British Crown by International Treaty.

77. Whether the payments were made is determined by the creditor and the creditor, having

personal knowledge of the facts, is the only party that can prove, either by receipts or affidavit, that the bond/securities payments were made.

78. Therefore, whatever is filed by the creditor stands as fact until rebutted with facts to counter the claim.

## DISCUSSION 4

## REDUCTION OF PUBLIC DEBT AND REDEMPTION

79. The notions of "fair play and substantial justice" as well as "good faith" in any relation require the United States Treasury through the IRS to utilize securities tendered by the Source of Original Issue Discount credit (aka petitioner) for debt reduction.

80. Based upon Title 31 USC it appears that there exists provisions for the Source of Original Issue Discount credit to reduce public debt and perform redemption by and through government agencies.

81. TITLE 31 > SUBTITLE III > CHAPTER 31 > SUBCHAPTER I > § 3113

§ 3113. Accepting gifts

(a) **To provide the people of the United States with an opportunity to make gifts to the United States Government to be used to reduce the public debt—**

(1) the **Secretary of the Treasury** may accept for the Government a gift of—

(A) money made only **on the condition that it be used to reduce the public debt;**

(B) an obligation of the Government included in the public debt made only on **the condition that the obligation be canceled and retired and not reissued; and**

(C) other intangible personal property made only on the condition that the property is sold and the proceeds from the sale used to reduce the public debt; and

(2) the Administrator of General Services may accept for the Government a gift of tangible property made only on the condition that it be sold and the proceeds from the sale be used to reduce the public debt.

(b) The Secretary and the Administrator each **may reject a gift under this section when the rejection is in the interest of the Government.**

(c) The Secretary and the Administrator **shall convert a gift either of them accepts under subsection (a)(1)(C) or (2) of this section to money on the best terms available.** If a gift accepted under subsection (a) of this section is subject to a gift or inheritance tax, the Secretary or the Administrator may pay the tax out of the proceeds of the gift or the proceeds

of the redemption or sale of the gift.

(d) **The Treasury has an account into which money received as gifts and proceeds from the sale or redemption of gifts under this section shall be deposited. The Secretary shall use the money in the account to pay at maturity, or to redeem or buy before maturity, an obligation of the Government included in the public debt. An obligation of the Government that is paid, redeemed, or bought with money from the account shall be canceled and retired and may not be reissued. Money deposited in the account is appropriated and may be expended to carry out this section.**

(e)

(1) The Secretary shall redeem a direct obligation of the Government bearing interest or sold on a discount basis on receiving it when the obligation—
(A) is given to the Government;
(B) becomes the property of the Government under the conditions of a trust; or
(C) is payable on the death of the owner to the Government (or to an officer of the Government in the officer's official capacity).
(2) If the gift or transfer to the Government is subject to a gift or inheritance tax, the Secretary shall pay the tax out of the proceeds of redemption.

TITLE 31 > SUBTITLE III > CHAPTER 31 > SUBCHAPTER II > § 3128

§ 3128. Proof of death to support payment
A finding of death made by an officer or employee of the United States Government authorized by law to make the finding is sufficient proof of death to allow credit in the accounts of a Federal reserve bank or accountable official of the Department of the Treasury in a case involving the transfer, exchange, reissue, **redemption**, or payment of obligations of the Government, including obligations guaranteed by the Government for which the Secretary of the Treasury acts as transfer agent.


## DISCUSSION 5

## RECOGNITION FOR AND ADJUSTED BASIS FOR

## DETERMINING GAIN OR LOSS

82. The notions of "fair play and substantial justice" as well as "good faith" in any relation

require with the United States Treasury and IRS therein is to recognize the simple fact that

the FRNs/money of account originally issued on future interest of stockholder/ grantor of the

USA has a mechanism in the tax code to recognize and adjust for determining gain or loss of

said securities relation.

83. 1939 tax code;

UNITED STATES, STATUTES AT LARGE, CONTAINING THE LAWS AND

CONCURRENT RESOLUTIONS ENACTED DURING THE FIRST SESSION OF THE

SEVENTY-SIXTH CONGRESS OF THE UNITED STATES OF AMERICA 1939 AND

TREATIES, INTERNATIONAL AGREEMENTS OTHER THAN TREATIES, AND

PROCLAMATIONS COMPILED, EDITED, INDEXED, AND PUBLISHED BY

AUTHORITY OF LAW UNDER THE DIRECTION OF THE SECRETARY OF STATE

VOLUME 53 PART 1 INTERNAL REVENUE CODE APPROVED FEBRUARY 10, 1939

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON: 1939

84. INCOME TAX 37 Supplement B—Computation of Net Income

[Supplementary to Subchapter B, Part II]

85. **SEC. 112. RECOGNITION OF GAIN OR LOSS.**
(a) GENERAL RULE.—Upon the sale or exchange of property the
entire amount of the gain or loss, determined under section 111, shall be recognized, except
as hereinafter provided in this section.

