# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff/Respondent | § | |
| V. | § | CASE No. 13-cr-00392 |
| John Joseph Pawelski | § | Copyrighted 2014 |
| Petitioner | § | |
| | § | Verified |

---

## MOTION TO DISMISS BASED ON CRIMINAL ACTIONS BY THE PROSECUTORS, VIOLATION OF *BRADY V. MARYLAND*, THE DOJ'S MASSIVE COVER-UP, AND THE DOJ'S VIOLATIONS OF THE CLEAN HANDS DOCTRINE

**Judge in the Case:**  Christine M. Arguello

U.S. District Court

Alfred A Arraj Courthouse

901 19th Street

Denver, CO. 80202

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP -3 2014

JEFFREY P. COLWELL
CLERK

**Prosecutors in the Case:**

Matthew T. Kirsch

U.S. Department of Justice

1225 17th Street, Suite 700

Denver CO. 80202

Phone:  303-454-0100

Martha A. Paluch

U.S. Department of Justice

1225 17th Street, Suite 700

Denver CO. 80202

Phone:  303-454-0100

John Walsh

U.S. Department of Justice

1225 17th Street, Suite 700

Denver CO. 80202

Phone:  303-454-0100

## A.    The Judge's Responsibilities

After reviewing the evidence presented, the judge in this case is required to dismiss this case with prejudice. Once notified of the evidence of lack or jurisdiction and the subsequent cover-up by the Department of Justice, the judge has the choice of stopping all proceedings and investigating the challenge to its jurisdiction, then dismissing the case, or alternatively, withdrawing from the case as the Judge has declared him/herself in violation of the Separation of Powers Doctrine; as not being an Article III judge; and as in violation of the Judge's Oath of Office and the Canons for Federal Judges (Canon 1: A judge should uphold the integrity and independence of the judiciary; Canon 2: A judge should avoid impropriety and the appearance of impropriety in all activities; Canon 3: A judge should perform the duties of the office fairly, impartially, and diligently).

A presumption now exists that the judge knew the law or where to find it. See Maxims of Law, Bouviers Law Dictionary, Unabridged, *Rawle's* Third Edition, 1856. "*Ignorantia legis neminem excusat.*" If the judge fails to dismiss the indictment with prejudice based on the evidence presented, herein, then the judge has acted as a second prosecutor in this case, practicing law from the bench. See 28 USC section 454 (practicing law from the bench: a high misdemeanor). The case should be dismissed with prejudice based on lack of jurisdiction and dismissed based on judicial bias. See 28 USC section 455.

The court should take notice that any judge that ruled against a challenge to Public Law 80-772 violated the Constitution and their oath of office.

This judge is responsible to the Constitution of the United States, Supreme Court precedent, the Separation of Powers Doctrine, the Code of Judicial Conduct, and the Judge's Oath of Office. The judge is also required to follow 28 USC section 454 (practicing law from the bench, a high misdemeanor) and 28 USC section 455 (judicial bias).

## B.    Example of a Cover-Up

After the 9/11 attacks, the public was told al Qaeda acted alone, with no state sponsors.

But the White House never let it see an entire section of Congress' investigative report on 9/11 dealing with "specific sources of foreign support" for the 19 hijackers, 15 of whom were Saudi nationals.

It was kept secret and remains so today.

President Bush inexplicably censored 28 full pages of the 800-page report. Text isn't just blacked-out here and there in this critical-yet-missing middle section. The pages are completely blank, except for dotted lines where an estimated 7,200 words once stood (this story by comparison is about 1,000 words).

A pair of lawmakers who recently read the redacted portion say they are "absolutely shocked" at the level of foreign state involvement in the attacks.

Reps. Walter Jones (R-NC) and Stephen Lynch (D-Mass.) can't reveal the nation identified by it without violating federal law. So they've proposed Congress pass a resolution asking President Obama to declassify the entire 2002 report, "Joint Inquiry Into Intelligence Community Activities Before and After the Terrorist Attacks of September 11, 2001."

Some information already has leaked from the classified section, which is based on both CIA and FBI documents, and it points back to Saudi Arabia, a presumed ally.

