# EXHIBIT C

EXHIBIT C

## VERIFIED AFFIDAVIT OF FACT OF Jesse J. Blackbonnet

Date: 8/11/14

The Undersigned Affiant, Jesse J Blackbonnet, a Man, hereinafter "Affiant" does solemnly affirm, declare, verify and state as follows:

1. Affiant is over the age of 21 years.

2. Affiant is competent to state the facts set forth herein and states them under the Penalty of Perjury.

3. Affiant has personal knowledge of the facts stated herein.

4. All the facts stated herein are true, correct, and complete, admissible as evidence, and if called upon as a witness, Affiant will testify to their veracity.

## Plain Statement of Facts

4. Affiant is a Native American Indian, a member of the Rosebud Sioux tribe.

5. Affiant was in the United States Marine Corp from 1977 to 1989 with honorable discharge.

6. Affiant worked for the Scotts Bluff County Sheriff as a Correctional Officer from on or about 1989 until on or about 1990.

7. Affiant moved and worked as a City Police Officer in Hemingford Nebraska from on or about 1990 until on or about 1991.

8. Affiant became a Deputy Sheriff in Scotts Bluff, Nebraska and remained there from 1990 until 1992.

9. Affiant also worked for U.S. Department of the Interior under the Bureau of Indian Affairs as a Federal Officer from on or about 1992 until on or about 1995.

Page 1 | 4

10. Affiant also worked as the Chief of Police for the Cheyenne and Sioux Indian tribes in Eagle Butte South Dakota from on or about 1995 until on or about 1999.

11. Affiant was Chief Executive Officer for six (6) years for the Rosebud Sioux Tribe under William Kindle from on or about 2000 until on or about 2006.

12. Affiant was indicted on 12/19/02 in the U.S. Court for the District of South Dakota, Central Division.

13. Affiant entered a plea agreement on 2/17/06 for violations of 18 USC sections 1153 and 1112.

14. Judgment was entered against Affiant on 7/3/06 and Affiant was sentenced to 64 months custody, 3 years supervised release, and a $100.00 special assessment.

15. Affiant was an Inmate at the U.S. Bureau of Prisons whose number was 12477-073.

16. Affiant was at Coleman USP in Florida from on or about 2007 until on or about 2009.

17. Affiant was transferred to Yazoo City Prison Facility in Yazoo City, Mississippi on or about 2009 until Affiant's release in May of 2010.

18. While at Yazoo City prison, Affiant was housed in the H unit.

19. Affiant, while at Yazoo City prison, took law classes, performed duties as a law clerk, and did legal research in the law library.

20. Affiant did writing for administrative remedies, along with motions for Affiant and other inmates while researching case law on the Lexus-Nexus computer system.

21. Affiant, as part of his general duties would use case law and supporting documents to gain relief for himself and others through the B.O.P. administrative remedy process (BP 8, BP9, and BP10).

22. Affiant would prepare administrative requests for relief to BOP Counselors, Unit Team members, Unit Coordinators, Administration, Information Officers, and Assistant Wardens, depending on which administrative request was submitted.

23. While preparing these requests, Affiant received a copy of an email from BOP staff written from "Harley G. Lappin" <harley.lappin@usdoj.gov>. addressed to BOP staff on or about the spring of 2010 which admitted that Public Law 80-772 (Title 18) was never Constitutionally passed. "See Appendix A", copy of the Lappin Memorandum). This Memorandum was prepared after research by (Office of Legal Counsel of the Department of Justice, the National Archives, and the Clerk of the House of Representatives. "Appendix A".

24. Affiant had the Harley G. Lappin letter/email/ Inmate memo dated July 27, 2009 given to Affiant by Shirley Cox, Unit Manager, at Yazoo City Prison.

25. Unit Team Manager Art Truex also advised that he had knowledge of this letter and the BOP's stance on inmate remedies related this Memorandum.

26. On or about the spring of 2010, Bruce Pearson, Warden of Yazoo City Mississippi along with his executive staff, "i.e. Assistant Warden, Captain and other Administrative Staff" ordered a town hall meeting at each individual unit within the Yazoo Prison to which this inmate memo "the Lappin Letter" was handed out to the inmates individually.

