## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 13-cr-00392-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1.  GEORGE THOMAS BROKAW,**
**2.  JOHN J. PAWELSKI,**
**3.  MIMI M. VIGIL, and**
**4.  CLARA M. MUELLER,**

**Defendants.**

_____

## REPORTER'S TRANSCRIPT
## (Status Conference)
_____

Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 11:09 a.m. on the 16th
day of July, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

## A P P E A R A N C E S

**FOR THE PLAINTIFF:**
MATTHEW T. KIRSCH and MARTHA A. PALUCH, U.S. Attorney's
Office - Denver, 1225 17th St., Suite 700, Denver, CO
80202

**FOR DEFENDANT BROKAW:**
Pro Se.
**FOR DEFENDANT PAWELSKI:**
Pro Se.
**FOR DEFENDANT VIGIL:**
JOHN S. TATUM, John S. Tatum, P.C., 12351 E. Cornell Ave.,
Aurora, CO 80014
**FOR DEFENDANT MUELLER:**
MILLER LEONARD, Attorney at Law, 14143 Denver West Pkwy,
Suite 100, Golden, CO 80401

1                          **JULY 16, 2014**

2          (Proceedings commence at 11:09 a.m.)

3          COURT:  You may be seated.

4          Court calls Criminal Case No. 13-cr-00392-CMA,

5   encaptioned United States of America v. George Thomas

6   Brokaw, John J. Pawelski, Mimi M. Vigil and Clara M.

7   Mueller.

8          Would the parties please enter their appearances.

9          MR. KIRSCH:  Good morning, Your Honor, Matthew

10  Kirsch and Martha Paluch appearing for the United States.

11         THE COURT:  Good morning.

12         MR. LEONARD:  Good morning, Your Honor, Miller

13  Leonard on behalf of Clara Mueller.  Ms. Mueller does not

14  appear due to her medical condition.

15         THE COURT:  All right.  Good morning.

16         MR. TATUM:  Good morning, Your Honor.  I am John

17  Tatum on behalf of defendant Mimi Vigil, who is seated

18  with counsel at table.

19         THE COURT:  Good morning.

20         MR. TATUM:  Judge, I apologize, I am the one who

21  was late today, and so I apologize for that.  I made some

22  mistakes in my timing leaving the office.

23         THE COURT: All right.  Don't do it again or you

24  will get a pro bono case assigned to you.

25         MR. TATUM:  Yes, ma'am.

```
 1          THE COURT:  We have, I believe, two of the
 2   defendants representing --
 3          THE DEFENDANT:  George Brokaw.
 4          THE COURT:  Good morning.
 5          THE DEFENDANT:  John Pawelski here.
 6          THE COURT:  Good morning.
 7          All right.  We are here on status conference so we
 8   can see where we are headed with this case and whether we
 9   can get it set for trial.
10          Mr. Leonard, I think I need to begin with you.  You
11   did file a motion for a competency evaluation -- not
12   Mr. Leonard -- yes, you are Miller Leonard.
13          MR. LEONARD:  It is confusing, Your Honor.  My
14   parents apologize.
15          THE COURT:  That's fine.
16          MR. LEONARD:  You filed a motion on behalf of your
17   client for an evaluation, a physical evaluation due to her
18   stroke.  I did grant -- I issued an order granting that
19   evaluation.  I believe I gave 30 days for that evaluation
20   to take place.
21          But I need to find out from the rest of the
22   parties, have you done a speedy trial calculation?  Has
23   anybody done a speedy trial calculation?
24          MR. KIRSCH:  We have done that, Your Honor.  Our
25   calculation is that based on the Court's previous orders
```

1      that the time is excluded up to December 2nd of this year.

2              THE COURT:  Have defendants done a speedy trial

3      calculation?

