**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 13-cr-00392-CMA


**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1.  GEORGE THOMAS BROKAW,**
**2.  JOHN J. PAWELSKI, and**
**3.  MIMI M. VIGIL,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT**
**(Motions Hearing)**
_____

            Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 10:09 a.m. on the 3rd
day of October, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
MATTHEW T. KIRSCH and MARTHA A. PALUCH, U.S. Attorney's
Office - Denver, 1225 17th St., Suite 700, Denver, CO
80202

**FOR DEFENDANT BROKAW:**
Pro Se.
**FOR DEFENDANT PAWELSKI:**
Pro Se.
**ADVISORY COUNSEL DEFENDANT PAWELSKI:**
RICHARD N. STUCKEY, Attorney at Law, P.C., 1801 Broadway,
#1100, Denver, CO 80202
**FOR DEFENDANT VIGIL:**
Pro Se.

1                          **OCTOBER 3, 2014**

2              (Proceedings commence at 10:08 a.m.)

3              THE COURT:  You may be seated.

4              Court calls Criminal Case No. 13-cr-00392-CMA,

5    encaptioned United States of America v. George Thomas

6    Brokaw, John J. Pawelski and Mimi M. Vigil.

7              Counsel, parties, would you please enter your

8    appearances.

9              MR. KIRSCH:  Good morning, Your Honor, Matthew

10   Kirsch and Martha Paluch appearing for the United States.

11   We also have TIGTA Special Agent Klaton Knabb at counsel

12   table.

13             THE COURT:  Would the defendants please enter their

14   appearances.  You can remain at the table.  I just need

15   you to enter appearances to show that you are here.

16             DEFENDANT BROKAW:  Your Honor, on and for the

17   public record, my name is private, and I will not state it

18   for the public record.  I did have an entry of appearance

19   that appeared on the docket as of Tuesday of this week, I

20   believe, which states my position.

21             If this matter is regards to the all capitalized

22   name on the birth certificate, which I hold up here, a

23   certified copy of the birth certificate, an authenticated

24   certified copy --

25             THE COURT:  Would you please state your name for

1    the record.

2         DEFENDANT BROKAW:  I conditionally accept this as

3    the general executor.

4         THE COURT:  Would you please state your name for

5    the record.

6         DEFENDANT BROKAW:  I said my name is private.

7         THE COURT:  You are in a public hearing, and if you

8    file a motion -- Mr. Brokaw, if you file a motion to

9    maintain that it is private, I can consider it.  But at

10   this point I am going to enter your appearance for you.

11        The Court will note for the record that George

12   Thomas Brokaw is the party who has been speaking.

13        You may be seated.

14        DEFENDANT BROKAW:  This is the all capitalized

15   name.

16        THE COURT:  You may be seated.

17        DEFENDANT BROKAW:  I am the general executor.

18        THE COURT:  Mr. Brokaw, if you want I will call the

19   U.S. Marshal down here and he will remove you from the

20   courtroom if you are going to be disruptive.

21        Ms. Vigil, would you please enter your appearance.

22        DEFENDANT VIGIL:  I have some --

23        THE COURT:  All I need is your name for the record.

24        DEFENDANT VIGIL:  And my name is also private.

25        THE COURT:  All right.  The Court will note that

1    Ms. Mimi M. Vigil is present in court.

2         Mr. Pawelski, do you intend to do the same as your

3    colleagues, or would you please enter your name for the

4    record.

5         DEFENDANT PAWELSKI:  Well, I appear here on special

6    appearance as the general executor of the trust of John J.

7    Pawelski.

8         THE COURT:  Thank you very much.

9         I will tell the defendants, when I set a hearing

10   for 10 o'clock, I mean 10 o'clock.  I am ready to go.

11   Government counsel is ready to go.  You are to show up

12   here on time.  If you need to leave Colorado Springs

13   earlier because of traffic, then you need to leave

14   Colorado Springs earlier.  I will excuse it this one time,

15   but in the future I will sanction you if you appear late

16   in the future.

17        All right.  This matter is before this Court on

18   several motions filed by the defendants.  As a preliminary

19   matter, in light of the fact that the Court has recently

20   dismissed the Indictment counts against Ms. Mueller

21   pursuant to the Government's request, Ms. Mueller's motion

22   for a James hearing, which is Docket No. 141, is denied as

23   moot.

24        I would also like to make some other things very

25   clear at the outset of this hearing, and I want the

1    defendants to take this very seriously throughout the

2    remainder of this case.

3        This Court is mindful of the fact that the

4    litigants are proceeding pro se, and as such I am to

5    construe their pleadings liberally.  And that these

6    pleadings are held to a less stringent standard than

7    formal pleadings drafted by the lawyers.

8        Nevertheless, this Court simply is not going to

9    serve as the pro se litigant's advocate or make arguments

10   for those litigants.  In addition, as I told each of the

11   litigants when they sought to proceed pro se, they are not

12   excused from following the same procedural rules that

13   govern other litigants in this court.

14       Although I have construed the defendants' motions

15   liberally and done my very best effort to understand the

16   arguments that are set forth therein, many of these

17   motions are utterly frivolous and lack any sort of legal

18   analysis.  They fail to apply the specific facts of this

19   case to the legal standards that they cite.

20       And in subsequent filings, the defendants are

21   directed that they must improve upon the chaotic and

22   confused motions practice that they have so far presented

23   to this Court.

24       With that being said, I am going to go ahead and

25   address a number of the motions before we get to the James

1    hearing, itself.  The first one is Mr. Pawelski's amended

2    motion for advisory counsel, which is at Docket No. 218.

