**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 13-cr-00392-CMA-2


**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1.   GEORGE THOMAS BROKAW,**

**Defendant.**

_____

**REPORTER'S TRANSCRIPT**
**(Motions Hearing)**
_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 10:29 a.m. on the 17th
day of March, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
MARTHA A. PALUCH, Office of the United States Attorney,
1225 17th Street, Suite 700, Denver, CO 80202

**FOR THE DEFENDANT:**
ERIC K. KLEIN, Johnson Brennan & Klein, PLLC, 1470 Walnut
St., Suite 101, Boulder, CO 80302

```
 1                      MARCH 17, 2014

 2           (Proceedings commence at 10:29 a.m.)

 3           THE COURT:  You may be seated.

 4           Court calls Criminal Case No. 13-cr-00392-CMA,

 5  encaptioned United States of America v. George Thomas

 6  Brokow.

 7           Counsel, would you please enter your appearances.

 8           MS. PALUCH:  Good morning, Your Honor, Martha

 9  Paluch appearing on behalf of the United States.

10           MR. KLEIN:  Good morning, Your Honor, Eric Klein on

11  behalf of Mr. Brokaw.  And Mr. Brokaw is present before

12  the Court.

13           THE COURT:  Good morning -- good morning.  It's a

14  monday.

15           All right.  This matter is before the Court on

16  defendant counsel's motion to withdraw as counsel and to

17  permit Mr. Brokaw to represent himself.  And there was --

18  that was Document No. -- for some reason the little flag

19  has disappeared.

20           MR. KLEIN:  121, Your Honor.

21           THE COURT:  Well, that was the most recent one,

22  yes, because the other one was a motion to set this

23  hearing.

24           MR. KLEIN:  Correct.

25           THE COURT:  So that is the one I referred to, which
```

1    was only filed on Friday.  That is what took me so long to

2    get in here, because I was not aware that there had been a

3    new filing in the case.

4         MR. KLEIN:  Your Honor, I apologize for the

5    lateness of that.  As I tried to make clear in the

6    motions, Mr. Brokaw and I have been in ongoing

7    conversation about this.  And it was really Thursday

8    evening, before what had been the Friday setting, that it

9    became clear that Mr. Brokaw did, indeed, wish to

10   represent himself.

11        THE COURT:  That he did indeed?  This is what I

12   thought you filed before, was to set this for a hearing

13   because he had decided he wanted to represent himself.

14        MR. KLEIN:  There was some issues that I thought

15   might need to be clarified before the Court, but I think

16   it is clear now.  That is why I filed that on Friday.

17        THE COURT:  All right.  Well, your motion does

18   indicate that he does wish to represent himself and he

19   does not wish to be represented by an attorney.  But it

20   also indicates that he wants to have stand-by counsel

21   appointed for him.

22        So this Court did schedule this hearing for a

23   Faretta colloquy to make sure that the reasons behind his

24   request and to inquire into why he wishes to represent

25   himself in such a complicated case and to conduct the

1    inquiry that is required by <u>Faretta</u> and <u>Tucker</u>.

2            So, I guess my first question, Mr. Brokaw, is it

3    sill your desire to have Mr. Klein withdraw as your

4    counsel and to proceed to represent yourself in this case?

5            THE DEFENDANT:  Yes, it is, Your Honor.

6            THE COURT:  All right.  I will need to ask you a

7    few questions and then talk to you a bit about the

8    importance of counsel, which I am required to do.  So, if

9    you and Mr. Klein could approach the podium.

10           And, Ms. Hartmann, if you would please swear

11   Mr. Brokaw in.

12           COURTROOM DEPUTY:  Please raise your right hand.

13                       **GEORGE BROKOW**

14   having been first duly sworn, answers questions of the

15   Court as follows:

16           THE DEFENDANT:  I do.

17           THE COURT:  All right.  Mr. Brokaw, do you

18   understand that your answers to my questions must be

19   completely truthful?