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its
destruction in whole or in part, theft or seizure, or an exercise of
the power of requisition or condemnation, or the threat or imminence
thereof) is compulsorily or involuntarily converted into property
similar or related in service or use to the property so converted, or into money which is
forthwith in good faith, under regulations prescribed by the Commissioner with the approval
of the Secretary,
expended in the acquisition of other property similar or related in
service or use to the property so converted, or in the acquisition of control of a corporation
owning such other property, or in the
establishment of a replacement fund, no gain or loss shall be recognized. If any part of the
money is not so expended, the gain, if any, shall be recognized, but in an amount not in
excess of the money which is not so expended.

85. **SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.**
(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of
such property; except that—
(1) INVENTORY VALUE.—If the property should have been included in the last inventory,
the basis shall be the last inventory value thereof.
(3) TRANSFER IN TRUST AFTER DECEMBER 31, 1920.—If the property
was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust
by a bequest or devise) the basis shall be the same as it would be in the hands of the grantor,
increased in the amount of gain or decreased in the amount of loss recognized to the grantor
upon such transfer under the law applicable to the year in which the transfer was made.

(6) TAX-FREE EXCHANGES GENERALLY
(9) INVOLUNTARY CONVERSION.—If the property was acquired, after February 28,
1913, as the result of a compulsory or involuntary conversion described in section 112 (f),

the basis shall be the same as in the case of the property so converted, decreased in the amount of any money received by the taxpayer which was not expended in accordance with the provisions of law (applicable to the year in which such conversion was made) determining the taxable status of the gain or loss upon such conversion, and increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion under the law applicable to the year in which such conversion was made.

## DISCUSSION 6

## CLASSES OF TAXPAYERS AND CAPITAL GAINS AND LOSSES

86. The current tax code post 1986 derives its taxing authority through the 1954 and 1939 tax codes and therefore definitions in 1938 apply therein.

87. UNITED STATES STATUTES AT LARGE CONTAINING THE LAWS AND CONCURRENT RESOLUTIONS ENACTED DURING THE THIRD SESSION OF THE SEVENTY-FIFTH CONGRESS OF THE UNITED STATES OF AMERICA 1938 AND TREATIES, INTERNATIONAL AGREEMENTS OTHER THAN TREATIES, AND PROCLAMATIONS.

88. SEC. 4. **SPECIAL CLASSES OF TAXPAYERS**.

(f) Individual citizens of any possession of the United States who are not otherwise citizens of the United States and who are not residents of the United States,—Supplement J.

(g) Individual citizens of the United States or domestic corporations, satisfying the conditions of section 251 by reason of deriving a large portion of their gross income from sources within a possession of the United States,—Supplement J.

89. Trusts are corporations; see Bl. Comm. Vol. 1, Chapter 18. Therefore, a grantor trust is a corporation. The "person", aka TAX PAYER with the SSN, is the grantor trust with the USAG (or his delegate) operating as the trustee for said trust/corporation and said entity is domiciled outside of the several states within the confines of the US Territories.

90. SEC. 117. **CAPITAL GAINS AND LOSSES.**

(a) DEFINITIONS.—As used in this title—

(1) CAPITAL ASSETS.—<u>**The term "capital assets" means property held by the taxpayer**</u> (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1);

(2) SHORT-TERM CAPITAL GAIN.—<u>**The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 18 months**</u>, if and to the extent such gain is taken into account in computing net income;

(3) SHORT-TERM CAPITAL LOSS.—<u>**The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than 18 months**</u>, if and to the extent such loss is taken into account in computing net income;


91. SEC. 23. **DEDUCTIONS FROM GROSS INCOME.**

(d) TAXES OF SHAREHOLDER PAID BY CORPORATION.—The deduction for taxes allowed by subsection (c) shall be allowed to a corporation in the case of taxes imposed upon a shareholder of the corporation upon his interest as shareholder which are paid by the corporation without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes.

(f) **LOSSES BY CORPORATIONS.**—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

(g) CAPITAL LOSSES.—

(1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent **provided in section 117**.

(2) **SECURITIES BECOMING WORTHLESS.**—If any securities (as defined in paragraph (3) of this subsection) become <u>**worthless during the taxable year and are capital assets**</u>, <u>**the loss resulting therefrom shall**</u>, for the purposes of this title, <u>**be considered as a loss from the sale or exchange**</u>, on the last day of such taxable year, <u>**of capital assets**</u>.

(3) **DEFINITION OF SECURITIES.**—As used, in this subsection the term "securities" means (A) **shares of stock in a corporation**, and (B) <u>**rights to**</u> subscribe for or to <u>**receive such shares**</u>.


92. The statutorily constructed scheme to create such a system of "covered employment" with

securities laws was enacted by and through the 1935 Social Security Act. Therein, the above

sections (and more) of the 1938 tax code apply.

## CONCLUSION

93. It would offend the notions of fair play and substantial justice to assert that the IRS can

simply ignore and dismiss "just because they can" filings completed with forms 1099OID,

94. The IRS should return to source that which belongs to The Source when properly presented. The IRS should issue refunds when properly presented as requested or instruct the filer thereof what deficiency with the OID form exists.

95. The IRS should issue the refund when properly presented as requested or instruct the petitioner what deficiency with the OID form that allegedly exists.


RESPECTFULLY SUBMITTED this 26th day of February, 2014.

John Joseph Pawelski