The Saudis deny any role in 9/11, but the CIA in one memo reportedly found "incontrovertible evidence" that Saudi government officials — not just wealthy Saudi hardliners, but high-level diplomats and intelligence officers employed by the kingdom — helped the hijackers both financially and logistically. The intelligence files cited in the report directly implicate the Saudi embassy in Washington and consulate in Los Angeles in the attacks, making 9/11 not just an act of terrorism, but an act of war.

The findings, if confirmed, would back up open-source reporting showing the hijackers had, at a minimum, ties to several Saudi officials and agents while they were preparing for their attacks inside the United States. In fact, they got help from Saudi VIPs from coast to coast:

**LOS ANGELES:** Saudi consulate official Fahad al-Thumairy allegedly arranged for an advance team to receive two of the Saudi hijackers — Khalid al-Mihdhar and Nawaf al-Hazmi — as they arrived at LAX in 2000. One of the advance men, Omar al-Bayoumi, a suspected Saudi intelligence agent, left the LA consulate and met the hijackers at a local restaurant. (Bayoumi left the United States two months before the attacks, while Thumairy was deported back to Saudi Arabia after 9/11.)

**SAN DIEGO:** Bayoumi and another suspected Saudi agent, Osama Bassnan, set up essentially a forward operating base in San Diego for the hijackers after leaving LA. They were provided rooms, rent and phones, as well as private meetings with an American al Qaeda cleric who would later become notorious, Anwar al-Awlaki, at a Saudi-funded mosque he ran in a nearby suburb. They were also feted at a welcoming party. (Bassnan also fled the United States just before the attacks.)

**WASHINGTON:** Then-Saudi Ambassador Prince Bandar and his wife sent checks totaling some $130,000 to Bassnan while he was handling the hijackers. Though the Bandars claim the checks were "welfare" for Bassnan's supposedly ill

wife, the money nonetheless made its way into the hijackers' hands.

Other al Qaeda funding was traced back to Bandar and his embassy — so much so that by 2004 Riggs Bank of Washington had dropped the Saudis as a client.

The next year, as a number of embassy employees popped up in terror probes, Riyadh recalled Bandar.

"Our investigations contributed to the ambassador's departure," an investigator who worked with the Joint Terrorism Task Force in Washington told me, though Bandar says he left for "personal reasons."

**FALLS CHURCH, VA.:** In 2001, Awlaki and the San Diego hijackers turned up together again — this time at the Dar al-Hijrah Islamic Center, a Pentagon-area mosque built with funds from the Saudi Embassy. Awlaki was recruited 3,000 miles away to head the mosque. As its imam, Awlaki helped the hijackers, who showed up at his doorstep as if on cue. He tasked a handler to help them acquire apartments and IDs before they attacked the Pentagon.

Awlaki worked closely with the Saudi Embassy. He lectured at a Saudi Islamic think tank in Merrifield, Va., chaired by Bandar. Saudi travel itinerary documents I've obtained show he also served as the official imam on Saudi Embassy-sponsored trips to Mecca and tours of Saudi holy sites.

Most suspiciously, though, Awlaki fled the United States on a Saudi jet about a year after 9/11.

As I first reported in the book, "Infiltration," quoting from classified US documents, the Saudi-sponsored cleric was briefly detained at JFK before being released into the custody of a "Saudi representative." A federal warrant for Awlaki's arrest had mysteriously been withdrawn the previous day. A US drone killed Awlaki in Yemen in 2011.

**HERNDON, VA.:** On the eve of the attacks, top Saudi government official Saleh Hussayen checked into the same Marriott Residence Inn near Dulles Airport as three of the Saudi hijackers who targeted the Pentagon. Hussayen had left a nearby hotel to move into the hijackers' hotel. Did he meet with them? The FBI never found out. They let him go after he "feigned a seizure," one agent recalled. (Hussayen's name doesn't appear in the separate 9/11 Commission Report, which clears the Saudis.)