27. Warden Pearson explained how the BOP was going to treat the Lappin letter for inmate remedies who were using the BP Administrative Forms "i.e. BP 8, BP 9, BP 10, etc." as their requests for relief. Warden Pearson also explained that the remedy had to come from the courts or Congress concerning the Lappin letter, not from the BOP.

28. Affiant received this Lappin email from top level staff within Yazoo City Federal prison as an authentic, real, internal document sent from the former acting Director Harley G. Lappin, in present form.

29. The Lappin Memorandum is true, correct and self-authenticating, and has been verified by BOP staff.

## Verification

The Undersigned Affiant, Jesse J. Blackbonnet, a Man, certifies that Affiant has read this Affidavit and issues the same with intent and understanding of purpose and does solemnly certify under penalty of perjury under the laws of the united States of America that the foregoing is true and correct in accordance with 28 USC 1746 (1).

_Jesse J. Black Bonnet_ , Affiant        _11_ day of _August_, 2014 AD
                                         Date

State of _Arizona_ ,        )
                            )
County of _Apache_ ,        )

I swear that on this _11_ day of _August_, 2014 AD, the above named Affiant, Jesse J. Blackbonnet, **appeared before me, of his own free will, and signed this Verified Affidavit of Fact.**

_Gloria Bowman_        My Commission Expires: _5/28/2017_
Notary Public for the State of _Arizona_ .

Notary Public State of Arizona
Apache County
Gloria Bowman
My Commission Expires 05/28/2017

Page 4 | 4

*Appendix A -*

## Harley G. Lappin

**From:** "Harley G. Lappin" <harley.lappin@usdoj.gov>
**Sent:** Monday, July 27, 2009 3:17 PM



Attention all Department Heads, there has been a large volume of inmate Requests for Administrative Remedies questioning the validity of the Bureau's authority to hold or classify them under 18 U.S.C. §§ 4081, et seq., (1948). On the claim that Public Law 80-772 was never passed or signed in the presence of a Quorum or Majority of both Houses of Congress as required by Article I, § 5, Clause 1 of the Constitution. Although most courts have, thus far, relied on Field v. Clark, 143 U.S. 649(1892) to avoid ruling on the merits of these claims, however, there have been some which have stated that they were not bound by the Field case, but those cases did not involve any Quorum Clause challenge. So out of an abundance of caution, I contacted the Office of Legal Counsel, the National Archives and the Clerk of the House of Representatives to learn that there is no record of any quorum being present during the May 12, 1947 vote on the H.R. 3190 Bill in the House (See 93 Cong.Rec. 5049), and the record is not clear as to whether there was any Senate vote on the H.R. 3190 Bill during any session of the 80th Congress. There is only one Supreme Court case that says in order for any bill to be valid the Journals of both Houses must show that it was passed in the presence of a Quorum. See United States v. Ballin, Joseph & Co., 144 U.S. 1, 3 (1892). The Clerk of the House states that the May 12, 1947 vote was a 'voice vote,' but the Parliamentarian of the House states that a voice vote is only valid when the Journal shows that a quorum is present and that it's unlawful for the Speaker of the House to sign any enrolled bill in the absence of a quorum. On May 12, 1947, a presence of 218 Members in the hall of the House was required to be entered on the Journal in order for the 44 Member 38 to 6 voice vote to be legal. It appears that the 1909 version of the Federal Criminal Code has never been repealed. Therefore, in essence, our only true authority is derived from the 1948 predecessor to Public Law 80-772. "Although adjudication of the constitutionality of congressional enactments has generally been thought to be beyond the jurisdiction of federal administrative agencies, this rule is not mandatory," according to the Supreme Court in the case of Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994). Therefore, the Bureau under the advise of the Legal Counsel feels that it is in the best interest of public safety to continue addressing all of these Administrative Remedy Requests by stating that only the Congress or courts can repeal or declare a federal statute unconstitutional.

*Harley G Lappin*

Harley G. Lappin
Director, Federal Bureau of Prisons

7/27/2009