4              MR. LEONARD:  On behalf of Ms. Mueller, I have not,

5      Your Honor.  December 2nd sounds correct to me.

6              THE COURT:  All right.

7              MR. TATUM:  Your Honor, I haven't independently

8      added up everything, either, but that sounds about right

9      based on the previous orders and also the fact that the --

10     we still haven't resolved the co-conspirator hearsay

11     motions, so.

12             THE COURT:  Right.  I think it is tolled at this

13     point.  Actually, although I don't totally trust it on the

14     CM-ECF calculator, it actually shows January 6th.  But I

15     always tend to be conservative.  I would rather take

16     December 2nd.  The order I issued this morning also tolls

17     speedy trial until we get the evaluation back for

18     Ms. Mueller.

19             So I think we are okay, but I need to know where we

20     are headed with this case.  I believe you all said

21     originally it would take 2 weeks to try.  Is that still

22     the estimate?

23             MR. KIRSCH:  Your Honor, I think we expect that we

24     are going to be able to put on our evidence in less than 2

25     weeks.  We think our evidence is going to take about a

1    week, maybe a day or two outside of a week, but not more

2    than that.  So assuming that the pace of the trial is not

3    far slower than it might be because of procedural issues,

4    we think that we can put our evidence in somewhere between

5    5 and 7 days.

6            THE COURT:  Defense, how long do you think it will

7    take?

8            MR. LEONARD:  Your Honor, Miller Leonard on behalf

9    of Ms. Mueller.  If Ms. Mueller ends up staying in the

10   trial, the concerns that I have are her severely limited

11   physical abilities.  At present I have a client who has

12   right-side paralysis.  She has blood clots in her right

13   leg.  She cannot walk but with a cane, and she has to be

14   very careful about how she walks because she is a severe

15   fall risk.  So she is mostly in a wheelchair when she

16   moves about.  And she cannot use the restroom without

17   assistance.

18           So in conjunction with competency motion, that is

19   one of the reasons why I wanted a physical exam, because

20   it would appear to me, as a lay person, but who has dealt

21   with individuals who have handicap needs, she would need

22   substantial assistance, and that we may be making

23   accommodations to deal with her medical condition.

24           And what those accommodations would be, I can guess

25   at right now, but it would just be that, it would be a

1    guess at this point.

2            THE COURT:  All right.

3            MR. LEONARD:  I'm fearful she couldn't do a full

4    trial day.  I think that would maybe be so stressful on

5    her that she simply just physically couldn't do it.

6            THE COURT:  All right.

7            MR. KIRSCH:  Your Honor, can I give the Court a

8    little more information about that topic.  We talked to

9    Mr. Leonard this morning, and we are going to try to work

10   with Mr. Leonard to see if we can get some additional

11   medical records that perhaps would preempt the need for

12   the full competency evaluation he requested in his motion

13   and that you granted in the order.

14           I know he requested those orders previously and he

15   has had some difficulty in getting those.  And we talked

16   even about the possibility that he might come to you and

17   ask for an order from the Court directed to one of the

18   medical facilities to disclose those records.

19           Depending upon what those records show, it may be

20   that the Government is not going to seek to proceed

21   against Ms. Mueller.  And I just wanted the Court to be

22   aware that we are trying to make efforts to get those

23   records.

24           If we can do that and not incur the cost for the

25   Government or anyone else of doing the full competency

1    evaluation, we will do that.  If we are able to do that we

2    will advise the Court about that.

3         We might also try to work fairly hard over the next

4    couple of weeks to do that and ask Mr. Leonard to hold off

5    on engaging the doctor for that.  If he did that, that

6    would potentially result in a delay of -- could delay it

7    past the 30-day period that the Court has ordered.

8         I think, in the long run, it would be more

9    efficient to do it that way, but I wanted to raise that

10   issue with the Court to make sure if the Court had an

11   issue with us doing that, that we knew that, and that we

12   would -- we can proceed however.

13        THE COURT:  I am always for saving the Government

14   money.  And I just want to make sure that Ms. Mueller's

15   rights are being protected here.  I am not sure -- I

16   signed the order this morning.  I don't know that it has

17   been docketed, but my understanding is we were not looking

18   for a full-blown mental and psychological evaluation.