3         Mr. Pawelski, in your motion you indicate that you

4    seeking the appointment of advisory counsel because you

5    are not literate in the rules of procedure for the court

6    filings, filing and execution of subpoenas, preparing

7    instructions for trial, and you also need someone to ask

8    you questions should you decide to take the stand.

9         Now, advisory counsel is a lawyer whose duty is to

10   give advice on particular matters in a lawsuit, legally or

11   procedurally, and to answer your questions about that.

12   They are to serve as a resource that is available with

13   respect to legal and procedural questions that you may

14   have.

15        But advisory counsel is not appointed to serve as

16   your secretary or your scrivener.  Now, when you had

17   Mr. Stuckey file the motion on your behalf to have him

18   withdraw and for you to proceed to represent yourself

19   several months back, you and I had a long and detailed

20   conversation about the fact that you were not literate in

21   the law.  You did not have training in the rules of court

22   procedure.

23        And, actually, if you could approach the podium,

24   Mr. Pawelski, I would appreciate it, because I have some

25   questions that I need to ask you.

1          Now, do you remember that long colloquy that you

2    and I had when you wanted to represent yourself.

3          MR. PAWELSKI:  I did.  I do.  Yes, ma'am.

4          THE COURT:  All right.  In that colloquy, I told

5    you that when a person acts as his own lawyer, he is or

6    could be at a substantial disadvantage, and you responded,

7    "I do understand that."  Do you remember that?

8          DEFENDANT PAWELSKI:  Yes, ma'am.

9          THE COURT:  All right.  And I then told you that

10   the Government had two very experienced lawyers

11   representing them, and that Mr. Stuckey, who was your

12   appointed attorney, was a very experienced and

13   knowledgeable criminal defense attorney who understood the

14   entire criminal against process and he knew how to obtain

15   information, he knew how to get the subpoenas issued.  He

16   knew how to draft jury instructions.  He knew how to

17   retain the investigators, the experts, talk to witnesses,

18   et cetera.

19         He studied the Rules of Evidence.  And he knows

20   what Rules of Evidence can and cannot come in or what

21   evidence can and cannot come in under the Rules of

22   Evidence.  He could provide assistance with respect to the

23   law that is to be given to the jury.

24         And I asked you, "Do you understand that you are

25   not going to get any special treatment from this Court

1    just because you represent yourself?"  And you responded,

2    "I do."  Do you remember that?

3        DEFENDANT PAWELSKI:  I do remember that, sure.

4        THE COURT:  All right.  And I also told you that

5    you weren't in custody, so you were in a different

6    position than some of the other defendants that come

7    before this Court, because your being free, not in

8    custody, allowed you to then have access to documents and

9    to go down to the clerk's office and get instructions, et

10   cetera.

11       And I said, you know, that there were -- I asked

12   you -- I went through all kind of dangers and

13   disadvantages, and I said to you "Do you understand all of

14   these dangers and disadvantages of representing yourself?"

15   And your response was, "Ma'am, you explained them very

16   well to me.  Thank you very much.  I do understand them."

17   Do you remember that?

18       DEFENDANT PAWELSKI:  I do remember that.

19       THE COURT:  And I asked you if you had any

20   questions of me.  And at the time you said, "No, I think

21   that we're fine."  Now, you did at that time ask me to

22   appoint Mr. Stuckey as your advisory counsel, and I told

23   you at that time that I wasn't going to do so based on an

24   oral motion; that you needed to file something in writing

25   with me.

1         And you waited about 4 months before you actually

2    filed that, because I let him go in February, and I

3    believe you filed your motion in June.  And in your motion

4    for this time, you say -- you indicate that, one, the

5    procedure for filing a subpoena is unknown to you and that

6    Mr. Stuckey would be a valuable resource to provide proper

7    format for subpoenas.

8         Well, the clerk's office downstairs can provide you

9    with the subpoena forms.  You can ask any questions you

10   want down there to fill out and serve those subpoenas.  So

11   you can get that on your own, and you are free to do so.

12        You also state, "It will take me hours upon hours

13   to prepare proper instructions and to prepare for

14   cross-examination and self testimony."  Now, as advisory

15   counsel, Mr. Stuckey -- well, you go on to say that "as

16   advisory counsel, Mr. Stuckey would reduce or eliminate

17   any communications that the Court might find frivolous."

18   You also state, "Should the need for objective and

19   professional communications with the attorneys for the DOJ

20   arise, Mr. Stuckey will provide an impartial and

21   impersonal communication avenue thereby reducing

22   conflict."

23        Now, I am not sure what you mean by either of those

24   statements.  Can you tell me what it is, when you say

25   Mr. Stuckey will reduce or eliminate any communications

1    that the Court might find frivolous and that Mr. Stuckey

2    could provide an impartial and impersonal communication

3    avenue?

4         DEFENDANT PAWELSKI:  Well, Mr. Stuckey is a little

5    more objective in this matter than I would be.  I kind of

6    have a little personal --

7         THE COURT:  Which is why it is never wise for

8    anybody to represent themselves, as I have told you.

9         DEFENDANT PAWELSKI:  Well, my point is that I think

10   Mr. Stuckey could ask Mr. Kirsch some objective questions

11   without having any emotion being involved.

12        THE COURT:  But he can't do that if he is not your

13   lawyer.  He cannot represent you.

14        DEFENDANT PAWELSKI:  That is why I put that in the

15   motion for the advisory counsel.

16        THE COURT:  So you have to understand the

17   distinction between advisory counsel and counsel.  Now,

18   you chose to represent yourself here back in February,

19   even after I advised you of the concerns I had about your

20   lack of legal training and experience.  And you chose,

21   regardless, not to have an attorney represent you.