20           THE DEFENDANT:  I do, Your Honor.

21           THE COURT:  Do you understand that if you fail to

22   answer any question truthfully; that is, if you lie or

23   attempt to mislead this Court, the Government could

24   prosecute you for a new felony federal offense called

25   perjury?

1          THE DEFENDANT:  I do.

2          THE COURT:  All right.  Now, I am going to be

3    asking you some questions that are directed toward your

4    desire to waive counsel and to represent yourself, but we

5    will start with, what is your full and complete name?

6          THE DEFENDANT:  My name is George Thomas Brokaw,

7    spelled in upper and lower case, the name that my mother

8    designated when I was born.

9          THE COURT:  Okay.  And what do you mean by that?

10         THE DEFENDANT:  What do I mean by that?

11         THE COURT:  By spelled in upper and lower case.

12         THE DEFENDANT:  Well, Your Honor, I was educated in

13   the public schools in Ohio, and I went to even a public

14   university in Ohio, and I learned the English language in

15   the public schools in Ohio.  And I learned how to write my

16   name.  And I learned the meaning and definition of the

17   English language and what words mean.

18         And when we were taught, we wrote our name to

19   identify ourself as the living being, man or woman, in

20   upper and lower case to identify the proper name.

21         THE COURT:  With the first capital letter for your

22   first name --

23         THE DEFENDANT:  Exactly.

24         THE COURT:  -- and a first capital letter for your

25   second name?

1          THE DEFENDANT:  Capital letter for the first letter

2     of my first name, capital letter for the first letter of

3     my last name; correct, Your Honor.

4          THE COURT:  All right.

5          THE DEFENDANT:  That is what I meant by that.  That

6     is the way I was taught to identify myself.

7          And, Your Honor, that is the way, on my original

8     certificate of live birth, that I am identified as the

9     living man, or infant at that time, as being born alive.

10          THE COURT:  All right.

11          THE DEFENDANT:  Okay.

12          THE COURT:  Now, as we proceed, if you do not

13     understand what I am asking you or you do not understand

14     what I am telling you, I need you to let me know that so I

15     can clarify for you, okay?

16          THE DEFENDANT:  I will, Your Honor.

17          THE COURT:  What is the extent -- you kind of

18     referenced this, but the extent of your education.

19          THE DEFENDANT:  I have a bachelor's degree from

20     Ohio University.  And I have been in the insurance

21     business for over 40 years, Your Honor.

22          THE COURT:  All right.

23          THE DEFENDANT:  And if I might expand upon that for

24     a second.

25          THE COURT:  You may.

1            THE DEFENDANT:  In the insurance business, I have

2      been in management for many of those years.  In the

3      insurance business, I have looked at thousands of

4      insurance contracts of all kinds and securities and

5      investment contracts, also.

6            And, Your Honor, in those contracts, the words are

7      very specific.  They mean what they say, and they say what

8      they mean.  Words have a specific meaning.  And every

9      insurance contract there is a declaration page at the

10     beginning of it, whether it is life insurance, automobile,

11     or whether it is an investment or security of some kind.

12     And there is a definitions page also that defines exactly

13     what the terms mean in there.

14            THE COURT:  I know all of that.  What does that

15     have to do with the extent of your education?

16            THE DEFENDANT:  Well, I have been in the insurance

17     business.

18            THE COURT:  That is sufficient.  That is all I need

19     to know.

20            Are you presently under the care of a doctor for

21     any physical or mental condition?

22            THE DEFENDANT:  I am not, Your Honor.

23            THE COURT:  Are you presently taking any medicine

24     for any physical or mental condition?

25            THE DEFENDANT:  I am not.

1          THE COURT:  Do you have any other physical problem

2    that would hinder your ability to represent yourself in

3    this case, such as a hearing problem, a speech impediment,

4    or poor eyesight?

5          THE DEFENDANT:  I do not.

6          THE COURT:  Are you presently under the influence

7    of any alcohol or drugs?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Has anyone told you that you should not

10   use a lawyer?

11         THE DEFENDANT:  No.

12         THE COURT:  All right.  Have you ever represented

13   yourself in a trial before?