**SARASOTA, FLA.:** 9/11 ringleader Mohamed Atta and other hijackers visited a home owned by Esam Ghazzawi, a Saudi adviser to the nephew of King Fahd. FBI agents investigating the connection in 2002 found that visitor logs for the gated community and photos of license tags matched vehicles driven by the hijackers. Just two weeks before the 9/11 attacks, the Saudi luxury home was abandoned. Three cars, including a new Chrysler PT Cruiser, were left in the driveway. Inside, opulent furniture was untouched.

Democrat Bob Graham, the former Florida senator who chaired the Joint Inquiry, has asked the FBI for the Sarasota case files, but can't get a single, even heavily redacted, page released. He says it's a "cover-up."

Is the federal government protecting the Saudis? Case agents tell me they were repeatedly called off pursuing 9/11 leads back to the Saudi Embassy, which had curious sway over White House and FBI responses to the attacks.

Just days after Bush met with the Saudi ambassador in the White House, the FBI evacuated from the United States dozens of Saudi officials, as well as Osama bin Laden family members. Bandar made the request for escorts directly to FBI headquarters on Sept. 13, 2001 — just hours after he met with the president. The two old family friends shared cigars on the Truman Balcony while discussing the attacks.

Bill Doyle, who lost his son in the World Trade Center attacks and heads the Coalition of 9/11 Families, calls the suppression of Saudi evidence a "cover-up beyond belief." Last week, he sent out an e-mail to relatives urging them to phone their representatives in Congress to support the resolution and read for themselves the censored 28 pages.

Astonishing as that sounds, few lawmakers in fact have bothered to read the classified section of arguably the most important investigation in US history.

Granted, it's not easy to do. It took a month long letter-writing campaign by Jones and Lynch to convince the House intelligence panel to give them access to the material.

But it's critical they take the time to read it and pressure the White House to let all Americans read it. This isn't water under the bridge. The information is still relevant today. Pursuing leads further, getting to the bottom of the foreign support, could help head off another 9/11.

As the frustrated Joint Inquiry authors warned, in an overlooked addendum to their heavily redacted 2002 report, "State-sponsored terrorism substantially increases the likelihood of successful and more lethal attacks within the United States."

Their findings must be released, even if they forever change US-Saudi relations. If an oil-rich foreign power was capable of orchestrating simultaneous bulls-eye hits on our centers of commerce and defense a dozen years ago, it may be able to pull off similarly devastating attacks today.

Members of Congress reluctant to read the full report ought to remember that the 9/11 assault missed its fourth target: them.

## C.    What Does A Cover-up Mean to This Case

This cover-up means the Department of Justice does not know how to tell the truth.  In this case the cover-up means that the Department of Justice has engaged in the biggest cover-up in history in order to illegally prosecute people and imprison them without a valid statute.

## D.    Challenge to Jurisdiction

Petitioner incorporates Petitioner's prior filings by reference, as if fully set forth herein.

This challenge to the jurisdiction comes from the Department of Justice's own files and investigation.  It is a challenge to jurisdiction and cover-up by the DOJ.  Jurisdictional challenges are threshold issues, and can be raised at any time even for the first time at oral argument in the Supreme Court.  See *Sibron v. New York*, 392 U.S. 40 (1968), n. 13.

## E.    Summary of the Argument

Petitioner was indicted on September 23, 2013, charged with violations of 18 U.S.C. § 286 – Conspiracy to File False Claims for Refund, 18 U.S.C. § 287 – False Claim for Refund, 18 U.S.C. § 371 – Conspiracy to Corruptly Endeavor to Obstruct or Impede the Due administration of the Internal Revenue Laws, 26 U.S.C. § 7212(a) -- Corrupt Endeavor to Obstruct or Impede the Due Administration of the Internal Revenue Laws. .  At

the time of the Indictment, the prosecutor in this case knew or should have known that he/she was proceeding without jurisdiction and under the cloud of a cover-up by the Department of Justice to conceal their lack of jurisdiction. This cover-up is the largest cover-up in DOJ history.

1. **The Lappin Memorandum**: Petitioner has now obtained evidence of the cover-up by the Department of Justice. Evidence presented by Petitioner now establishes that the Office of Special counsel DOJ; overseen by the Assistant Attorney General of the United States (under the direction of the Attorney General of the United States), in early 2009 advised the DOJ and BOP that Public Law 80-772 is unconstitutional. **Exhibit A,** Memorandum of Harley Lappin. After the review by the Office of Special Counsel, the DOJ and the BOP intentionally decided to cover-up the evidence and continue to illegally prosecute people.