19        My understanding of the motion was a physical

20   evaluation by Dr. Martinez that would address some of

21   these physical and possibly mental limitations that she

22   has, in terms of recall and that sort of thing.  I was not

23   going to do a full-blown psych evaluation at all.

24        MR. LEONARD:  Your Honor, I apologize if my motion

25   wasn't clear.  In my motion, I was attempting to request a

1    full-blown competency exam and a physical exam in

2    conjunction.

3         THE COURT:  I did not read your motion as saying

4    that, so I ordered a physical exam.  I did not see enough

5    in there that would indicate that there were psychological

6    issues.

7         MR. LEONARD:  Well, I do not believe -- so the

8    Court's understanding is clear, I do not believe that my

9    client suffers from a psychological or psychiatric

10   condition.  I am concerned that the stroke has left her

11   neurologically impaired, to the point that she does not

12   properly understand the proceedings, and that she is

13   unable to assist me in her defense.

14        THE COURT:  Right.  That would be not so much the

15   psychological but the physical that Dr. Martinez would do.

16   That is what I ordered.

17        MR. LEONARD:  And that's -- if that is what

18   Dr. Martinez would perform, I think that would address my

19   issues.  I would not anticipate him coming back saying she

20   suffers from bipolar order or schizophrenia.  I was

21   looking for information on how cognitively impaired he

22   felt a stroke had left her.

23        I just -- after meeting with her -- and I have

24   practiced for 16 years and handled thousands of criminal

25   defense cases, and I would be unable at this point to

1    suggest to my client that if she, for instance, was

2    offered a misdemeanor plea that she would take it, because

3    I am not sure she understands it.

4         I am concerned that she is engaging in masking or

5    coping behavior for her misunderstandings, and I need

6    somebody who understands that from a medical perspective

7    to give me some insight.

8         THE COURT:  Okay.  Well, I would prefer that you

9    all try to work this out before we engage Dr. Martinez and

10   end up spending taxpayer money unnecessarily.

11        So how long do you think that is going to take?

12        MR. LEONARD:  Your Honor, I have attempted to get

13   medical records.  My client has got a medical durable

14   power of attorney, that is her sister.  Her sister doesn't

15   live in Colorado Springs.  I am going to re-engage with

16   the sister and try and get the medical records produced.

17        However, I suspect that in order to get the medical

18   records expeditiously from Penrose, I may need to file a

19   request with the Court ordering that they get those

20   records out.

21        THE COURT:  I would be willing to do that.  I am

22   looking at the order.  I ordered a physical exam.  I did

23   not order a psychological competency exam.

24        MR. LEONARD:  I agree with the Government.  I

25   prefer not to spend money if it can be avoided.  I didn't

1    know who would pay for it.  I didn't know if it was the

2    Court or if I needed to do a CJA 21 request.

3              THE COURT:  I tell you, I don't know how those

4    things work.  I assume it comes from CJA funds.

5              MR. LEONARD:  If that is the case, I will hold off,

6    Your Honor, from presenting a CJA-21 for Dr. Martinez to

7    see if we can get the records produced.

8              THE COURT:  If you need me to sign an order, I

9    would be glad to do so.

10             MR. LEONARD:  Thank you, Your Honor.

11             THE COUR:  So I guess I need to know from the

12   parties, where do you want to go from here?  Do we set it

13   for trial?  Do we wait, have another status conference in

14   2 or 3 months?

15             MR. KIRSCH:  Your Honor, I think the Government's

16   position is that it would make more sense to go ahead and

17   set the case for trial, with the idea that if

18   Ms. Mueller's continued presence -- if she remains a

19   presence in the trial, and that is going to create issues,

20   we could deal with that as the trial got closer.

21             I think it is more likely than not that that would

22   not be an issue by the time we get to trial.  And so our

23   request was going to be that the Court schedule the matter

24   for a trial in November before the speedy trial.