22        And at that time, based on our colloquy, you knew

23   that it was going to take yourself hours to educate

24   yourself on the laws and rules of procedure.  And as I

25   informed you at that hearing, if you dismiss Mr. Stuckey

1   and you proceeded to represent yourself, you were going to

2   be the one who was responsible to present your case; to

3   organize it, to develop the content, et cetera.  And that

4   you had the entire responsibility of your own defense, and

5   you said you knew that.

6        So I just need to make sure you understand that

7   even if I were to appoint advisory counsel for you, that

8   lawyer is merely advisory.  He or she would advise you

9   regarding jury instructions, any questions you had, or

10  other legal procedural -- legal or procedural matters, but

11  that lawyer is not your lawyer.  They're advisory only.

12       And you need to understand, then, that advisory

13  counsel is not a lawyer who can draft the jury

14  instructions for you.  That is your responsibility.  He

15  can answer questions.  He can point you in the right

16  direction, but it is your responsibility to draft those.

17       It is your responsibility to figure out where to

18  get the subpoenas.  And I am telling you right now you can

19  go right downstairs and they will walk you through the

20  process.  So we went through this before.

21       You, I think, now are getting closer to trial and

22  you realize how much work a lawyer does to prepare for

23  trial.  You are beginning to feel the pressure of that

24  trial.  And I have to ask you one more time at this point,

25  do you still want to proceed to represent yourself, or

1    would you like me to appoint Mr. Stuckey to represent you

2    as your lawyer in this case, not merely advisory counsel?

3        DEFENDANT PAWELSKI:  No, ma'am, I will still

4    represent myself.

5        THE COURT:  All right.  And I understand the

6    Government has no objection to the request by the

7    defendant for advisory counsel; is that correct?

8        MR. KIRSCH:  Your Honor, we did file a supplemental

9    response in which we indicated some opposition, but the

10   real basis for that opposition is a concern that the

11   request for advisory counsel might somehow be parlayed

12   into a request for a continuance of the trial date.

13        If that is not associated with the appointment of

14   advisory counsel, in that case we have no objection to

15   appointment of advisory counsel.

16        THE COURT:  Well, as I just stated, advisory

17   counsel is merely going to be to advise them and point

18   them in right direction.  Advisory counsel will not step

19   in and prepare their defense or examinations.

20        So, with that being said, I don't anticipate,

21   unless there is some really good reason, why this trial

22   needs to be continued.  They have had since February to

23   prepare.  I don't know what they have been doing in that

24   time.

25        Mr. Stuckey, I note that you are sitting in the

1    back of the courtroom.

2         MR. STUCKEY:  Yes, Your Honor.

3         THE COURT:  All right.  You understand what my

4    directive is if I were to appointment you as advisory

5    counsel; that you will not serve as a scrivener, not serve

6    as their secretary or clerical officer, and you will not

7    do ghostwriting for them.  Do you understand that?

8         MR. STUCKEY:  Absolutely, Your Honor.  I have been

9    in similar situations before.  There is one little problem

10   on that.

11        THE COURT:  All right.

12        MR. STUCKEY:  Mr. Pawelski needs a writ of habeas

13   corpus ad testificandum for a witness incarcerated in

14   Yankee South Dakota Federal Prison Camp.  It is pretty

15   hard to point him in the right direction without doing

16   some assistance.

17        THE COURT:  All right.  Something that is

18   complicated like that, I have no problem with.  It is just

19   that you are not to do his subpoenas.  He can go

20   downstairs and figure out how to do that.

21        MR. STUCKEY:  That is the only thing.  Thank you.

22        THE COURT:  So I will go ahead and appoint

23   Mr. Stuckey as advisory counsel.  He is to respond to

24   Mr. Pawelski's legal and procedural questions during the

25   course of these proceedings, but he has been sitting here,

1    and he has heard what the limitations are.  I will not

2    compensate for anything that is clerical, secretarial or

3    ghostwriting, unless you justify it to me the way you just

4    did.

5         That is a very complicated writ, and to get it

6    served in the proper fashion would be -- now, you will

7    have to justify to me why it is we should go through the

8    expense of having this gentleman -- I assume it is a

9    male -- brought all of the way back here to testify.  So

10   you are going to need to spell that out before I will

11   approve a writ like that.

12        MR. STUCKEY:  Absolutely.

13        THE COURT:  So the Court hereby appoints

14   Mr. Stuckey as advisory counsel only to Mr. Pawelski.

15        MR. STUCKEY:  May I inquire, Your Honor, as to

16   whether that requires a new -- I assume this is under the

17   Criminal Justice Act.

18        THE COURT:  Yes.

19        MR. STUCKEY:  I have the original CJA form.

20        THE COURT:  I think we do a new one that clearly

21   indicates that you are merely advisory counsel.

22        MR. STUCKEY:  Would you like me to coordinate that

23   with the CJA office?

24        THE COURT:  I would very much appreciate that.

25        MR. STUCKEY:  Yes, ma'am.

1          THE COURT:  All right.  So, Mr. Pawelski, I am

2    granting that.  Do you understand the limits of what

3    Mr. Stuckey's role will be?

4          DEFENDANT PAWELSKI:  I do.

5          THE COURT:  All right.  Very well.  You may be

6    seated.