14         THE DEFENDANT:  I have not.

15         THE COURT:  Do you understand that you are charged

16   by Superseding Indictment with one count of conspiracy to

17   file false claims for refund, in violation of 18 United

18   States Code Section 286?

19         THE DEFENDANT:  I am.

20         THE COURT:  Six counts, Counts 2 through 7, of

21   making false claims for refund, in violation of 18 United

22   States Code Section 287.   One count, which is 14, of

23   conspiracy to corruptly endeavor to obstruct or impede the

24   due administration of the internal revenue laws, in

25   violation of 18 United States Code Section 371.  And one

1    count, Count 15, of corruptly endeavoring to obstruct or

2    impede the due administration of the internal revenue

3    laws, in violation of 26 United States Code Section

4    7212(a).

5         THE DEFENDANT:  I am, Your Honor.

6         THE COURT:  And I assume up to this point you have

7    discussed your case with Mr. Klein?

8         THE DEFENDANT:  I have.

9         THE COURT:  All right.  Ms. Paluch, if Mr. Brokaw

10   is found guilty of these counts, what is the maximum

11   penalty or maximum penalties he could receive?

12        MS. PALUCH:  Yes, Your Honor.  In Count 1, the 286

13   conspiracy to file false claims for refund, the defendant

14   faces not more than 10 years imprisonment if convicted;

15   not more than a $250,000 fine, or both; not more than 3

16   years of supervised release; and a $100 special

17   assessment.

18        As to Counts 2 through 7, charging false claim for

19   refund, in violation of 18 U.S.C. 287, if convicted of

20   these counts, the defendant faces not more than 5 years

21   imprisonment on each count; not more than a $250,000 fine,

22   or both; not more than 3 years supervised release; and a

23   $100 special assessment.

24        As to Count 14, which charges the defendant with a

25   violation of 18 U.S.C. 371, conspiracy to corruptly

1    endeavor to obstruct or impede the due administration of

2    the internal revenue laws, if convicted of that count, the

3    defendant faces not more than 5 years imprisonment; not

4    more than a $250,000 fine, or both; not more than 3 years

5    supervised release; and a $100 special assessment.

6           As to the final count, Count 15, a violation of 26

7    U.S.C. 7212(a), corrupt endeavor to obstruct or impede the

8    due administration of the internal revenue laws, if

9    convicted of this count, the defendant faces not more than

10   3 years imprisonment, not more than a $250,000 fine, or

11   both; not more than 1 year supervised release; and a $100

12   special assessment.

13          THE COURT:  All right.  So, Mr. Brokaw, do you have

14   any questions about the possible charge -- about the

15   charges or the possible consequences and penalties of

16   those charges if you are found guilty?

17          THE DEFENDANT:  I do not, Your Honor.

18          THE COURT:  All right.  I need to --

19          THE DEFENDANT:  I have a question about the --

20   maybe it is not the appropriate time to bring it up, about

21   the plea offer that they sent over.

22          THE COURT:  That is not any of my business.

23          THE DEFENDANT:  Okay.

24          THE COURT:  All right.  Not until you reach a plea

25   agreement is it my business.  I am directed not to

 1   interfere with any sort of plea negotiations that take on

 2   -- are taken on between your counsel or you and the

 3   Government.

 4        THE DEFENDANT:  Okay.

 5        THE COURT:  So, I need to discuss with you the

 6   advantages that you would have if you had a lawyer.  Now,

 7   do you understand that when a person who does not have any

 8   legal training acts as his own lawyer, he is at a

 9   substantial professional disadvantage in this case because

10   the lawyers have had three years of training, and many

11   years of experience in your case?

12        THE DEFENDANT:  I do.

13        THE COURT:  All right.  And the Government has an

14   experienced lawyer representing it, as well.

15        Now, Mr. Klein, your appointed attorney, is a very

16   experienced and knowledgeable criminal defense attorney or

17   he would not be on our Criminal Justice Act panel.

18        He understands the entire criminal process.  He

19   knows how to obtain information about the case through

20   discovery devices, including working with the fact

21   investigators, experts, mitigation specialists, access to

22   witnesses and access to grand jury transcripts.