2. **The Declaration of Harry Lappin**: On December 8, 2010, Harley G. Lappin issued

A declaration in a case in the Western District of New York, advising that he had never issue an Internal Memorandum to Staff on July 27, 2009 **Exhibit B,** in which he knowingly perjured himself before a federal court. Not only was the Memorandum issued, but the DOJ immediately covered it up.

3. **Affidavits Confirming Lappin's Perjury:** Two affidavits were received from

people who were in Yazoo City Prison and received the Lappin Memorandum directly from the Warden of Yazoo City prison. **Exhibits C, Exhibit D.**

4. **The Town Hall Meeting:** The Yazoo City Prison Called about 1,800 people into a

town hall meeting in 2010 in which it passed out copies of the Lappin Memorandum. The continued cover-up is no longer possible.

5. **Additional Witnesses Are Available:** Petitioner is contacting additional witnesses that were at the town hall meeting in 2010 to further establish the cover-up by the DOJ.

6. **Statements of Clerks:** Petitioner has now received 5 additional statements by clerks of the House and Senate, proving that Public Law 80-772 is unconstitutional. See **Exhibits E-I**. Those documents are self-authenticating under FRE 902 and have been independently authenticated.

### F.    Some Criminal Statutes Involved

**See 18 USC 1001(a)**:  **a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

**(1)** falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

**(2)** makes any materially false, fictitious, or fraudulent statement or representation; or

**(3)** makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

**See 18 USC 4001(a)**:  "No citizen shall be imprisoned or otherwise detained by the United States without a valid statute."

**See 18 USC section 1590**:

**(a)** Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

**(b)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

Thus, the cover-up involves peonage and slavery.  According to section (b), if the judge intentionally assists in the cover-up, then the Judge is also liable under subsection (a) for maximum penalties of 20 years in prison.

Petitioner has obtained letters from three clerks of the House and one clerk of the Senate admitting that Title 18 is unconstitutional.  Exhibit E-I.

Now, newly discovered evidence proves **Lappin's Memorandum**, the investigation by DOJ attorneys of the Constitutionality of the Statute, and then the DOJ's attempt to cover-up the evidence that people are being imprisoned without statute. Exhibit D.

Since Petitioner has obtained evidence now that attorneys for the government are concealing evidence and falsifying to the court, a presumption now exists that every statement the prosecutors have made in this case is untruthful.

The district courts have now participated in the cover-up, to protect the DOJ. The courts are now equally liable under the conspiracy and aiding and abetting doctrines. The question remains whether the court will support its oath of office or roll over for the DOJ?

**See 18 USC section 4: Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.);**

**See 18 USC section 1590: Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.(b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a);**

**See 18 USC section 1621 (perjury of oath of office); (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony,**

declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

See 18 USC 513(a)(Counterfeit Securities); (a) Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

See 28 USC section 454 (practicing law from the bench):  Any justice or judge appointed under the authority of the United States who engages in the practice of law is guilty of a high misdemeanor.

See 28 USC section 455 (conflict of interest); a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

See Violations of 18 U.S.  Sections 1961-1968- Racketeer Influenced and Corrupt Organizations

See 18 U.S.C. section 1961:  Definitions:  As used in this chapter- (1) "racketeering activity" means (A) 201 relating to bribery; Title 18: .... Section 471, 472, and 473 (relating to  counterfeit securities); section 1341 (relating to mail fraud); section 1343 (relating to wire fraud); section 1503 (relating to obstruction of justice); section 1510 (relating to obstruction of criminal investigations) section 1512 (relating to tampering with a witness, victim, or an informant); sections 1581-1582 (relating to peonage and slavery, and trafficking in persons); section 1956 (relating to the laundering of monetary instruments); section 1587 (relating to engaging in monetary transactions in property derived from specified unlawful activity).