25             THE COURT:  You are not going to get a 3-week trial

1    on my docket before November, I can tell you that.  I

2    don't have anything available for that long until after

3    the first of the year, and probably into February.

4         MR. KIRSCH:  Depending on what the other defendants

5    have to say, I am not certain whether we need 2 weeks or

6    3.  I don't know if that will change the docketing

7    situation.

8         THE COURT:  I don't have 2 weeks any time this

9    year, unless I bump -- let me see what I have.  Actually,

10   I might.  I would have to bump another criminal, but that

11   one may plead out anyway.

12        Mr. Tatum, how long do you think it will take?

13        MR. TATUM:  Your Honor, I am estimating I have 2

14   days of testimony, and possibly 3, although I suspect some

15   of my witnesses may be called by the Government.  I intend

16   to call a few government agents.  But I don't know if they

17   are the same ones they will call.  And so a couple of my

18   witness will be government agents.  Then I will have four

19   to six other witnesses I am anticipating.

20        After the Court rules on the hearsay motions or

21   other things like that, it could change it where we either

22   think we need another witness or don't need another

23   witness.  I am not sure about that.  But I would think I

24   would need, myself, 2 days of trial for defense witnesses,

25   possibly 3.  And I was just chatting briefly with

1    Mr. Pawelski, he thinks the trial will take a month.

2         THE COURT:  It will not take a month, I can tell

3    you that.

4         MR. TATUM:  I think 3 weeks is a fair estimate.

5         THE COURT:  All right.  Mr. Pawelski, why do you

6    think it will take a month?

7         DEFENDANT PAWELSKI:  Well, let me come up here so I

8    get everything on the record.  First of all, Judge, as of

9    today, the real party of interest has not even been

10   defined.  The Indictment claims it is the United States of

11   America.  Mr. Kirsch's response to my questioning about

12   which definition he wanted to use was ruled frivolous, so

13   I don't even know who the plaintiff is at this time.

14        So if we can define that, it is possible that we

15   can go forward a little bit.  But until that is done, I

16   don't see any reason to even anticipate a trial because

17   that needs to be done.

18        THE COURT:  Okay.  All right.

19        DEFENDANT PAWELSKI:  The other thing is, none of my

20   motions, which are all based on case law and statute, have

21   been responded with any facts in law, it is all conclusory

22   and generalizations, claiming they are all frivolous and

23   tax defier rhetoric.

24        And if the congressional statutes are tax defier

25   rhetoric then I don't even know we are all even having a

1    trial, just throw us all in jail.

2         THE COURT:  All right.  Thank you.

3         Mr. Brokaw?

4         DEFENDANT BROKAW:  Yes, Your Honor.  I have some of

5    the same concerns that Mr. Pawelski has.  I don't see this

6    thing moving forward, and I think that in the event that

7    there is a trial, it would be much longer than 2 weeks,

8    because there is a lot of questions and a lot of witnesses

9    I would call to that also.

10        As regards to what Mr. Pawelski said, with the

11   motions that have been submitted to the Court, we haven't

12   got valid answers or I haven't got valid answers to a lot

13   of stuff I put before the Court.

14        Now, the prosecutor did respond to one motion and

15   they said that this was an Article III Court.  And, Your

16   Honor, are you concurring that this venue is based on

17   Article III of the United States Constitution?

18        THE COURT:  I believe this is a proper matter

19   before the Article III Courts.

20        DEFENDANT BROKAW:  Thank you.  That is what I

21   understand.  And this is court of record under the

22   Constitution with all of my protected rights, which are

23   guaranteed under the Constitution; is that correct?

24        THE COURT:  Yes, that's correct.

25        DEFENDANT BROKAW:  Thank you very much.  Then I

1    have some of the same concerns that Mr. Pawelski has about

2    who the real party of interest is and who the plaintiff is

3    and so forth.  And I will be submitting a lot more motions

4    into the court to get some of those answers -- to get at

5    some of those answers as to who the real parties of

6    interest are in this matter.