7          All right.  The second motion or second matter I am

8    going to take up is Mr. Pawelski's notice of objections to

9    exhibits, at Docket No. 278.  In this notice, which the

10    Court is going to re-characterize as actually a motion to

11    strike, because that is what it seems most like to me,

12    Mr. Pawelski argues that the Government's exhibits do not

13    conform to several Rules of Evidence, and he asks the

14    Court to strike those exhibits.

15          And, actually, Mr. Pawelski, I do need to ask you a

16    question.  Are you referring to the Government's exhibits

17    in support of the James proffer, or are you referring to

18    the Government's proposed trial exhibits?

19          DEFENDANT PAWELSKI:  I am sorry, I didn't hear the

20    last part.

21          THE COURT:  Which exhibits are you objecting to?

22    It wasn't clear to me.

23          DEFENDANT PAWELSKI:  The exhibit list on the --

24          THE COURT:  The James proffer?

25          DEFENDANT PAWELSKI:  Well, I don't remember if

1    there was a James proffer, but they sent me an exhibit

2    list for the trial.

3         THE COURT:  So those are the exhibits for trial,

4    then?

5         DEFENDANT PAWELSKI:  My belief is that the original

6    search warrant was invalid, therefore, everything that

7    they have taken should be stricken.  I think I have put

8    that motion in.

9         THE COURT:  I do have that motion, as well, Yes.  I

10   just needed that clarification.  Because the objection,

11   Document No. 278, is related to the trial exhibits, it is

12   premature for this Court to rule on their admissibility.

13   Thus, the Court will reserve ruling on that motion until

14   trial, at which time the Court can see what foundation is

15   going to be laid and other rulings that will be made in

16   this Court.  So the Court reserves ruling on Document No.

17   278.

18        Next is Mr. Brokaw's motion to dismiss, Docket No.

19   267, and motion to accelerate ruling at Document No. 276.

20   In this motion to dismiss, at 267, Mr. Brokaw argues in

21   part that the search warrant, 11 sw 5438 lacks supporting

22   "oath or affirmations" and is consequently void.

23        The Court has carefully examined the application

24   underlying the search warrant and has confirmed that a

25   federal law enforcement officer signed the application

1    under penalty of perjury, stating that he had reason to

2    believe that the property contained contraband and

3    evidence of a crime.

4         As for the remainder of the arguments presented in

5    the motion to dismiss, and as to Mr. Brokaw's motion to

6    accelerate ruling, this Court has already resolved a

7    multitude of motions involving precisely the same

8    arguments that are raised in these motions, motions that

9    were dismissed in an order at Docket No. 217, challenged

10   the power of the Government and this Court to bring or

11   hear cases involving the criminal charges brought against

12   these defendants.

13        These arguments have been soundly rejected by every

14   federal court which has addressed them, including me, and

15   they are rejected once again.  Thus, both motion 267 and

16   276 are denied as without merit.

17        This brings us to Mr. Pawelski's motion to dismiss,

18   at Docket No. 261.  Although this Court does give

19   deference to pro se pleadings, after evaluating the motion

20   through this lens of deference, the Court holds that this

21   motion is entirely without merit.  It makes many of the

22   precise generic taxpayer-based arguments as those made in

23   Mr. Brokaw's motion, which I have just discussed.  It also

24   contains a nonsensical argument that because the

25   Department of Justice, in Mr. Pawelski's very

1    idiosyncratic view, was involved in a supposed cover up of

2    the 9 /11 attack, the Department of Justice is also

3    covering up the fact that this Court lacks jurisdiction

4    over Mr. Pawelski.

5        This motion also contends that there were Brady

6    violations in this case, however it does so in a single

7    paragraph, merely citing to Brady v. Maryland, and fails

8    to explain what evidence the prosecutor has failed to

9    disclose and provides no legal analysis whatsoever.  That

10   motion is thus denied.

11       That brings us to the James hearing, which was the

12   main purpose for this hearing.  These were motions filed

13   by Ms. Vigil and Mr. Pawelski at Document Nos. 140, 142

14   and 161.  In mid-August, the Government submitted a

15   proffer of evidence containing what this Court assumes is

16   a full list of the statements the Government intends to

17   admit under the co-conspirator exception to the hearsay

18   rule.  That submission is at Docket 249, and contains

19   copies of tax returns, e-mails sent between defendants,

20   documents which purported to pay taxes owed by the

21   defendants, so-called liens filed against the IRS

22   employees engaged in tax collection, and other forms of

23   communication in furtherance of the alleged conspiracy.

24       It also contains a James log at Exhibits 34 and 35,

25   with various statements made by the co-conspirators,

1     including a few that were made to undercover law

2     enforcement officers.

3          The Government asserts that its James proffer

4     demonstrates the existence of a tax fraud conspiracy

5     charged in Counts 1 and 14 of the Indictment, the duration

6     of this conspiracy, the participants in the conspiracy,

7     and the aims of the conspiracy, which were namely to file

8     fraudulent claims for tax refunds and to corruptly

9     endeavor to obstruct or impede the due administration of

10    the internal revenue laws.

11         Mr. Kirsch, how does the Government intend to

12    proceed this morning?  Do you intend to submit any

13    testimonial evidence, or are you going on the basis of

14    your proffer?

15         MR. KIRSCH:  Your Honor, given the lack of any

16    objections filed to our proffer, what we would propose to

17    do, if this is acceptable to the Court, is to submit the

18    matter to the Court on the papers that have already been

19    filed.  If the Court has particular questions about any of

20    those, I do have Special Agent Knabb available, and I can

21    elicit -- either answer questions or, if necessary, elicit

22    additional testimony from him to answer any specific

23    questions that the Court may have.