23        He may uncover potential violations of your

24   constitutional rights and take effective measures to

25   address them.  He may ensure compliance with the speedy

1    trial provisions.  And he may identify and secure

2    favorable evidence to be introduced later at trial on your

3    behalf.

4            In addition, at trial, Mr. Klein would argue on

5    your behalf during the entire trial and would present the

6    best legal arguments for your defense.

7            Since jury qualification and selection are governed

8    by numerous legal procedures, his knowledge and experience

9    might enhance the selection process on your behalf.  He

10   can call witnesses for you, question witnesses against

11   you, and present evidence on your behalf.

12           He can advise you on whether you should testify,

13   the consequences of that decision, and what you have a

14   right not to say.

15           He is familiar with the Rules of Evidence, and he

16   knows what evidence can or cannot come into trial and make

17   those objections on your behalf if the Government is

18   offering evidence that he believes is not admissible.

19           He can provide assistance in ensuring that the jury

20   is given a complete and accurate -- is given complete and

21   accurate jury instructions by this Court.

22           He may make effective closing argument on your

23   behalf.  And he may prevent improper argument by the

24   prosecutor by objecting.

25           He would also ensure that any errors committed

1    during trial are properly preserved for appellate review

2    later by a higher court.

3           Post-trial, if you are convicted, Mr. Klein's

4    assistance would be useful in preparing for sentencing;

5    ensuring that favorable facts are brought to the attention

6    of this Court, ensuring that the Court is advised of all

7    legally-available favorable dispositions, and ensuring

8    that the sentence that I impose would be lawful.  His

9    knowledge and expertise could also be useful in filing an

10   appeal.

11          Now, the dangers and disadvantage of acting as your

12   own counsel are that -- because it is always unwise for

13   anyone to represent themselves in court, even an attorney.

14   You need to understand that you will not get any special

15   treatment from the Court just because you are representing

16   yourself.

17          Do you understand that you will not be entitled to

18   a continuance simply because you wish to represent

19   yourself?

20          THE DEFENDANT:  I do, Your Honor.

21          THE COURT:  All right.  You are not required to

22   possess the same legal knowledge or skills that an

23   attorney would have in order to represent yourself.

24   However, I will expect that you will abide by the Rules of

25   Criminal Procedure, the Rules of Evidence, and the Rules

1  of Courtroom Procedure.  And these are rules that it takes

2  lawyers years to learn and abide by.

3        And if you demonstrate that you are unwilling to

4  abide by these rules, I could terminate your

5  self-representation.  Do you understand that?

6        THE DEFENDANT:  I do.

7        THE COURT:  All right.  Do you understand that if

8  you are at all disruptive in the courtroom, that I could

9  terminate that self-representation and remove you from the

10 courtroom, in which, then, the trial would continue

11 without your presence?

12       THE DEFENDANT:  I do, Your Honor.  I have been -- I

13 have a great deal of respect for the law and the Court

14 system in this country.

15       THE COURT:  All right.  And do you understand that

16 if you are acting as your own attorney, you are not going

17 to be allowed by me to make speeches or try to testify if

18 that testimony is not under oath on the witness stand?

19       THE DEFENDANT:  I do.

20       THE COURT:  All right.  So that means, for example,

21 when you are making an opening statement to the jury, you

22 cannot give a long and rambling discussion of things that

23 are not going to be supported by the evidence or that is

24 improper for admissibility at trial?  Do you understand

25 that?

1         THE DEFENDANT:  I do.

2         THE COURT:  And do you understand that in

3    questioning any witnesses, either on direct or

4    cross-examination, that examination must at all times be

5    courteous, and it cannot get too emotional or

6    argumentative?

7         THE DEFENDANT:  I understand that I must be

8    courteous at all times.

9         THE COURT:  All right.  Do you understand that your

10   access to the Government attorney who is prosecuting you

11   is not going to be as open as compared to a lawyer, who

12   can easily contact the Government attorney, although I am

13   sure she would be willing to talk to you any time you

14   would want to, it is not going to be the same as between

15   attorney to attorney.