Included in the filings the evidence shows neither the court nor the prosecutor had any legal authority and they are engaging in the act of peonage and slavery:

H.    Summary of the Unconstitutional Acts of Congress and the Department of Justice

The voice vote in the House on Public Law 80-772 was 38-6, in violation of the Quorum Clause of the Constitution. 93 Cong. Record 5049. This was the only vote taken by the House during the 80th Congress.

I.    Due Process

Under both the Fifth and Fourteenth Amendments to the U.S. Constitution, neither

the federal government nor state governments may deprive any person "of life, liberty, or property without due process of law." A similar due process provision was found in the Magna Charta, as well as early state constitutions. Chief Justice William Howard Taft explained the purpose behind the clauses in *Truax v. Corrigan* (1921) as follows: "The due process clause requires that every man shall have the protection of his day in court, and the benefit of the general law, a law which hears before it condemns, which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. It, of course, tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty, and property, which the Congress or the Legislature may not withhold."

I.    New Evidence of the Government Cover-up

At a minimum, since the Lappin Memorandum was sent to BOP staff on 7/27/09, the Department of Justice has engaged in a massive cover-up, violating federal law and attempting to subject Petitioner to bondage, in violations of the provisions on peonage and slavery. Infra.

The Lappin Memorandum was issued to the BOP on 7/27/09. Lappin then denied

he issued the affidavit by declaration under the penalty of perjury on 12/17/10 in a New York federal court.

Now the DOJ is engaged in a massive cover-up while they attempt to prosecute Petitioner for crimes he did not commit. The DOJ has full knowledge of the Lappin memorandum and the research done by DOJ Office of Special Counsel related to that Memorandum. Yet they continue a massive cover-up to illegally imprison people. Neither the DOJ nor the court has jurisdiction over this case.

The cover-up now goes to any judge as well who was required to know the law or where to find it. The actions of the prosecutor and the Judge constitute clear violations of 18 USC section 3231 (perjury of oath of office), 18 USC 513(a) (the issuance of counterfeit securities), 18 USC 1961-1968 (Rico), as well as various other crimes. It might be of note that Petitioner has contacted a major civil rights group for a full scale investigation of the acts of the Prosecutor and Judge in this case.

Some of the Criminal statutes violated by the prosecutor and the court are listed at the beginning of this motion. The court has no alternative. Since no valid statute exists, it must dismiss the case, or declare itself not an Article III Court and dismiss the case based on judicial bias.

### J.   Cases and Statutes That Apply and Are Judicially Noticed

1.   *Carole Anne Bond v. United States*, No. 09-1227, June 16, 2011:  Justice Ginsburg, with whom Justice Breyer joins:  "In this case, Bond argues that the statute under which she was charged, 8 USC section 229, exceeds Congress power because it violates the Ex Post Facto Clause or the Establishment Clause, or the Due Process Clause. Whatever the claim, success on the merits would require reversal of the conviction."

2.   *Ex Parte Siebold*, 100 U.S. 371, 376 (1880):  "A conviction under [such a law] is not merely erroneous, but is illegal and void and cannot be a legal cause of imprisonment."  Id at 376-377.  If a law is invalid as applied to the criminal defendant's conduct the defendant id entitle to go free. For this reason, the court has no 'Prudential' license to decline to consider whether the statute under which the defendant has been charged lacks constitutional application to her [his] conduct."

3.  *State Oil Co. v. Khan*, 522 US 3,20 (1997):  "it is this Court's prerogative alone to

overrule its own precedent."

4.  *United States v. Ballin, Joseph & Co.*, 144 U.S. 1, 3:  "In order for any bill to be

invalid, the journals of both Houses must show that it was passed in the presence of a Quorum."

5.  Article 1, Section 5, Clause 1 of the Constitution:  "Each House shall be the

Judge of the Constitution:  "Each House shall be the Judge of the Elections, Returns and Qualifications

of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller

Number may adjourn from day to day, and may be authorized to compel the Attendance of absent

Members, in such Manner, and under such Penalties as each House may provide."

6.  *McGrath v. Kristensen*, 340 U.S. 162 (1950):  Article III subject matter

jurisdiction questions can be addressed at any time and addressed by federal courts at any time on their

own motion.