7         THE COURT:  The real party of interest is the

8    United States Government, and that is not going to change.

9         DEFENDANT BROKAW:  The United States Government.

10   Okay.  That is on the record.  Thank you, I guess that is

11   all I have right now.

12        THE COURT:  All right.  This Court is going to set

13   this matter for a 3-week trial beginning November 3rd,

14   which means that I will more than likely need to bump that

15   civil trial that is scheduled, but that will give us 3

16   weeks.  And I have a criminal trial that I will have to

17   juggle, but in order to get this set for a 3-week trial,

18   we will schedule it for November 3rd.

19        Mr. Tatum?

20        MR. TATUM:  Your Honor, I hate to bring a personal

21   problem up, but I recently learned a few weeks ago that I

22   am going to be a first-time grandfather about the week of

23   Thanksgiving.  That is the estimate.  And I have planned

24   to take that time in November, you know, a week or so --

25   you never know when these things are going to happen, so

1    we haven't bought plane tickets and things, but the due

2    date for my daughter-in-law is about -- they live in

3    California.

4         And so, you know, I understand Mr. Kirsch and

5    everybody would like to have this case go forward, and I

6    don't want to be obstreperous or anything, but this is

7    something that really is important to me.  And I've got to

8    tell you, if my daughter-in-law were in labor and there is

9    some complications and things like that, and I am a

10   first-time grandfather, I would not be emotionally fit to

11   try a case.

12        And I don't have any reason to believe there is

13   going to be problems, but you never know in these

14   situations.  You never know if the baby is born early or

15   late.  We could get it November 3rd.  It might not be a

16   problem at all.  But if we set it November 3rd, then all

17   of a sudden the 17th and we are ready to do closing

18   argument and stuff, and I am told there is some medical

19   emergency with my daughter-in-law, that is why I would

20   really appreciate if we can do this -- I understand the

21   Court has scheduling issues, but I would make myself

22   available the first day after -- the first day after

23   January 1st.

24        And I know you don't have another day in 2014, but

25   I can do it any time in January or February, and I would

1    ask that consideration.

2          THE COURT:  All right.  I would have to bump a

3    2-week trial.  But based on the calculations from CM-ECF,

4    we are looking at January 6th, and we do have actually a

5    stay now with the competency order.  I will set it for

6    January 5th, and I will just have to bump that trial.

7    That means your Christmas vacation is going to be ruined.

8          MR. TATUM:  January 5th is agreeable to Ms. Vigil

9    and myself, Your Honor.

10          THE COURT:  All right.

11          MR. TATUM:  Judge, Ms. Vigil just said something to

12   me that may affect something here.  Can I have one second

13   to talk to her in private?  May we step outside for a

14   second?