24         THE COURT:  All right.  That was where I was

25    headed.  I did not think -- I have read through all of the

 1   documents.  I think the Government has made an adequate

 2   proffer.  It has not been objected to.

 3        So do you wish to make any argument?

 4        MR. KIRSCH:  No.  Again, not unless the Court has

 5   any questions.  I will simply say that the Government's

 6   position is that we have, in fact, met our burden of

 7   establishing that the two separate but related

 8   conspiracies exist.  That the people that we named in the

 9   proffer were members of those two conspiracies.  And that

10   the statements that we attached in the last two exhibits,

11   34 and 35, were, in fact, all in furtherance of one of

12   those two conspiracies.

13        THE COURT:  Mr. Pawelski, if you wish to make any

14   argument.

15        DEFENDANT PAWELSKI:  Well, the only argument,

16   ma'am, I can make is that Title 18 was never ratified by

17   Congress.  And I have given the Court and Mr. Kirsch and

18   his crew a documented -- backup documentation on that.

19   Therefore, if it has never been ratified, it is not a law.

20   They are covering it up, as I have stated.  And I think

21   everything should be dismissed, because what they are

22   using is invalid statutes.

23        THE COURT:  All right.  Thank you.

24        Ms. Vigil, do you wish to make any argument?

25        DEFENDANT VIGIL:  No.

```
 1        THE COURT:  Mr. Brokaw, do you wish to make any

 2   argument?

 3        DEFENDANT BROKAW:  I hear nothing and have seen

 4   nothing that I can add to anything.

 5        THE COURT:  All right.  Then I will go ahead and

 6   rule.

 7        From the Government's proffer there is a

 8   demonstration that tax refund claims made by the

 9   defendants were false.  The Government has also -- well,

10   in determining whether or not the Court should allow

11   co-conspirator statements, the Court has to first

12   determine by a preponderance of the evidence whether a

13   conspiracy existed.  And in making this determination, the

14   Court is not bound by the Rules of Evidence.

15        Rather, "the district court has the discretion to

16   consider any evidence not subject to privilege, including

17   both the alleged co-conspirator statements and any other

18   hearsay evidence whether or not that evidence would be

19   admissible at trial."  United States v. Owen, 70 F.3d

20   1118, at page 1124, Tenth Circuit, 1995.

21        In establishing the existence of a conspiracy, the

22   Government is not required to show that a formal or

23   explicit agreement existed, rather, a conspiracy may be

24   inferred from the facts and circumstances of a given case.

25   United States v. Constantine, 125 F.3d 863, Tenth Circuit,
```

1    1997.

2           And, indeed, the inherently secretive nature of the

3    offense of conspiracy often requires the elements of a

4    crime be established by circumstantial evidence.  United

5    States v. Evans, 970 F.2d 663, Tenth Circuit, 1992.

6           However, the Government does have to provide

7    evidence to establish the following:  One, that an

8    agreement between two or more people existed to break the

9    law.  Two, knowledge by those people of the essential

10   objectives of the conspiracy.  Three, knowing and

11   voluntary participation in the conspiracy.  And, four,

12   interdependence among the conspirators.  In other words,

13   that the co-conspirators intended to act together for

14   their shared mutual benefit within the scope of the

15   conspiracy charged.  United States v. Cornealius, 696 F.3d

16   1307, at page 1317, Tenth Circuit, 2002.

17          In this case, the Government, through its proffer,

18   has established by a preponderance of the evidence that

19   two related conspiracies existed.  The Government has

20   submitted documents and filings sent by the defendant to

21   the IRS and the Department of Treasury showing, one, that

22   the defendants made claims for tax refunds and, two, that

23   the defendants impeded the due collection of taxes and

24   enforcement of the internal revenue laws.

25          It also submitted e-mail evidence obtained during

1    searches of three of the defendants' residences, as well

2    as a James log with the statements it seeks to admit.

3    Given that the defendants do not reply to the Government's

4    proffer, this Court is limited to the evidence presented

5    by the Government.

6          Taken as a whole, the documentary evidence and the

7    James log establishes there was an agreement among the

8    defendants to assist one another in the common objective

9    to file false claims of tax returns and, two, to impede

10   the due administration of the internal revenue laws.  The

11   defendants knew about the essential objectives of this

12   scheme, knowingly and voluntarily participated in it, and

13   were interdependent of one another.

14         With respect to the conspiracy to file false

15   returns, the Government has provided documents showing

16   that in February of 2009, Mr. Brokaw filed refund claims

17   for tax years 2003 through 2008.  Ms. Mueller assisted him

18   in doing so by notarizing them and sending the claims to

19   the IRS on his behalf via certified mail.

20         In May of 2009, Mr. Brokaw submitted a second set

21   of 1040 tax returns and 1099 forms claiming false income

22   tax for years 2003 through 2008.  Ms. Vigil assisted him

23   in doing so, signing an affidavit of notary presentment

24   certifying that Mr. Brokaw had appeared before her, and

25   she also mailed the returns to the IRS for Mr. Brokaw.

 1          In early 2009, Ms. Vigil, herself, filed a refund

 2     claim for tax year 2005.  Ms. Mueller assisted her in

 3     doing so by notarizing a document entitled "Power of

 4     Attorney" that she submitted to the IRS along with this

 5     copy of Ms. Vigil's 2006 Form 1040.

 6          The Government also submits e-mails obtained as a

 7     result of searches of three of the defendants' residences.

 8     These e-mails establish that all three defendants

 9     communicated with an unindicted co-conspirator,

10     Mr. Morris, regarding the use of false 1099 forms to

11     support false refund claims.