16        THE DEFENDANT:  I -- I get it.

17        THE COURT:  All right.  And the Government is not

18   going to go easier on you or give you any special

19   treatment because you are representing yourself.  The

20   Government is going to present its case against you as an

21   experienced lawyer.

22        THE DEFENDANT:  I understand.

23        THE COURT:  All right.  Finally, if you are

24   convicted, you cannot claim on appeal that your own lack

25   of legal knowledge or skill constitutes a basis for a new

1    trial.  In other words, you cannot claim that you received

2    ineffective assistance of counsel by representing

3    yourself.

4         THE DEFENDANT:  That would make sense, Your Honor.

5         THE COURT:  All right.  So do you understand all of

6    these dangers and disadvantages of representing yourself?

7         THE DEFENDANT:  I am aware of the dangers that you

8    presented.

9         THE COURT:  All right.  And do you have any

10   questions about those dangers and disadvantages at this

11   time?

12        THE DEFENDANT:  I do not.

13        THE COURT:  All right.  There are a couple of other

14   issues that I want to address with you, because you did

15   specifically ask your counsel to request that he be

16   appointed as stand-by counsel.  And I want to be sure that

17   you understand that if I find that you have validly waived

18   your right to an attorney, you do not have the right to

19   have an attorney appointed as stand-by counsel to assist

20   you.  That is United States v. Chavez, 461 F.3d 1201,

21   Tenth Circuit, 2006.

22        In addition, in preparation for this hearing, I

23   took a look at your financial affidavit.  And your

24   financial affidavit -- I am not sure how you got appointed

25   counsel because you have funds that you can pay an

1    attorney with.

2           You list that you make $4,000 per month.  Your

3    expenses monthly are $2,000 -- it looks like about $2,485,

4    of which $600 is given to the church, phones of $210.

5           And I just want to let you know that I have dealt

6    with this issue in another case, and that the threshold

7    issue as to whether you are entitled to any CJA counsel

8    even prior to this, even prior to Mr. Klein's moving to

9    withdraw and, unfortunately, I should pay more attention

10   to these financial affidavits.  You have to be financially

11   unable to pay counsel.  18 United States Code Section

12   3006A provides for appointment of counsel "for any person

13   financially unable to obtain adequate representation."  18

14   United States Code Section 3006A(a).

15          This standard means something less than indigency

16   or destitution pursuant to United States v. Moore, 671

17   F.2d 139, a Fifth Circuit, 1982 case.  And though doubts

18   as to eligibility should be resolved in a defendant's

19   favor, subsection (c) provides that "counsel may be

20   terminated as the interest of justice may dictate if at

21   any time the Court determines that the defendant is

22   financially able to obtain counsel."

23          And although the Act and its legislative history

24   are silent on the allocation of the burden of proof in

25   proceedings to determine whether counsel should be

 1    appointed or terminated, the weight of the authority is

 2    that the burden rests with the defendant.  United States

 3    v. Peister, 631 F.2d 658, Tenth Circuit, 1980, which was

 4    denied cert.

 5        There are a number of other circuits that ruled the

 6    same, but the Tenth Circuit's cite should be enough.  This

 7    Court has an independent obligation to ensure that CJA

 8    funds are not abused, either intentionally or

 9    unintentionally.  The Court is also mindful that the

10    public funds available for CJA services are severely

11    limited.

12        In addition to that -- so the first thing I am

13    telling you is that I looked at your financial affidavit,

14    and based only the information presented, you do have

15    disposable income that could be used to have your own

16    attorney.  So I am not sure why you were appointed counsel

17    in this case.

18        THE DEFENDANT:  Well, Your Honor, if I might.

19        THE COURT:  Well, I am not going to have it dealt

20    with, you are going to have to do this in writing with me.