7.  *California v. LaRue*, 400 U.S. 109, 112 (1972):  Lack of Article III jurisdiction

cannot be waived and cannot be conferred upon a federal district court by consent, by action, or by

stipulation.

8.  *Stoll v. Gottlieb*, 305 U.S. 171-172 (1938).  The validity of an order on sentencing

of a federal district court depends upon that court having jurisdiction over both the subject matter and

the defendant.

9.  Unless the power or authority of the court to perform a contemplated act can be

found in the constitution or laws enacted therein, it is without jurisdiction and its acts are invalid

(emphasis added).  *Angel v. Bullington,* 330 U.S. 183 (1947); *LeMieux Bros. Inc. v. Tremont Lumber Co.,*

*Ltd.*, 140 F. 2d 387, 389 (5th Cir. 1944); *Thomas v. Arn*, 474 U.S. 140 (1985) (quoting *United States v.*

*Payner*, 447 U.S. 727 (1980)("[e]ven a sensible and efficient use of the supervisory power [of the court]

however, is invalid if it conflicts with constitutional or statutory provisions.  A contrary result would

confer on the judiciary power to disregard the considered limitations of the law it is charged with

enforcing."),

   10. "The United States Attorney is the representative not of an ordinary party to a

controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation

to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but

that justice shall be done.  As such he is in a peculiar and very definite sense the servant of the law, the

twofold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with

earnestness and vigor-indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to

strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a

wrongful conviction as it is to use every legitimate means to bring about a just one.  *Berger v. United*

*States*, 295 U.S. 78, 88 (1935), overruled on other grounds,  Stirone v. United States, 361 U.S. 212 (960).

   11. *Clinton v. City of New York*, 542 U.S. 417 (1998) and *United States v. Munoz-*

*Flores*, 495 U.S. 385 (1990) distinguished *Marshall Field & Co. v. Clark*, 153 U.S. 649 z(1892) stating the

enrolled bill rule in Clark only applies to non-constitutional  violations.

   K.  Violation of the Clean Hands Doctrine

   The government's conduct also violates the **Clean Hands doctrine** and **bars the**

**government from relief** in these proceedings as a matter of law.  *New York Football Giants, Inc. v. Los*

*Angeles Chargers* Football Club, Inc., 291 F.2d 471 (5th Cir. 1961); *Johnson v. Yellow Cab Transit Co*, 321

U.S. 383, 387 (1944)("We may assume that because of the clean hands doctrine, a federal court should not, in

the ordinary case, lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of

consummating a transaction in clear violation of the law"); *McKennon v. Nashville Publishing Co.*, 513 U.S.

352 (1995).  An order or judgment obtained in violation of Due Process, without jurisdiction, or by fraud is

**void**.  *Government Financial Services v. Peyton Place*, 63 F.3d 767, 772-773 (5th Cir. 1995); *New York Life*

*Insurance Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996).  The undisputed fact exists that a fraud, plainly

designed to corrupt the legitimacy of the truth-seeking process, was perpetrated on the court by the prosecution

team in this case.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 247 (1944).  Overruled on other

grounds by *Standard Oil v. United States*, 429 U.S. 17, 18 (1976); *Dixon v. Commissioner of Internal Revenue*,

No. 00-70858 (9th Cir. 1/17/04).  See also *Chambers v. Nasco, Inc.*, 501 U.S. 37, 44 (1991); *Fierro v. Johnson*,

197 F.3d 147, 12 (5th Cir. 1999); *In re Murchison*, 349 U.S. 133, 136 (1955).  "Whenever an allegation is made

that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is

raised.  It is the duty of the district court to examine the charge, since it is that court which is authorized to

supervise the conduct of the members of its bar."  *Gas-A-Tron v. Union*, 34 F.2d 1322 (9th Cir. 1976).

L.   Violation of Brady v. Maryland

In *Brady v. Maryland*, 373 U.S. at 87, the Supreme Court held "that the suppression by the

prosecution of evidence ... violates due process ... irrespective of the good faith or bad faith of the prosecution."