15          THE COURT:  You may.

16          So, Mr. Kirsch, Mr. Leonard, does January 5th work?

17   I know it messes up vacation.

18          MR. LEONARD:  Your Honor, it works for Ms. Mueller.

19   I do have a motions hearing scheduled on the 16th of

20   January in front of Judge Brimmer.  However, I assume that

21   if we are in trial he would --

22          THE COURT:  He will work with you.

23          MR. LEONARD:  -- he would work with that.

24          MR. KIRSCH:  Your Honor, I wonder if we could do a

25   little bit -- I don't know if this works for the Court's

```
 1   calendar -- if there is any possibility of doing --
 2   setting the trial to begin on the 12th rather than the
 3   5th.
 4         THE COURT:  I guess I could if it is tolled.  It
 5   will move every day after that.
 6         MR. KIRSCH:  I say that for a personal reason, as
 7   well.  I have a vacation already scheduled essentially for
 8   almost 2 -- not completely, but almost 2 weeks around the
 9   time of Christmas.
10         THE COURT:  The only problem with that is I have to
11   bump 2 trials, and I don't want -- two civil trials.  All
12   right.  Let's take a look, then, at -- go back -- I need
13   to wait for Mr. Tatum.
14         I think we will have to set it for the 3rd of
15   November and hope for the best, because I just don't have
16   any other time.
17         MR. LEONARD:  Your Honor, I have a trial scheduled
18   November 17th.  However, I informed the Boulder County
19   Court Judge I may have a potential federal conflict, so I
20   will file a notice of conflict.
21         THE COURT:  Mr. Tatum, I have been looking, the
22   only time I can do this is November 3rd.  So I am going to
23   set it, and we will have to hope for the best.
24         MR. TATUM:  Yes, ma'am.  Based on what I just
25   spoke -- may I approach the podium?
```

1             THE COURT:  You may.

2             MR. TATUM:  It may turn out that my schedule is not

3    an issue, because what Ms. Vigil would like me to inform

4    the Court is that she has mailed something to the Court

5    called -- and I am probably not going to say this right,

6    something about surrendering the usufruct.  And I don't

7    know what that is or how to spell it.

8             Mr. Kirsch, did you -- he just handed me a

9    document.

10            THE COURT:  And it hasn't been docketed as far as I

11   know.

12            MR. TATUM:  Apparently Mr. Kirsch has received it.

13   I have not.

14            MR. KIRSCH:  A copy was mailed to me, Your Honor,

15   so I brought a copy for Mr. Tatum today.  I don't actually

16   see listed on the -- as parties that were receiving this

17   document, the Court.  So I didn't understand that it was

18   intended to be filed with the Court, but obviously I

19   haven't spoken to Ms. Vigil about that.

20            MR. TATUM:  And then, so anyway, I did not

21   understand what that was, that is why I asked to have a

22   recess outside.  And Ms. Vigil has asked me to inform the

23   Court that she desires to represent herself.

24            THE COURT:  Well, then you will have to file a

25   formal motion and we will move forward on that.  But I

1    will tell you, I do have a motion pending for appointment

2    of advisory counsel, and I am not really very interested

3    in appointing advisory counsel to folks that want to

4    proceed on their own because I think it is a waste of

5    time.  I think it is a waste of taxpayer money.  And I'm

6    still considering that motion.

7         But if she wishes to proceed on her own, then she

8    will have to file a motion, or you will have to file a

9    motion on her behalf, and we will go through the whole

10   colloquy again.

11        We are going to set this matter for trial November

12   3rd, 3 weeks, beginning at 8:30 a.m.  Final pretrial

13   conference will be Thursday, October 23rd, at 3:00 p.m.

14        Mr. Pawelski?

15        DEFENDANT PAWELSKI:  Just a very quick question,

16   Judge.  Since the United States Government is now the

17   party of interest, I am going to need some subpoena forms.

18   Can you tell me where to get those?

19        THE COURT:  Go down to the clerk's office.  You

20   decided to represent yourself, go down to the clerk's

21   office.  You need to familiarize yourself with the rules

22   of this court.

23        DEFENDANT PAWELSKI:  Yes, ma'am.

24        THE COURT:  Mr. Tatum?

25        MR. TATUM:  Judge, is there any possibility that

1    the Court could do the pretrial conference the week

2    before, perhaps on the October 16th.  I have got some -- I

3    have to be down in the Canon City area on the 23rd.

4         THE COURT:  Actually I am out of town that week

5    before.  I can do it earlier in the week.

6         MR. TATUM:  I have got a matter the week of the

7    20th in Canon City.  I will be down in that area all week.

8    Could we do it the week of the 6th or 13th?

9         THE COURT:  I think I can do it -- we can probably

10   do it on the 9th at 3 o'clock.  So October 9th at 3

11   o'clock for final trial prep conference.

12        MR. KIRSCH:  Fine for the Government, Your Honor.

13        MR. LEONARD:  Fine for Ms. Mueller.

14        MR. TATUM:  Thank you, Your Honor.

15        THE COURT:  All right.  No other problems?  All

16   right.  So final trial prep conference is on the 9th at 3

17   o'clock, trial on the 3rd, 3-week jury trial beginning at

18   8:30 on November 3rd.