12          Although the Government does not explicitly

13     describe it this way in the proffer, it appears that this

14     might be described as a so-called "wheel" conspiracy, with

15     Mr. Morris at the hub the other defendants as spokes, all

16     of whom knew and helped one another with furthering the

17     conspiracy.  United States v. Carnagie, 533 F.3d 1231,

18     Tenth Circuit, 2008.

19          In one e-mail, Mr. Pawelski and others might have

20     been included, but it was not possible for me to tell from

21     the e-mail message.  Actually, this was in one e-mail to

22     Mr. Pawelski, and I don't know who else might have been

23     included in that.  Mr. Morris refers to the nature of the

24     fraudulent scheme when he states, "Please always think of

25     working together and keeping in touch with those who are

1    being affected.  The more people we can keep working in

2    concert helps us to become a more cohesive force for the

3    betterment of everyone."

4         With respect to communications between Mr. Brokaw

5    and Mr. Morris, the Court also noted that there were

6    documents showing that Mr. Brokaw e-mailed Mr. Morris to

7    tell him that the IRS had given Mr. Brokaw a $62,607

8    credit towards earlier tax year liabilities based upon his

9    2008 return.

10        Mr. Brokaw suggested that Mr. Morris "should put

11   this info, plus the other victories, out in an e-mail

12   message."  That is at Exhibit 7.

13        Communications between Ms. Vigil and Mr. Morris.

14   Mr. Morris told Ms. Vigil that "I have put together an '05

15   return with the OID from the MISTAR financial, which has

16   already been sent in.  In filling out the return with this

17   as taxable, it gives a refund of $251,481.  If this then

18   gets processed and they deduct even the whole amount that

19   they had estimated at 25,000, then you would get a refund

20   of about 220K for '05."

21        Ms. Vigil responded, "I am okay with filing this

22   taxable, then later OIDing the taxes paid to get them

23   back.  I would love to get 220,000 back for '05.  Let's go

24   with that for now and see what happens."  Exhibit 14.

25        With respect to communications between Mr. Pawelski

1     and Mr. Morris.  Mr. Pawelski asked Mr. Morris to review a

2     document Mr. Pawelski drafted in response to penalties

3     assessed by the IRS for false returns filed by

4     Mr. Pawelski.  Mr. Morris responded that it "looks pretty

5     good from here," and told Mr. Pawelski to "let her rip."

6     Mr. Pawelski reminded Mr. Morris that this was a document

7     that Mr. Morris had sent to Mr. Pawelski awhile ago, and

8     Mr. Pawelski "just tweaked it to fit his status.  Thanks

9     for the overview."  That is at Exhibit 8.

10          In Exhibit 11, Mr. Pawelski told Mr. Morris that he

11     had the "2008 1099 OID ready for you to process."  And

12     that Mr. Pawelski would bring his paperwork with him when

13     the two were scheduled to meet.

14          In Exhibit 12, Mr. Pawelski, in an e-mail, told

15     Mr. Morris that he needed "OID for these."  And provided

16     Mr. Morris with the addresses and alleged tax ID EINs for

17     Bank of America and Chase Credit Company.

18          In Exhibit 15, Mr. Pawelski provided Mr. Morris

19     with a list of entities for the creation of OIDs.  When

20     Mr. Morris responded that did he not have all of the

21     information, Mr. Pawelski responded that he would "create

22     the OID data for the missing documents and e-mail them to

23     you."

24          With respect to the related conspiracies impeding

25     the administration of the internal revenue laws, the

1    Government submitted more than sufficient evidence showing

2    that each of the defendants engaged in such a conspiracy.

3    The Court is not going to extensively review all of the

4    evidence here, but will point to a few items which are

5    sufficient to demonstrate the existence of this

6    conspiracy.

7        The Government showed that between March and April

8    of 2009, Mr. Brokaw, Mr. Pawelski and Ms. Vigil each

9    submitted a document entitled "Private Registered Bond for

10   Set Off," payable to the Department of Treasury in the

11   amount of one hundred billion dollars.  These documents

12   directed the DOT to use the one hundred billion to "adjust

13   any bills, taxes, claims and the like, to zero, charge,

14   settle and close any such account and return the

15   interest," to the respective defendant.

16       One or more of the defendants signed this document

17   as a surety or witness or certified that he or she mailed

18   the documents to Timothy Geithner, the then Secretary of

19   the Treasury.  Ms. Vigil submitted similar bonds on April

20   20th and June 2, 2009.  Mr. Brokaw and Mr. Pawelski signed

21   this document as sureties, and Ms. Mueller certified that

22   she mailed the documents to Mr. Geithner.

23       Additionally, in a June 27, 2009 e-mail to

24   Ms. Vigil, Mr. Brokaw and others, Mr. Pawelski provided a

25   copy of updated forms for the types of fraudulent bonds

1    that all four had been sending to the DOT.  That is

2    Exhibit No. 23.

3         The Government also submitted evidence that all

4    defendants were involved in serving what they

5    characterized as liens on IRS employees who were

6    attempting to collect taxes.  These liens claimed damages,

7    interest, penalties and fees against the IRS employees;

8    that is Exhibit 28.

9         Mr. Pawelski and Mr. Brokaw also submitted letters

10   claiming that their tax debts had been discharged with the

11   purported EFT instruments, which they enclosed with the

12   letters.  These instruments ended up being checks drawn on

13   closed bank accounts.  Those are Exhibits 30, 31 and 32.

14        With respect to whether the declarants and the

15   defendants were members of the conspiracy charged, a court

16   may presume that a defendant is a knowing participant in a

17   conspiracy when he acts in furtherance of the conspiracy's

18   objective.  United States v. Tranakos, T-R-A-N-A-K-O-S,

19   911 F.2d 1422, Tenth Circuit, 1990.