21        THE DEFENDANT:  Okay.

22        THE COURT:  So I will give you some directions at

23    the end of this hearing, depending on how it goes, but I

24    will need to have, at a minimum, a detailed financial

25    affidavit.  And I will give you some other -- I may want

1    to see income tax records and other kinds of financial

2    information to see if you are, indeed, qualified for any

3    CJA appointment.

4            At this point, with that being said, you are out on

5    bond.  You are not like some of the other defendants that

6    are in custody.  So you have more freedom to prepare for

7    your defense than a defendant who is in custody.  So, at

8    this point, I am not inclined to appoint stand-by or

9    advisory counsel at this time.

10           As I said -- and your attorney was present in the

11   prior hearing with Mr. Pawelski, so he knows, because I

12   have gone through this with him -- that I think that

13   appointing stand-by counsel as a matter of course, as many

14   judges do, and as I have done previously, is unfair to the

15   attorneys and, unless truly necessary, a waste of taxpayer

16   money.

17           And with respect to that first point, I agree with

18   Professor Poulin, P-O-U-L-I-N, who, in her article *The*

19   *Role of Stand-By Counsel in Criminal Cases*, 75 New York

20   University Law School Review 676, at page 736, which is

21   the 2000 publication, but I think it's apropos today, "The

22   obligation of stand-by counsel may, in fact, be more

23   onerous than the straightforward job of representing an

24   accused.  Involvement as stand-by counsel does not relieve

25   the attorney of the obligation of zealous representation

1    but merely redirects the attorney's efforts and forces

2    much of his work to remain behind the scenes at trial.

3         Stand-by counsel must maintain a low profile in

4    front of the jury and must accede to the defendant many

5    decisions that would normally fall to defense counsel.

6    Despite this deferential role, stand-by counsel must still

7    be as diligent as defense attorneys should be in

8    investigating the case and exploring the legal issues as

9    if in preparation for trial.

10        Furthermore, stand-by counsel must assume an

11   educative role beyond that normally expected of counsel.

12   He should evaluate pretrial and trial strategies

13   thoroughly, enough to help the defendant understand the

14   choices to be made.  He must stand ready to offer a

15   guiding hand to the pro se defendant, even one he believes

16   to be embarking on a wrong course.  Thus, the obligation

17   of stand-by counsel is substantial and far from the

18   "not-quite-a-lawyer-in-the-case" concept reflected in

19   reported decisions."

20        With respect to the second point, we are in a

21   budget crisis in this country.  If you want to exercise

22   your right to proceed without an attorney, and I find that

23   you have knowingly, intelligently, and voluntarily waived

24   your right to counsel, I don't see the point in expending

25   taxpayer funds to appoint a lawyer to shadow your every

1   move and to prepare the case as if they were representing

2   you.

3          That is not fair to opposing counsel.  It is not

4   fair -- to some extent, I think it infringes on your

5   rights, which you have chose freely, to have stand-by

6   counsel.  I am sorry, to exercise your right to proceed

7   without counsel, and it is not fair to the taxpayers.

8          For the reasons that I still have questions as to

9   whether you're qualified to receive a CJA-appointed

10  attorney based on the minimal information contained in

11  this affidavit, and for the other reasons that I

12  mentioned, I am going to require you to, if you wish to

13  have stand-by counsel, I will deny that request at this

14  point.  I will need you to file a new affidavit that

15  contains sufficient information for this Court to

16  determine whether or not you qualify.

17         And, in addition to the -- well, I will wait to see

18  what you send me for an affidavit, but I do want to know

19  all of your assets in detail; bank accounts.  You have no

20  bank accounts listed here.  You have a home, a town home,

21  a car, two cars.  You have -- you have indicated that you

22  have 1,500, I think, in money on hand, and that you make

23  4,000 per month.

24         If that has changed, then you need to submit that

25  in a new affidavit.  And I want to know all of your assets

1    and all of your expenses.  And they have to be reasonable

2    expenses that are expected.  Because I don't believe

3    taxpayer funds should be used when you are making -- it is

4    your choice to make it, but if you are spending $600 a

5    month in tithing to the church, that is your choice to

6    make.  I think that is money that could be used for

7    appointment of counsel.