Subsequent to *Brady*, Supreme Court decisions have held that the government has a **constitutionally mandated,**

**affirmative duty to disclose exculpatory evidence** to the defendant to help ensure the defendant's right to a fair trial

under the Fifth and Fourteenth Amendments' Due Process.  *See United States v. Bagley*, 473 U.S. 667, 675 (1985) ("The

Brady rule is based on the requirement of due process.  Its purpose is not to displace the adversary system as the primary

means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur.").

The Court cited as justification for the disclosure obligation of prosecutors "the special role played

by the American prosecutor in the search for truth in criminal trials.  The prosecutor serves as "'the representative ... of a

sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.'"

*Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

Fed. R. Crim. P. 16(c) imposes on the government a continuing duty to disclose additional

evidence or material subject to discovery under the rule.  Fed. R. Crim. P. 16(d)(2) grants the Court discretion to issue

sanctions or other orders "as are just" in the event **the government fails to comply with a discovery request made**

**under the rule.**

## CERTIFICATE OF SERVICE

On this the ___30th___ day of August, a true and correct copy of this Motion was submitted to the clerk of the court with who will submit copies to opposing counsel and all parties involved in this case, sent by first class mail, postage prepaid.

John Joseph Pawelski

Most courts allow sanctions (generally based on Rule 16's authority) for general discovery abuses.  These sanctions include exclusion of evidence at trial, a finding of contempt, granting of a continuance, and even dismissal of the indictment with prejudice.  In example, the Southern District of Florida's Discovery Practices Handbook states that "[i]f a Court order is obtained compelling discovery, unexcused failure to provide a timely response is treated by the Court with the gravity it deserves; willful violation of a Court order is always serious and is treated as contempt."[5]

"If at any time during the course of the proceedings it is brought to the attention of the Court that a party has failed to comply with L.R. Crim. P. 16 [the general discovery rule], the Court may order such party to permit the discovery or inspection, grant a continuance or prohibit the party from introducing evidence not disclosed, or the Court may enter such order as it deems just under the circumstances up to and including the dismissal of the indictment with prejudice.

## M. <u>Prayer for Relief</u>

Petitioner incorporates all paragraphs herein by reference.  Petitioner moves the court to:

Declare Public Law 80-772 (Title 18) Unconstitutional;

Declare the actions of the DOJ and the BOP in their massive cover-up illegal as a matter of law, opening the way for a RICO and/or Qui Tam action against the players;

Declare that Petitioner is actually innocent as a matter of law and order any constraints immediately released;

Refer the prosecutor in this case for investigation and prosecution;

Immediately return all property taken during the search and seizure of September 20, 2012;

Immediately order the expungment of all public and private records, both domestically and internationally of the indictment and supporting documents;

And for such other and further relief as the court deems just and proper.

Respectfully submitted,

John Joseph Pawelski

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff/Respondent | § | |
| v. | § | No. 13-cr-00392 |
| JOHN J PAWELSKI | § | |
| Defendant/Petitioner | § | |
| _____ | § | |

## LIST OF EXHIBITS

A. Harley Lappin Internal Memorandum to Staff

B. Declaration of Harley G. Lappin to a federal court in Which he denied he had ever issued the Memorandum to staff declaring Title 18 IS invalid.

C. Affidavit of Jesse J. Blackbonnet on 8/11/14 proving Lappin's Memorandum was issued to BOP staff and that the DOJ engaged in a massive cover-up to continually imprison people illegally.

D. Affidavit of Jonathan Gapa on 7/3/14, proving Lappin's Memorandum was issued to BOP staff and that the DOJ engaged in a massive cover-up to continually imprison people illegally.

E. Letter from Jeff Trandahl, Clerk of the House related to Unconstitutionality of Title 18 dated 6/29/00.

F. Letter from Karen L. Haas, clerk of the House, related to Unconstitutionality of Title 18 dated 9/11/06.

G. Letter from Loraine C. Miller, clerk of the House, related to the Unconstitutionality of Title 18 dated 8/24/10.

H. Letter from Nancy Erickson, clerk of the Senate related to the Unconstitutionality of Title 18 dated 3/9/09.

I. Letter from Karen L. Haas, clerk of the House, related to Unconstitutionality of Title 18 dated 8/30/06.