19        All right.  Anything further?

20        MR. KIRSCH:  Your Honor, I may have missed this,

21   but I don't think that the Court has issued a ruling with

22   respect to the scheduling for the James proffer and

23   related findings.

24        THE COURT:  Actually, no, we haven't for all of the

25   outstanding motions.

1        MR. KIRSCH:  I believe that the proposed order from

2   the parties was filed at Docket No. 223.

3        THE COURT:  223 is a response.

4        MR. KIRSCH:  I think it got docketed as a response

5   to the order that the Court had issued directing the

6   parties.

7        THE COURT:  It is.  And that is why I didn't catch

8   it.  I apologize.  In my docket it is filed as a response,

9   and I don't look at those until I am really getting ready

10  to prepare.  So it is the parties' proposed schedule.

11       MR. KIRSCH:  If it is easier, I can simply tell the

12  Court --

13       THE COURT:  I will enter that order.  So I grant

14  the approval of the proposed scheduling order with respect

15  to the James log, which means that that will be produced

16  as set forth in the schedule.

17       Defendant shall file objections by September 16th.

18  Government will file any objections by September 30th.

19  Then I need the hearing sometime in the month of October.

20  Let's take a quick look.  It will probably have to be that

21  same week of October we are doing the final trial prep.

22       DEFENDANT PAWELSKI:  Judge, did you say the final

23  objections would be September 30th?

24       THE COURT:  No, those are for the Government.  Your

25  responses will be due -- hold on.  Defendants' objections

1    are due September 16th.  Then the Government has until the

2    30th to file its response to those objections.

3         I have a trial scheduled that week that just got

4    set.  We scheduled a final trial prep conference at 3

5    o'clock on October 9.  Why don't we just -- Ms. Hartmann,

6    you will have to help me out here.

7         COURTROOM DEPUTY:  How much time do we need, Your

8    Honor?

9         THE COURT:  Probably the afternoon.  So you

10   suggested October 3rd, the afternoon?

11        COURTROOM DEPUTY:  Yes, Your Honor.

12        THE COURT:  Why don't we set Friday, October 3rd --

13   actually, let's do the morning, Friday, October 3rd at 10

14   a.m. for an all motions hearing, including the James

15   hearing, all outstanding motions I have not ruled on.

16        Okay.  Mr. Tatum?

17        MR. TATUM:  Your Honor, on behalf of Ms. Vigil, one

18   last matter.  I don't know, I don't remember seeing a

19   ruling on this, but we filed Document No. 220 about the

20   17th of June, wherein we requested modification of

21   Ms. Vigil's conditions of release to permit her to have a

22   couple hours visitation per week with Ms. Mueller.

23        And basically I explained that their conditions of

24   bond prohibit contact between the co-defendants.  And

25   Ms. Mueller and Ms. Vigil have been friends.  And in light

1  of the stroke information that you have been given,

2  Ms. Vigil and Ms. Mueller would like to be able to visit

3  with each other a couple hours a week, just socially,

4  because of -- basically, because of Ms. Mueller's health

5  conditions.

6          THE COURT:  I will -- I remember reviewing it when

7  it came in.  I remember reviewing it.  I thought there was

8  a response by the Government, but I don't see it now.

9          MR. TATUM:  They opposed it.  I don't know what

10  their grounds were specifically.

11          THE COURT:  Maybe I was waiting for that to come

12  in.

13          MR. KIRSCH:  We didn't file a response, Your Honor.

14          THE COURT:  I was waiting for a response to come

15  in.

16          MR. KIRSCH:  That is our fault, Your Honor.  We

17  were opposing it on the grounds that motivated the order

18  in the first place; that we were concerned that the

19  contact might involve communication about the trial or

20  about additional actions that are of the same kind that

21  support the charges that are contained in the Indictment.