20        The Government need not prove that every

21   conspirator knew every detail or participated in every

22   aspect of the conspiracy, nor does it need to show that

23   every single one of the conspirators knew each other.

24   That is Cornealius, at 696 F.3d 1317.

25        Once the existence of a conspiracy is shown, "The

1    connection of the defendant to the conspiracy need only be

2    slight if there is sufficient evidence to establish that

3    connection beyond a reasonable doubt." United States v.

4    Mendoza-Salgado, 964 F.2d 993, at page 1006, Tenth

5    Circuit, 1992.

6           Further, statements made by one co-conspirator out

7    of the presence of other co-conspirators may be used not

8    only against the declarant but also against his

9    co-conspirators when made in furtherance of the

10   conspiracy. United States v. Cotton, 646 F.2d 430, Tenth

11   Circuit, 1980.

12          Finally, in considering this question, the Court is

13   mindful of the Tenth Circuit holding in United States v.

14   Williamson, 53 F.3d 1500, Tenth Circuit.  In Williamson,

15   the Tenth Circuit noted that to admit a statement under

16   the co-conspirator exception to the hearsay rule, the

17   witness to the statement need not be a co-conspirator.

18          In Williamson, the Tenth Circuit specifically

19   adopted the reasoning of the Seventh Circuit in United

20   States v. Mahkimetas, M-A-H-K-I-M-E-T-A-S, 991 F.2d 379,

21   Seventh Circuit, 1993, at page 383, which provided, "The

22   fact that one party to a conversation is a government

23   agent or informer does not of itself preclude the

24   admission of statements by the other party if he or she is

25   a member of the conspiracy under Rule 801(d)(2)(E)."

1          In this case, the Government has established by a

2     preponderance of the evidence that the declarants, whose

3     statements are included at Docket No. 249, were members of

4     these related conspiracies for the reasons that I just

5     previously discussed.  Some of the statements in question

6     here were made to undercover law enforcement who were not

7     members of the conspiracy, but per Williamson, that does

8     not undermine the application of the hearsay exception as

9     to these statements.

10          These statements would still fall under the

11     co-conspirator exception to the hearsay rule because they

12     were made by a member of the conspiracy and are to be

13     admitted against other defendants whom the Government has

14     established were members of this conspiracy.

15          Finally, the Government has also established by a

16     preponderance of the evidence that the statements here

17     were in furtherance and in the course of the conspiracy.

18     The Court has reviewed all of the statements included at

19     Docket No. 249.  And the Government has established that

20     the co-conspirators made these statements to further the

21     purposes of this tax fraud conspiracy and establish that

22     they were all made during the course of that same

23     conspiracy.

24          For these reasons, the Court finds that the

25     Government, through its proffer today, has established by

1    a preponderance of the evidence the three elements

2    necessary to obtain admission of evidence under the

3    co-conspirator exception to the hearsay rule.  And

4    although it will need to prove that at trial through its

5    witness, the Court accepts that it will be able to do so

6    for purposes of these objections.

7         The Government has established that a conspiracy

8    existed; that the relevant declarants and defendants were

9    both members of the conspiracy, and that the statements

10   which were the anticipated testimony of these

11   co-conspirators were made in the course of and in

12   furtherance of the conspiracy.

13        To summarize my rulings today, it is ordered that

14   Ms. Mueller's motion for a James hearing, Docket No. 141,

15   is denied as moot.

16        Mr. Pawelski's motion to appoint advisory counsel,

17   Docket No. 218, is granted.  Mr. Pawelski's -- and

18   Mr. Stuckey is re-appointed, but appointed only as

19   advisory counsel subject to limitations I have described

20   clearly in my ruling.

21        Mr. Pawelski's motion to strike exhibits, Docket

22   No. 278, is reserved until trial.

23        Mr. Brokaw's motion to dismiss, Docket No. 267, and

24   his motion to accelerate ruling, 268, are denied.

25        Mr. Pawelski's motion to dismiss, Docket No. 261,

 1     is denied.

 2              The James hearing evidence is provisionally

 3     admitted subject to the Government putting on the

 4     testimony.  Any objections are overruled.

 5              Is there anything further to be brought to my

 6     attention?

 7              DEFENDANT PAWELSKI:  I have something.

 8              THE COURT:  You may proceed.

 9              DEFENDANT PAWELSKI:  Thank you.  Judge, the

10     Government claims that I filed false 1099 forms; correct?

11              THE COURT:  Yes.

12              DEFENDANT PAWELSKI:  Forms that were filed were

13     received from the Internal Revenue Service office, so I

14     don't see how they would be false.

15              THE COURT:  All right.  We are not getting into the

16     merits of that we will try that case.  You can raise that

17     at your trial.  Right now there is nothing before me.

18              DEFENDANT PAWELSKI:  I am just making a statement

19     here.

20              THE COURT:  What is the request?  Because I have

21     nothing in writing before me.  There is no motion.  You

22     will not argue your case here.  You have your trial to

23     prepare for.  You can make all of those arguments at

24     trial, but I don't have anything else pending before me.

25              DEFENDANT PAWELSKI:  My question is, then, ma'am,

1    Docket No. 163, you have restricted it.  It shows in that

2    motion all of the 1099 OID laws.  None of them say it is

3    illegal to send one in.  The Government has a

4    responsibility that if there is something incorrect on a

5    tax form, through the fair warning doctrine, that they

6    should respond, which they did not.