8         So I need you to be as clear as possible so I can

9    make an adequate determination as to whether you qualify

10   for Criminal Justice Act counsel as stand-by.

11        THE DEFENDANT:  So, Your Honor, you are making this

12   request to see if I qualify for any stand-by assistance at

13   all?

14        THE COURT:  Right.  If you wish to have stand-by

15   counsel, I am open to doing that provided you provide me

16   with a motion, with an affidavit that is going to tell me

17   that you do qualify for CJA-appointed counsel.  Because I

18   look at this affidavit, and I think they probably

19   shouldn't have assigned appointed counsel because you have

20   enough assets to cover an attorney.

21        But, if you want one, you provide that information

22   to me, give me as much as you can.  If I have any

23   questions, I will come back.  And then I also request that

24   if you want to have it, in addition to submitting the

25   financial information to see if you qualify, then you can

1    file a motion to have a lawyer, an investigator, an expert

2    appointed.  But you have to follow the procedure that is

3    set forth in 18 United States Code Section 3006A.

4              MR. KLEIN:  May I ask a clarifying question on

5    that, Your Honor?

6              THE COURT:  You may, Your Honor.

7              MR. KLEIN:  The Courts has already authorized an

8    investigator on this case.  Does that authorizatoin still

9    stand?

10             THE COURT:  No, it does not, until I find out

11   whether he qualifies for that.  So I will withdraw that.

12             MR. KLEIN:  I guess a related inquiry is the Court

13   has previously authorized -- because, as I stated in the

14   motion, I have been the point person for all defendants.

15   The Court authorized expert funds for conversion of

16   discovery.

17             I have recently filed a motion for additional

18   expert funds for that purpose because of additional

19   discovery that we have received, and that has not been

20   ruled on yet.  So I guess as a procedural matter --

21             THE COURT:  I have to find out.  I honestly only

22   looked at -- I didn't look -- I didn't think of doing that

23   at the last hearing -- looking at the financial

24   affidavits.  I don't know if they all qualify.  If

25   somebody qualifies for that, clearly from the affidavit

1    and I have enough information, then I will allow that

2    payment to be made to the computer person.

3           MR. KLEIN:  So I don't need to have another counsel

4    re-file that?

5           THE COURT:  I think with respect to that, I will

6    let that stand at this point, but I need to make sure that

7    one, at least, of the defendants qualifies for CJA

8    appointment.

9           MR. KLEIN:  Thank you, Your Honor.

10          THE COURT:  All right.  Do you have any questions

11   about that portion of my ruling?

12          THE DEFENDANT:  I do not, Your Honor.

13          THE COURT:  Okay.  All right.  Then, having been

14   advised of the advantages of having counsel and the

15   disadvantages and dangers of proceeding without counsel,

16   and given the nature of the charges against you and the

17   possible consequences in the event that you are convicted,

18   are you certain that you want me to allow you -- allow

19   Mr. Klein to withdraw as your counsel and allow you to

20   proceed to represent yourself?

21          THE DEFENDANT:  I am.

22          THE COURT:  All right.  Having -- do you have any

23   argument you wish to make, Mr. Klein?

24          MR. KLEIN:  No, Your Honor.  I would like to tee up

25   two things for the Court before the Court discharges me.

1    One thing is the Court has authorized disclosure of grand

2    jury information to Mr. Pawelski through Document 113.  I

3    have spoken to Ms. Paluch about that.  I don't think the

4    Government has any opposition to that order applying to

5    Mr. Brokaw, as well.

6         THE COURT:  I don't have any problem with that.  Is

7    that correct?

8         MS. PALUCH:  That's correct, Your Honor.

9         THE COURT:  I don't have any -- I granted it.  I

10   just leave it between the Assistant United States Attorney

11   and the opposing counsel or the individuals.

12        MR. KLEIN:  Your Honor, the only other thing is as

13   a bond condition, Mr. Brokaw has a no-contact order with

14   his co-defendants.  Obviously there will be two defendants

15   representing themselves, so I think that is difficult

16   workability.  So I would ask -- I will tee that for the

17   Court and ask the Court to modify that bond condition to

18   allow Mr. Brokaw to have contact with Mr. Pawelski at this

19   point.