22          I know that there were modifications made for

23  Mr. Brokaw and Mr. Pawelski once they began representing

24  themselves, and we didn't oppose those because we

25  understood the necessity of communication for them in the

1    sense that they were representing themselves.

2         We didn't understand that same necessity to exist

3    for Ms. Vigil, and that was the nature of our opposition.

4         THE COURT:  All right.  I understand that.  Really,

5    Ms. Vigil's concern is on a personal level because of a

6    long-term friendship and a friend who is in need of some

7    sort of companionship due to the physical limitations that

8    her stroke has imposed upon her.

9         MR. TATUM:  That's right, Judge.  You know, in

10   light of what has been -- the record that has been made

11   this morning with respect to the Government indicating

12   that there is some probability that Ms. Mueller may not

13   even be in the trial within the next month, it would seem

14   that the current concerns -- I am not making light of

15   their concerns, I understand their concerns, but it just

16   seems like their concerns are much more minimal now than

17   they would be but for the stroke and the record that has

18   been made this morning.

19        So I would ask the Court to grant that request.

20        THE COURT:  All right.  Mr. Leonard?

21        MR. LEONARD:  Thank you, Your Honor.  I have no

22   opposition to them having contact.  I do -- I would

23   request the Court make it abundantly clear to Ms. Vigil

24   that she is not to talk about this case with my client.  I

25   have two concerns on that; one, the general concern that

1    caused the order to be issued in the first place.  Two, my

2    client at present really didn't have the memory of this,

3    and I don't want her memory to be created by somebody

4    else's version of events.

5         THE COURT:  Would you submit to me a form order

6    that would put in the language that you wish to have to

7    protect your client's interest?

8         MR. LEONARD:  Thank you, Your Honor, I will.

9         THE COURT:  All right.  Is there anything further?

10        MR. KIRSCH:  Your Honor, can I just ask one other

11   clarification?  I believe it was Mr. Brokaw who suggested

12   that he had a number of additional motions that he was

13   going to file.  My understanding was that the motion

14   filing deadline has passed.

15        THE COURT:  It has passed.

16        MR. KIRSCH:  And so I just wanted to clarify

17   whether or not, if he wanted to do that, if he was going

18   to need to justify the untimeliness of those motions in

19   addition to simply filing the motions before -- really,

20   what I am asking is are you expecting a response to those,

21   or are you going to order a response if you want a

22   response?

23        THE COURT:  No, I will review them.  The filing

24   deadline for motions has expired, and I am not going to

25   take any new motions unless there is a real justification

1    and a basis set forth as to why I should accept any new

2    motions.

3           There has to be at some point some certainty about

4    what is the universe of motions that are going to be out

5    there.  I already ruled on a number of motions, and I am

6    not going to spend my time ruling on a bunch that are late

7    unless there is a real justification for it.  Merely

8    putting forth there is new evidence without telling me

9    what that is and how it prevented you from filing timely

10   is not going to be sufficient.

11          MR. KIRSCH:  So can we presume, then, that the

12   Court will order us to respond if it felt a response was

13   necessary?

14          THE COURT:  For those I wish a response to, yes.

15          MR. KIRSCH:  Thank you, Your Honor.

16          THE COURT:  All right.  If there is nothing

17   further, then, Court will be in recess.

18          (Proceedings conclude at 11:48 a.m.)

19

20

21

22

23

24

25

1        **R E P O R T E R ' S   C E R T I F I C A T E**

2

3            I, Darlene M. Martinez, Official Certified

4    Shorthand Reporter for the United States District Court,

5    District of Colorado, do hereby certify that the foregoing

6    is a true and accurate transcript of the proceedings had

7    as taken stenographically by me at the time and place

8    aforementioned.

9

10

11           Dated this 27th day of October, 2014.

12

13

14           _____

15           s/Darlene M. Martinez

16           RMR, CRR

17

18

19

20

21

22

23

24

25