7         THE COURT:  Well, that is for you to raise, and we

8    will see what happens at trial, but that is not an issue

9    before me.

10        DEFENDANT PAWELSKI:  Then why is Docket 163

11   restricted?

12        THE COURT:  Let me find Docket No. 163.  Because

13   that is an ex parte motion filed by one of the defendants.

14   It has nothing to do with your case.  So when there is an

15   ex parte motion filed by one of the defendants -- and this

16   was, I believe, when you were still represented -- those

17   get filed under restriction so that the Government doesn't

18   know what it is the defense is doing.

19        DEFENDANT PAWELSKI:  From what I understand, that

20   is the memorandum of law in support of the 1099 OID.

21        THE COURT:  No.

22        DEFENDANT PAWELSKI:  Am I incorrect on that docket

23   number?

24        THE COURT:  You are incorrect.  As far as I can

25   tell, it is an ex parte motion for appointment of an

     1    investigator, which I ruled on when I allowed that party's

     2    counsel to withdraw.

     3          But we are not going to get into the merits of this

     4    case.  That is to be decided -- we are set for a final

     5    trial prep conference on October 9th, I believe.  Jury

     6    instructions are due to this Court.  And there are other

     7    things that you all need to look at my practice standards

     8    to make sure you are in compliance with them.  Things have

     9    to be filed here before that final trial prep conference.

    10    Then we are set for trial to begin on November 3rd.

    11          THE COURT:  All right.

    12          MR. KIRSCH:  Your Honor, can I raise one matter

    13    briefly with respect to the trial prep conference?

    14          THE COURT:  You may.

    15          MR. KIRSCH:  Ms. Paluch and I realized, essentially

    16    yesterday evening, that there was one topic that we had

    17    omitted from our proposed voir dire questions.  I think

    18    that what we would ask for leave of Court to do is to

    19    submit a revised set of voir dire questions that would

    20    contain one or two additional questions.

    21          The topic that we omitted was whether or not the

    22    fact that there was an undercover operation as a part of

    23    the investigation, and that there might be testimony about

    24    that.  We wanted to include a couple of questions about

    25    whether or not that would create any issues for any

1    members of the jury.

2         THE COURT:  All right.  You are granted

3    authorization to submit amended voir dire questions.

4         MR. KIRSCH:  Thank you, Your Honor.  We will do

5    that this afternoon.

6         THE COURT:  All right.  I am still trying -- I

7    can't access -- can you tell me exactly what Document No.

8    163 is?  Who filed it?  Which defendant filed it?

9         COURTROOM DEPUTY:  Defendant Pawelski.

10        THE COURT:  It doesn't come up.

11        COURTROOM DEPUTY:  I can print that out for you.

12        THE COURT:  Let me go back.  I just want to be

13   sure, but I am not pulling up 163 under his docket file.

14   I get 162 and 161, then I jump to 100.  There it is.  Hold

15   on.  I see it.

16        That is actually your, Mr. Pawelski, that is your

17   motion for an investigator.

18        All right.  If there is nothing further, then,

19   court will be in recess.  We will see you --

20        Mr. Stuckey?

21        MR. STUCKEY:  Your Honor, if I might intrude.  I

22   don't know if Mr. Pawelski asked in his renewed motion for

23   an investigator -- for the appointment under the Criminal

24   Justice Act or not.  And my first advice to him would be

25   that he needs one to find out whether this gentleman in

1   jail in South Dakota will even cooperate or talk.

2       Would Your Honor be amenable, or I guess I should

3   ask, did he ask for an investigator and, if so, I don't

4   think Your Honor has ruled on that request.  If he did not

5   ask, I might point out in advance --

6       THE COURT:  What happened is I denied his motion

7   without prejudice, asked him to file a new motion and

8   affidavit that contains sufficient information for this

9   Court to determine whether he qualified for CJA services.

10  He did file the affidavit.  I don't see a new motion.

11      MR. STUCKEY:  For an investigator?

12      THE COURT:  Yes.  And so if he were to submit a new

13  motion -- I have already found that he does qualify for

14  CJA services.  If you file a new motion that substantiates

15  the need for an investigator, I will appoint one.  But I

16  am not continuing this trial.  So you can't wait 8 months

17  and, you know, then move forward.

18      MR. STUCKEY:  I will advise him of that.

19      THE COURT:  All right.  Nothing further, then?

20      DEFENDANT VIGIL:  I do have an affidavit that was

21  filed this morning downstairs.  I would like to give it to

22  both of you.

23      THE COURT:  You can go ahead and give it to them.

24  If you filed it, I will get it through my regular service.

25  Ms. Hartmann can take a copy.

1           All right.  So our next hearing here is October

2     9th, which is next Thursday.  It is at 3:00 p.m.  That is

3     the final trial preparation conference.  I will expect

4     defendants and the Government to be here on time, not 10

5     minutes or 15 minutes late.  So leave Colorado Springs

6     with enough time to get you through security and into this

7     courtroom by no later than 3 o'clock.

8           All right.  If there is nothing further, then,

9     court will be in recess.

10          (Proceedings conclude at 10:56 a.m.)

11          **R E P O R T E R ' S   C E R T I F I C A T E**

12

13          I, Darlene M. Martinez, Official Certified

14    Shorthand Reporter for the United States District Court,

15    District of Colorado, do hereby certify that the foregoing

16    is a true and accurate transcript of the proceedings had

17    as taken stenographically by me at the time and place

18    aforementioned.

19

20          Dated this 27th day of October, 2014.

21

22          _____

23          s/Darlene M. Martinez

24          RMR, CRR

25