20        THE COURT:  And I take it that was the Magistrate

21   Judge that entered that order?

22        MR. KLEIN:  Yes.

23        THE COURT:  You need to take that up with the

24   Magistrate Judge, then.  It is modifying his order or her

25   order.

1          MR. KLEIN:  Your Honor, I think the Court has

2     authority.

3          THE COURT:  I have no idea why he said no contact.

4     So you can tee it up to me.  I will not do anything on an

5     oral.  If you want to do a written motion, I will decide

6     whether I want to refer it up or not.

7          Anything further?

8          MR. KLEIN:  I have nothing further, Your Honor.

9          THE COURT:  Having advised Mr. Brokaw of the risks

10    and limitations of proceeding pro se and inquiring into

11    his abilities and willingness to represent himself in this

12    court and abide by the Court's rules and the rules of

13    criminal procedure and evidence, the Court finds that

14    Mr. Brokaw is knowingly, voluntarily, and intelligently

15    waiving his rights under the U.S. Constitution to have the

16    Court appoint a lawyer to represent him.

17          The Court further finds that Mr. Brokaw is

18    voluntarily exercising his informed free will to refuse

19    further representation by court-appointed counsel and

20    exercising his right under the case of Faretta and its

21    progeny to represent himself in these proceedings.

22          Accordingly, the Court will allow Mr. Klein to

23    withdraw as counsel and Mr. Brokaw to proceed pro se.

24          As stated previously, the Court denies without

25    prejudice the request for appointment of Mr. Klein as

 1    stand-by counsel.  Although, I will tell you, Mr. Klein,

 2    that in your motion, what you are describing in most parts

 3    is not truly stand-by counsel, that is more advisory

 4    counsel.  And there is a big difference between the two.

 5         So, as I said, if he wishes to have someone, if

 6    Mr. Brokaw wishes to have you or another CJA attorney

 7    appointed, he is going to have to submit a new financial

 8    affidavit that contains much more information, gives me

 9    all of his assets, all of his liabilities and

10    expenditures.  And if I need supporting documentation, I

11    will ask for that.  I may ask for income tax filings,

12    things like that, to make sure that what is contained in

13    the affidavit is, indeed, true and correct.

14         So, I deny that without prejudice to re-file with

15    the proper information that would convince me that he is

16    eligible for CJA-appointed counsel, and the reasons he

17    would need to have CJA counsel appointed, since he has

18    freely and voluntarily decided he doesn't need an

19    attorney.

20         All right.  Is there anything further to be brought

21    to the Court's attention?

22         MS. PALUCH:  No, Your Honor.

23         THE COURT:  Mr. Brokaw?

24         THE DEFENDANT:  No, Your Honor.  I just wanted to

25    make a comment that I believe it was Federal Judge James

1    Alger who said that one's constitutional rights can only

2    be defended by a belligerent claimant, himself.  And that

3    is one of the reasons I want to do this myself.

4            THE COURT:  Right.

5            THE DEFENDANT:  Nobody else can claim my

6    constitutionally-protected rights but me, and that has

7    been stated by the courts.

8            THE COURT:  All right.  And that is why I granted

9    your motion to be able to proceed to represent yourself.

10           All right.  If there is nothing further, then,

11   Mr. Brokaw, I allow you to remain free on bond subject to

12   the same terms and conditions as the original order.

13           Court will be in recess.

14           (Proceedings conclude at 11:09 a.m.)

15           **R E P O R T E R ' S   C E R T I F I C A T E**

16           I, Darlene M. Martinez, Official Certified

17   Shorthand Reporter for the United States District Court,

18   District of Colorado, do hereby certify that the foregoing

19   is a true and accurate transcript of the proceedings had

20   as taken stenographically by me at the time and place

21   aforementioned.

22           Dated this 25th day of June, 2015.

23           _____

24           s/Darlene M. Martinez

25           RMR, CRR