George Thomas Brokaw
C/o Reg. No.: 39966-013
FCI-Englewood Satellite Camp
9595 W. Quincy Ave.
Littleton, CO 80123

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JAN 18 2018**

JEFFREY P. COLWELL
CLERK

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO, DENVER DIVISION

| | |
|---|---|
| GEORGE THOMAS BROKAW, <br> (Reg. No.:          ), <br>      Petitioner/Movant, <br>           (Plaintiff) <br> v. <br><br> UNITED STATES OF AMERICA, <br>      Respondent. <br>          (Defendant) | MOTION UNDER 28 U.S.C. § 2255 <br><br> CASE NO.: <br><br> JUDGE: CHRISTINE M. ARGUELLO <br> (United States District Judge) |

COMES NOW, George Thomas Brokaw, a sentient man (hereinafter "Brokaw"), as Plaintiff/Petitioner/Movant, without benefit of counsel, pro persona, de bene esse, to file the herein referenced Motion under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence, by a Person in Federal Custody.

Petitioner/Movant requests this Court review the instant Petition/Motion liberally because he is not represented by attorney, as admonished by the Supreme Court of the United States in Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). If Petitioner's motion for relief can be read "to state a valid claim on which the [claimant] could prevail, [the court] should, despite the [claimant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," entertain his pleading. Hall v. bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

-1-

## INTRODUCTION

Petitioner/Movant's 2255 Motion, herewith filed, is timely under the doctrine of equitable tolling, as declared with evidentiary facts for support, discovered through Petitioner's exercise of due diligence to support his reasonable claim for timeliness under the objective test pursuant Section 2255(f)(3). It is due to "extraordinary circumstances" that Petitioner is able to overcome any contrary claim of untimeliness for the instant motion. <u>United States v. Gabaldon</u>, 523 F.3d 1121, 1124 (10th Cir. 2000).

Equitable tolling of the one-year limitation period under Section 2255 is available when an inmate demonstrates: (1) that he has diligently pursued his claims; and (2) that his failure to timely file was caused by "extraordinary circumstances." <u>Galbadon</u>, supra, quoating <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000). The doctrine of <u>equitable tolling</u>, however, should be applied in this context only "in rare and exceptional circumstance," including (1) "when a prisoner is <u>actually innocent</u>;" (2) "when an adversary's conduct-or other uncontrollable circumstance prevents a prisoner from timely filing;" or (30 "when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." <u>Gibson v. Klinger</u>, 232 F.3d 799 (10th Cir. 2000)(citing <u>Miller v. Marr</u>, 141 F.3d 976, 978 (10th Cir. 1998) and <u>Irwin v. Dep't of Vetrans Affairs</u>, 489 U.S. 89, 96 (1990). "[A]n inmate bears a <u>strong burden to show specific facts</u> to support his claim of extraordinary circumstances and due diligence." <u>Yang v.</u>

Archuleta, 525 F. 3d 925, 928 (10th Cir. 2008)(emphasis added)(quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) and citing Miller, 141 F.3d at 978).

Petitioner/Movant raises argument of "actual innocence" as to why the one-year statute of limitation should be tolled, and therefore his 2255 Motion should NOT be dismissed.

Ordinarily, Title 28, United States Code, Section 2255 permits a prisoner in custody, under a sentence of a United States District Court, to challenge his sentence on several grounds. Any motion filed pursuant to Section 2255, however, must be filed within one year from the latest of the following dates:

(1) the date on which the judgment becomes final;

(2) the date on which the impediment to making a motion created by the governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (f). Additionally, the one-year period may be equitably tolled under certain circumstances. Miller v. Marr, 141 F. 3d 976,978 (10th Cir. 1998)(supra, stating one-year time limit is subject to equitable tolling).

Seventeen years of United States Courts of Appeal holdings establish that "'final judgment' occurs on the event where petition for certiorari expires and that the statute of limitation for filing a 2255 motion runs from the one-year period

after certiorari petition expires or is denied." <u>United States of America v. Harrison</u>, 680 Fed. Appx. 678; 2017 U.S. App. LEXIS 3252, with citation to <u>United States of America v. Burch</u>, 202 F.3d 1274, 1279 (10th Cir. 2000).

## PROCEDURAL HISTORY

The following chronology of events are material to determination of the timeliness to file Petitioner's 2255 Motion:

1. On September 23, 2013, a federal grand jury returned a multiple count indictment against Petitioner and his co-defendants, in the United States District Court, district of Colorado (Denver), alleging defendants conspired together to file false calims for refund from the Internal Revenue Service (IRS), and to corruptly endeavor to obstruct or impede the due administration of the Internal Revenue Laws.

2. After a second superceding indictment, drafted because one of the four defendants was excused for a life threatening medical condition, the case proceeded to trial with the three remaining defendants, who were pro se throughout trial. (Petitioner fired his court appointed counsel because of apparent incompetence to defend petitioner's constitutional interests).

3. After a three-day trial, held from November 4, 2014 through November 7, 2014, the jury convicted the petitioner and his co-defendants on four counts of the conspiracy charges in the superceding indictment for violations under 18 U.S.C. §§ 286, 287, and 371 and 26 U.S.C. § 7212(a).

4. On February 10, 2015, Petitioner was sentenced to 78 months imprisonment and 36 months supervised release, and a

-4-

$15,000.00 dollar fine.

5.   The trial court entered the judgment of conviction Februaray 25, 2015.

6.   On March 4, 2015, Petitioner timely filed his notice of appeal.

7.   After briefing and oral argument, on June 2, 2016, in a sixty-one page opinion, the United States Court of appeals for the Tenth Circuit affirmed the trial court's conviction of Petitioner.

8.   Petitioner, after the Court of Appeals issued it Order and Judgment, had ninety days to file a writ of certiorari into the Supreme Court, which remedy Petitioner did not seek.

9.   The judgment then became a "final judgment" on the date that petition for certiorari expired.

10.  The Petitioner then had a one-year statute of limitation to file a Section 2255 motion under Title 28, United States Code, from the date that petition for certiorari expired.

11.  The Petitioner's one-year statute of limitation expired on or about September 26, 2017, for meeting the deadline for Petitioner's motion under Section 2255(f)(1).

12.  The Petitioner, however, is entitled to equitable tolling of the one-year time limit because his failure to timely file by the one-year deadline after "final judgment", was caused by "extrordinary circumstances," which Petitioner can show with specific facts to support his claim of extraordianry circumstance and due diligence.

**ARGUMENT**

-5-

## I.
### PETITIONER IS ENTITLED TO FILE HIS 2255 MOTION OUTSIDE THE ONE-YEAR TIME LIMIT PRESCRIBED BY SECTION 2255 UNDER THE DOCTRINE OF EQUITABLE TOLLING WHERE HE IS ACTUALLY INNOCENT

### A.
### Petitioner Affirms Eligibility for Equitable Tolling Because of Actual Innocence Due to a Fatally Flawed Indictment That Could not be Cured by Verdict

1. **An Indictment to be Valid Must be Presented in Open Court.**

Petitioner was tried for a violation of the internal revenue laws. The jurisdiction of a United States District Court created under 28 U.S.C. §§ 81 et seq. for the district of Colorado (28 U.S.C. § 85), the court of first instance, is designated under 26 U.S.C. § 7402(f) "[t]o issue orders, processes and judgments" necessary or appropriate for enforcement of the internal revenue laws. Subparagraph (f), General jurisdiction, defines the general jurisdiction of such district court in civil actions involving internal revenue under Section 1340 of Title 28 of the United States Code, which provides "[t]he district courts have original jurisdiction of an civil action arising under any Act of Congress providing for internal revenue... ." The grant of original jurisdiction under 28 U.S.C. § 1340 is a grant of general jurisdiction. See State Marine Lines, Inc. v. Shultz, (1973, DC SC) 359 F.Supp. 512; Mill factors Corp. v. United States, (1995, SD NY) 391 F. Supp. 387, 74 USTC-1 " 9334. See EXHIBIT "4".

This proves conclusively that Brokaw was prosecuted in a non-judicial, legislative court created under statute in contradistinction to Article III of the Constitution, which are courts of limited jurisdiction, to wit:

**Limited jurisdiction.** "[J]urisdiction confined to a particular type of case or that may be exercised only under statutory limits and prescriptions.–Also termed special jurisdiction... . The federal courts...cannot be courts of general jurisdiction." See Black's Law Dict. 930 (9th ed 2009)(defining "limited jurisdiction").

Where the federal grand jury returned their indictment of September 23, 2017, and presumably as well any subsequent superseding indictment, into the court of first instance, such court was incapable of any qualification for being "open" and in "session" to conduct "judicial business," as defined by law.

The Supreme Court has frequently held that "[t]o constitute a valid indictment for an infamous crime in a Federal Court, it must have been publicly presented in open court, the grand jurors being present answering to their names, the indictment then being delivered to the foreman to the court and the fact entered in the record." Crain v. United States, 162 U.S. 625, 644, 40 L.Ed. 1097 1097, 1102, 1103, 16 S.Ct. 952.

**Open court.** Common law requires a trial in "open court" means a court to which the public have a right to be admitted. People v. Rose, 82 Misc. 2d 429, 368 N.Y.S. 2d 387, 390. This term may mean either a court which has been formally convened and declared open for the transaction of its proper judicial business, or a court which is freely open to spectators. For an accused's right to an open and public trial see public trial." Black's Law Dict. 1090 (6th ed. 1990)(defining "open court")(emphasis added).

The term "public trial" contemplated by U.S. Const. Amendment VI incorporates a court session which is "public" and is "open," and therefore a "public trial."

**Session.** Strictly speaking, the word "session," as applied to a court of justice...is the time during which it actually sits for the transaction of judicial business." Black's Law Dict. 1371 (6th ed. 1990)(defining "session").

Only a court of "limited jurisdiction" under U.S. Const.

Art. III, §§ 1 and 2, is capable of conducting "judical business." Judicial business is "[s]uch as involves the exercise of judicial power" for "the administration of justice, or a court of justice, or a judge thereof, or the proceedings therein, as judicial power; judicial proceedings." See Black's Law Dict. pages 846-847, (6th ed. 1990)(defining "judicial" and "judicial business").

Petitioner and his co-defendants, in the court of first instance, a legislative Article I court, which includes Article IV courts, was tried under an indictment not presented in a court that was "open" and in "session" to conduct "judicial business," as defined by law, to entertain a federal grand jury indictment alleging multiple counts of conspiracy to defraud the United States, arising out of alleged violations of the internal revenue laws. The indictment, trial and conviction of petitioner in a non-judicial court incapable of being "open" or in "session" as contemplated by the Constitution under the Sixth Amendment, was void ab initio. Such court lacked subject matter jurisdiction to hear the complaint on indictment, and was barred from going forward to determine innocence or guilt of Petitoner Brokaw on the government's claims. Thus, the Petitioner is <u>actually innocent</u> of the conspiracy charges of fraud, and there was absence of facts that are prerequisite for any verdict of judgment of conviction or sentence given to Petitioner/Movant Brokaw, proving specific facts to support equitable tolling.

Petitioner has thus met the burden demonstrating extraordinary circumstances and due diligence for filing his 2255 Motion.

-8-

Whereupon, each of the grounds presented for relief is supported by the following Memorandum with points and authorities:

## MEMORANDUM IN SUPPORT OF MOTION

### I.
### GROUND ONE

The court of first instance erred in assuming jurisdiction over the person of the defendant and the subject-matter of the dispute. Such court lacked jurisdiction over the nature and cause of the action and the relief sought.

### A.
### Presumption that Defendant Brokaw was/is a Federal Citizen, was/is Error to the Court

Petitioner/Movant's full Christian name and patronymic is spelled George Thomas Brokaw, which is ipso facto his legal name and not a fictitious name. Under the Law of Names, any alteration of a man's name renders it a fictional or assumed name differing from his true name consisting of his Christian name and patronymic. See Black's Law Dict. 624 (6th ed. 1990)(defining "fictitious name"). Such true name must be properly spelled orthographically according to the rules of the English language. A sentient man or woman can have only one true name and can be charged for a violation of law only in his/her true name. See Bouvier's Law Dict. (8th ed. 1896)(defining "name").

1. **False Birth Certification Facilitated Government's Scheme to Alter Political Status of Birthright Citizens in the Several States.**

False birth certificates in the several States have been promulgated nation-wide to personate newborn children with the assumed character of illigitimacy, without the knowing consent of

-9-

lawfully wedded birth parents. This is currently accomplished by listing the mother of the child in the birth certificate only in her umarried name or "maiden name," which a woman has before marriage. A certificate of birth is an official record of the parentage of a newborn child. It constitutes prima facie evidence the child was illegitimately conceived and born out of wedlock. Whereuon, the birth state assumes protection of such child under disability of illigitimacy and lack of parentage, pursuant the Roman doctrine of parens patriae, where the state regarded as a sovereign; the state in its capacity as provider of protection to those under legal disability to care for themselves. See Black's Law Dict. 1287 (10th ed. 2014)(defining "parens patriae").

Under statute, a "parent" is defined to be the natural father or the natural mother of a child born of their <u>valid marriage</u>. Marriage is the joining of a man and a woman through public notice or proclamation of a matrimonial contract and intended celebration of such contract under the banns of matrimony. No matrimonial contract can be impaired by the state and no license can legally be required but solemnization of the contract may be conducted by a religious organization or public official if desired. It is nevertheless a contract protected by the U.S. Const. Art. I, § 10. A "marriage license" is the certificate or document granting permission by the state to "intermarry." Intermarriage is miscegenation or mixture of races through marriage. Statues banning interracial marriges were held by the U.S. Supreme Court to be unconstitutional in <u>Loving v. Virginia</u>, 388 U.S. 1 87 S.Ct. 1817 (1967), which caused the ultimate repeal of such statutes in certain states as late as the

year 2000. Such licensing is now discontinued under the Equal Protection Clause of the 14th Amendment.

Since the early nineteen twenties, the Federal Government has had a hidden agenda to abbrogate birthright citizenship of native-born citizens of the several States, through such unconstitutional acts as the Federal Maternity Act of November 23, 1921 (42 Stat. at L. 224, chapt. 135, Comp. Stat. § 9178 1/2), to bring native-born inhabitants of the several States under the guise of federal citizenship as Forteenth Amendment "persons." The aforesaid Act provided appropriations for a period of five years to be apportioned among such of the several States as accepted and complied with its provisons, such as birth certificate registration, for the purpose of cooperating with them to reduce maternal and infant mortality and to protect the health of mothers and infants born out of wedlock.

From that date forward to the present, the births of children are registered within the political jurisdiction of the place where the child is born, jus soli. Jus Soli is Latin "right of soil" (1884). The rule that a child's citizenship is determined by place of birth. This is the U.S. rule, as affirmed by the 14th Amendment to the Constitution. See Black's Law Dict. 995 (10 ed. 2014)(defining "jus soli"). It should be noted that formerly births were recorded in the family Bible.

Birth certificate registration in a state's registry office deceives lawfully wedded parents, having children within marriage vows, surreptitiously and deprives them of certain family rights guaranteed under constitutional private right to pursuit of happiness for themselves and their birth-registered child. The

-11

child, under presumed disability of illegitimacy, is deemed to be stateless and qualifies as a "person" within the meaning of the provision in the U.S. Const. 14th Amendment, and is given nationality as a U.S. person and citizen of the United States. For proof, see Levy v. Louisiana, 391 U.S. 68 (1968) and as was similarly held in Gomez v. Perez, 409 U.S. 535 (1973).

The mother of an illegitimate child becomes the sole guardian unless divested of such by judicial decree. The father of the child is divested of his satus as parent, unless otherwise proven through a paternity test involving DNA identification and tissue-typing to verify the biological father. Otherwise, he is not deemed to be the father of a family, paterfamilias, under examination. He has no paternal authority, patria potestas. The child will also not be allowed the status of being sui juris, and will continue to be under a legal disability and not possess full social and civil rights. He will be of "subject status," owing allegiance to a sovereign (the United States and the State in which he resides), thereby being subject to its laws and its courts.

The child becomes a ward of the state in which it has residence, under the Equal Protection Clause of the 14th Amendment. And because a child is considered to be incompetent it is considered to be a ward of any court and must be represented by an attorney until the child reaches the age of majority, whereupon he is returned to his civic rights of citizenship under the 14th Amendment.

The Supreme Court of the United States has held that birthright citizenship is a right conferred by the Constitution

-12-

under U.S. Const. Art. I, § 2, cl. 1. If born within one of the several States, one is a state Citizen specifically recognized under national and international law as one of "the People of the several states" from whom all powers of government emanate. Accordingly, "Congress having no power to abridge the rights conferred by the Constitution ... a fortiori no act or omission of Congress ... can affect citizenship acquired as a birthright." United States v. Wong Kim Ark, 169 U.S. 649, 703 (1898).

Under the pretext of being born an illegitimate child the federal government denationalizes natural-born state Citizens, called "foreign state nationals," to become federal citizens called a "citizen of the United States," having next to no rights. If one believes the "Equal Protection Clause" of the Fourteenth Amendment affords one rights contemplated to the "People of the several States," guess again. The protections of privileges and immunities of "citizens of the United States" are all but a nullity, to wit:

"The Privileges or Immunities Clause of the Fourteenth Amendment protects very few rights because it neither incorporates any of the Bill of Rights nor protects all rights of individual citizens. See Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873). Instead, this provision protects only those rights peculiar to being a citizen of the federal government; it does not protect those rights which relate to state citizenship." Jones v. Temmer, 829 F.Supp. 1226, 1232; 1993 LEXIS 11433.

Where the 14th Amendment Privileges and Immunities Clause does not incorporate any of the Bill of Rights, no constitutional rights are provided to protect their private rights to life, liberty, property, pursuit of happiness, privacy or reputation. They have, ipso facto, no "civil liberties," to wit:

"Civil liberties. Personal, natural rights guaranteed by

-13-

Constitution; e.g., freedom of speech, press, freedom from discrimination, etc. Body of law dealing with <u>natural liberties</u>, shorn of excesses which invade equal rights of others. Constitutionally, <u>they are constraints on government</u>. Black's Law Dict. 246 (6th ed. 1990) (defining "civil liberties") (emphasis added).

"Natural liberties" embrace "[t]he power to act as one wishes without any restraint or control, unless by nature." 1 Bl. Comm. 125. Thus, such are the rights inherent in us by birth by a grant of nature and nature's god. Such rights are secured by and protected by the Constitution. They differ from "civil rights" which are statutory rights granted and protected by legislative act of Congress, such as the "Civil Rights Act" which protects personal rights from being disparaged because of race, color, age or religion. These rights are secured to federal citizens through the 13th and 14th amendments. State Citizens have <u>civil liberties</u>; federal citizens have <u>civil rights</u>.

Illegitimate new-born children are declared "indigent" and qualify for Social Security Insurance. They can receive a social security number (SSN) as a new-born at their mother's request or later. Social security numbers are only given to <u>indigent children</u> as part of the official birth registration process as well as <u>immigrants</u>, as part of the enumeration and immigration process. See 42 C.F.R. § 422.103 (social security numbers). The Social Security Administration also maintains a record of earnings and self-employment income that can be used by the Internal Revenue Service (IRS), an agency by estoppel, for individuals possessing a SSN. At about the age of 14 my parents unwittingly applied for a social security number for me. They were misled by government propaganda that everyone had to have a

-14-

SSN in order to seek and have employment as well as filing income tax returns for taxes on income. This, of course was further deception promoted by the government to receive an end result contrary to law. So what has been the end result sought under such deception? It was simply to remove constitutional restraints on government, to the prejudice and harm of the public.

Birthright, native-born state Citizens a.k.a. "People of the several States" are foreign state nationals owing no allegiance to the United States. They are not subject to its laws or being tried in its courts. Kawakita v. United States, 343 U.S. 717 (1952). Similarly, they cannot be made liable for federal income taxes under U.S. revenue laws. United States v. Matheson, 532 F.2d 209 at 811 (2nd Cir. 1976).

The federal government facilitated the false imprisonment of defendant Brokaw through denial of his political status in the national and international communities through forced expatriation, which has been held by the Supreme Court of the United States to be "cruel and unusual punishment" under U.S. Const., Amendment the Eighth. Trop v. Dulles, 356 U.S. 86, 101-102 (1958); Hall v. Florida, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014).

Expatriation was accomplished by the federal government with the complicity of all of the branches of the state and national governments, in a conspiratorial scheme through false birth certification. The falsehood perpetrated was to personate defendant Brokaw, as a newborn child, with the assumed character of a federal citizen, without the knowing consent of his parents.

-15-

2.   **The Federal Government Impermissibly Exercised Superior Sovereign Authority of Congress Over Brokaw's Sovereign Prerogatives, Which Are Paramount Over State or Federal Sovereign Authority.**

Petitioner/Movant is a <u>foreign state national</u> and <u>alien</u> to the United States having nationality as **Ohioan**, not United States Nationality. He is a member of the "posterity" of "We the People" that created both the state and federal governments. The superior sovereignty of the "People of the several States" is evidenced in the Constitution under Article I, § 2, cl. 1 and cl. 2. The <u>people</u> are the state in fact, consisting of all natural-born state Citizens:

> "[E]very particle of authority which originally resided either in Congress, or in any branch of the state government, derived from the people who were permanent inhabitants of each province in the first instance, and afterwards became citizens of each state; that this authority was conveyed by each body politic separately, and not by all the people in the several provinces, or states, jointly, and, of course, that no authority could be conveyed to the whole, but that which previously was possessed by the several parts; that <u>the distinction between a state and the people of a state has in this respect no foundation, each expression in substance meaning the same thing;</u> consequently, that one ground of argument at the bar, tending to show the superior sovereignty of Congress ... was not tenable, and therefore that upon that ground the exercise of the authority in question cannot be supported." <u>Penhallow v. Doane</u>, (U.S.) 3 Dall. 54, 94, 1 L.Ed. 507, 524 (1793)(emphasis added).

3.   **The Federal Government <u>Impermissibly</u> Used The 14th Amendment Under Pretext of U.S. Const. Article V, to Destroy Brokaw's Political Status Acquired Under the Constitution.**

No constitutional possibility is available to the Federal government to remove sovereignty from native-born state Citizens pursuant Article V of the Constitution:

> "There is an intrinsic limit to the power of amendment, under art. 5 of the Constitution. It must be in harmony with the system of government created by that Constitution, and not destructive of it." <u>Fairchild v. Hughes</u>, 258 U.S. 126,

-16-

66 L.Ed. 499 (1922).

The Supreme Court in the foregoing case clearly elucidates the inviolability of the sovereignty of the people as follows:

"Article 5 was provided as a means by which to change the incidents of the Federal government power delegated by the sovereign people to their common agency, their Federal government to improve the form and structure of said Federal government, or, as lateley decided in National Prohibition Cases (Rhode Island v. Palmer) 253 U.S. 350, 64 L.Ed. 946, 40 Sup. Ct. Rep. 486, to delegate new powers to that governmental agency.

"It was not established to amend, abolish, destroy, or limit, in any way the sovereignty of the people; i.e., to determine [*Pg. 501] who shall constitute "people".

"The ultimate sovereignty of the people, as expressed in the free determination of suffrage qualification, the right of the people to determine for themselves who shall exercise their sovereignty, who shall govern them, is not even delegated to their state governments, but reserved under the contol of the people themselves in their state Constitutions. Changing the sovereign power is not an end or purpose of Federal government. The amending clause was not provided for amending the people. The people were not setting up an amending agency for their own destruction. The powers of their Federal govermental agency were not limited, and those limits committed to writing, to the end the sovereign people, who themselves imposed the limits, should have their sovereignty destroyed, infringed, or impaired by agents selected to change these "powers of government" perfect the Federal government, or grant to it new governmental powers. The creature is not greater than the creator.

"Article 5 itself ... was never intended to deal with-could not, in the nature of the case, deal with-or affect the sovereignty of the people.

"When they ratified the Constitution, the people were not asked to cede their sovereign power, or to delegate to any agents whatsoever the right to interfere with their sovereignty. And § 2, art. 1, recognized its continuance in them as before.

"The ultimate sovereignty of the people exists in their states, outside their [*Pg. 502] Federal Constitution, outside and beyond their Federal government. An amending clause for perfecting and changing the Federal Constitution bears no relation to the sovereignty of the people themselves, by their own political action in amending their state constitutions, where they have deposited it, unless

-17-

forcibly changed by revolution."<u>Fairchild</u>, 66 L.Ed. at 501, 502.

Thus, the conclusive presumption is here established that neither Congress, the executive nor the courts, have the power and authority through the process of amendment or otherwise such as false birth certifications, destroy, amend, infringe or impair the sovereignty of the people in order for the Federal government to usurp authority over them either with its laws or its courts. Contrary to Brokaw's foreign state national political status, the court of first instance disavowed Brokaw's assertions of having such status to usurp jurisdiction over his person and the subject-matter before it, to accomplish unconstitutional ends of criminal conviction without authority and false imprisonment.

Chief Justice Marshal in <u>Cohen v. Virginia</u>, 6 Wheat. 264-404, 5 L.Ed. 257-291 stated:

> "It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should.
> ***
> "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be <u>treason to the Constitution</u>." Id. (emphasis added).

The court of first instance usurped jurisdiction without any authority over the person of the defendant or the subject matter in dispute, in violation of the Constitution and laws. The judgment of coviction and committment was therefore without lawful force and VOID, ab initio!

4.  **The Petitioner/Movant's Birth State is Documented and Authenticated under Act of State with the Secretary of State of the State of Ohio and the Secretary of State's Office of the United States Showing False Certification of Brokaw Being Born Out of Wedlock to a Presumed Unmarried**

-18-

Woman, Designated by Maiden Name, Contrary to Fact of Legitimate Birth to Lawfully Wedded Parents.

**EXHIBITS "1", "2" and "3"** clearly provides evidence of the legitimacy of Brokaw to lawfully wedded parents, Mr. and Mrs. George William Brokaw, with birth record of the hospital where birth transpired, signed by Dr. Mc Eldowney, and identified as an "Ohioan" by birth. Particularly cogent is the Certified copy of the passport application, whereby the United States Dept. of State has recognized Brokaw as "Ohioan" by birth and not a Fourteenth Amendment "citizen of the United States." Such documentary evidence establishes Brokaw's nationality as Ohioan, a foreign state national owing no allegience to the United States government and not subject to its laws or its courts.

## II.
## GROUND TWO

Petitioner/Movant's constitutional private right to liberty was unconstitutionally suspended for alleged violation of government's public rights under statute, in a legislative court lacking the judicial powers of a court of justice having competent jurisdiction, and incapable of dispensing Fifth Amendment due process of law or a judicial trial which constituted constitutional violation of a species of "bill of attainder," called a "bill of pains and penalties," under U.S. Const. Art.I, § 9, cl. 3. United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715, 14 L.Ed. 484, 492; United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252.

### A.
### Suspension of Defendant Brokaw's Liberty in a Non-Art. III Court was Error to the Court and VOID, Ab Inito

As previously discussed, the 14th Amendment does not incorporate any of the Bill of Rights enjoyed by the "People of the several States," identified in U.S Const. Art. I, § 1, cl. 1 and cl. 2. The Bill of Rights comprise the first ten Amendments to the U.S. Constitution providing for individual rights, freedoms, and protections of _private rights_ to life, liberty, property, happiness, privacy and reputation. Because federal citizens don't have a right to U.S. Const. Art. III, § 2, cl. 1 judicial court of law called a _court of justice_, they do not have the right to constitutional "indictment of Grand Jury" or "due process of law" under Amendment V. Neither do they have right to "speedy and public trial, by an impartial jury" in open courts conducting forensic hearings, or "be informed of the nature and cause of the accusation" against them or "Assistance of [constitutional] Counsel" under Amendment VI. Neither do they have Seventh Amendment "right of trial by jury." Need I say more?

1. **Because of Lack of Constitutional Protections for Federal Citizen/Subjects, U.S. Const. Art. III Courts were Replaced with Art. IV, Legislative/Territorial Courts, which are Similar, to Give Appearance of Justice.**

Because there was such a conflict due to lack of constitutional protections for federal citizens, U.S. Const. Art. III courts, created with Judiciary Act of 1789 by the First Congress, were done away with the Act of June 25, 1948, ch 646, § 1, 62 Stat. 869, title 28 of the United States Code, entitled "Judicial Code and Judiciary," in a clandestined and surreptitious way for substitution of Art. III trial courts called a "District Court of the United States" with an Art. IV court created under Art. IV, § 3, cl. 2, with similar name called today a "United States District Court." These non-Art. III courts

-20-

are imposters, pretending to possess Art. III judicial powers. These courts are incapable of dispensing due process of law and rendering a final or authentic binding judgment against a losing party. These are not courts of competent jurisdiction and can only render "advisory opinions" which are <u>hypothetical interpretations of the law</u>. Such courts are not one of the "inferior courts" created under Section 3 of the Judiciary Act of September 24, 1789 by the First Congress (1 Stat. 73), having <u>limited jurisdiction</u>. They are courts of <u>general jurisdiction</u> having broad powers over civil and criminal cases and limited to having exclusive jurisdiction in <u>federal territories only</u> that are not intended to be brought into the Union of States. They are U.S. Const. Article I, legislative courts having powers similar to an administrative agency. U.S. Art. IV, territorial courts fall under the ambit of legislative courts where Congress has exclusive legislative jurisdiction.

2.  **The Transfer of Historic "Criminal Proceedings" to a Legislative, Art. IV, Territorial Court, Violates Constitutional Separation of Powers.**

The term "proceeding" has technical significance, and in a particular sense, means "any application to a <u>court of justice</u> however made, for enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object." Black's Law Dict. 1204 (6th ed. 1990)(defining "proceeding"). A "court of justice" is a "court of law" having judicial powers under U.S. Const. Art. III, limited to "Cases or Controversies" and the "trial of all Crimes." U.S. Const. Art. III § 2, cl. 1 and cl. 2. Criminalization of an act constitutes "[t]he rendering of an act criminal under statutory enactment, [which] is punishible by

-21-

government in its name." Black's Law Dict. 374 (6th ed. 1990)(defining "criminalization"). Neither can a causus omissus be supplied by general usage of Article IV district courts or common consent, nor can time make legal a clear usurpation of power through acquiescence. Most importantly, "'[P]arties cannot consent cure' any Article III violation implicating the structural separation of powers." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 850-51, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

Thus, when "Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." Id., Schor at 851.

3. **The True Distinction Between Courts is as to Juridiction: Limited or General Jurisdiction.**

Courts are distinguished according to jurisdiction: limited or general jurisdiction, to wit;

> **"Limited jurisdiction.** Jurisdiction confined to a particular type of case or that may be exercised only under statutory limits and prescriptions. -Also termed special jurisdiction. It is a principle of first importance that the federal courts are courts of limited juridiction ... . The federal courts ... cannot be courts of general jurisdiction. They are empowered to hear such cases as are within the judicial power of the United States, as defined in the Constitution, and have been entrusted to them by a jurisdictional grant by Congress. Charles Alan Wright, The Law of Federal Courts §7, at 27 (5th ed. 1994)." Black's Law Dict. 930 (9th ed. 2009)(defining "limited jurisdiction") (emphasis added).

> **"General jurisdiction.** The terms 'general' and 'special,' applied to jurisdiction, indicate the difference between a legal authority extending to the whole of a particular subject and one limited to a part; and then applied to the terms of court, the occasion upon which these powers can be respectively exercised. **A court of 'general jurisdiction' is one that takes cognizance of all cases, civil or criminal,**

-22-

of a particular nature. Bomar v. State ex rel. Stewart, 201 Tenn. 480, 300 S.W.2d 885, 887." Black's Law Dict. 684 (6th ed. 1990)(defining "general jurisdiction")(emphasis added).

General jurisdiction is reserved to <u>United States district</u> <u>courts</u>:

> "**District courts.** Each state is comprised of one or more federal judicial districts, and in each district there is a district court. 28 U.S.C.A. § 81 et seq. **The <u>United States</u> <u>district courts</u> are the trial courts with <u>general federal</u> <u>jurisdiction</u>** over cases involving federal laws or offenses and actions between citizens of different states. Each state has at least one district, though many have several judicial districts (e.g. northern, southern, middle districts) or divisions. There is also a United States district court in the District of Columbia. In addition, the commonwealth of Puerto Rico has a United States district court with jurisdiction corresponding to that of district courts in the various states." Black's Law Dict. 476 (6th ed. 1990)(defining "district courts")(emphasis added).

Thus, the <u>only</u> contemporary federal <u>trial courts</u> are district courts in the United States having jurisdiction to hear both civil and criminal matters, called <u>general jurisdiction</u>, within its district:

> "**United States District Court.** A federal <u>trial court</u> having **jurisdiction to hear civil and criminal** cases within its judicial district. The United States is divided in into nearly 100 federal judicial districts. Each state has at least one [federal] judicial district. Also, the District of Columbia, Puerto Rico, Guam, the Virgin Islands, and the Northern Mariana Islands each have one district. -Abbr. **U.S.D.C.**" Black's Law Dict. 1674 (9th ed. 2009)(defining "United States District Court")(emphasis added).

**4.** **The U.S.D.C. For the District of Colorado (Denver), is a Legislative Court of <u>General Jurisdiction</u> Created by Statute as Opposed to the Constitution.**

A <u>legislative court</u> is a species of "court created by a statute, as opposed to one created by a constitution. -Also termed (in federal law) <u>Article I court</u>." Black's Law Dict. 409 (9th ed. 2009)(defining "legislative court").

"**Article I court.** A type of federal legislative court that

-23-

is not bound by the requirements of or protected under U.S. Const. art. III, § 2, and **that performs functions similar to those of an administrative agency** such as issuing **advisory opinions. U.S. art. I, § 8. Cf. ARTICLE III COURT.** Congress also has the power, within certain limits, to create what are called ... Article I tribunals .... These Article I tribunals are really akin to administrative agencies; that is, ... they are not governed by the case or controvesy limitation of Article III ... . At the present time, **Article I courts include territorial courts** [under U.S. Const. art. IV § 3, cl. 2], certain courts in the District of Columbia, courts martial, and legislative courts and administrative agencies that adjudicate **'public rights.'** John E. Nowak & Ronald D. Rotunda, Constitutional Law 22-23 (4th ed. 1991)." Black's Law Dict. 127 (9th ed. 2009)(defining "Article I court")(emphasis added).

Article IV courts are created by virtue of the sovereign congressional faculty, granted under U.S. Const. Art. IV, § 3, cl. 2, exercising power within the limits of cerain boundaries defined by law, such as is fixed by 18 U.S.C. § 7, defining special maritime and territorial jurisdiction of the United States, with specific definition as to the land jurisdiction (territorial jurisdiction) of the United States at § 7(3).

As previously pointed out, these legislative/territorial courts are limited to issuing only non-binding advisory opinions submitted to them for that purpose. "**Federal courts** [having limited jurisdiction under U.S. Const. Art. III for the exercise of judicial powers] **are constitutionally prohibited** from **issuing advisory opinions by the case or controversy** requirement of **U.S. Constitution Art. III.** Only parties named in the request for opinion can rely upon it, and its reliability depends on the accuracy and completeness of all material facts." Black's Law Dict. 1201 (9th ed. 2009)(defining "advisory opinion")(emphasis added).

It is well settled that Art. IV, § 3, cl. 2 courts in territory belonging to the United States, which has not been incorporated into the Union, <u>does not extend constitutional trial by jury, under the Sixth or Seventh Amendments</u>, in any civil or criminal matter. Thus, they provide no <u>judicial trial</u> on matters brought before them. See <u>Hawaii v. Monkichi</u>, 190 U.S. 197; <u>Downes v. Bidwell</u>, 182 U.S. 138; <u>Dorr v. United States</u>, 195 U.S. 138. See also, ifra, <u>Balzac v. Porto Rico</u>, 258 U.S. 298, 304, 305.

Parties coming before a United States District Court having only Art. IV powers are provided a "jury-type" trial before 12 "jurors" who compose a body of <u>special commissioners</u>, called an <u>advisory jury</u>. "The judge remains solely responsible for the findings and may accept or reject the jury's verdict." Black's Law Dict. 855 (6th ed. 1990)(defining "advisory jury").

Article IV trial courts issue non-binding decisions, orders and decrees, because matters decided by them are <u>NOT</u> made judicially, therefore, they are not conclusive as to the rights of the parties and their privies. Their "judgments" are not final judgments res judicata. Their decisions, orders and decrees are a "decree nisi," which will stand as valid unless a party affected by it shall appear and show cause against it, such as appeal, or other appropriate step to avoid it or procure its revocation. When a rule <u>nisi</u> is finally confirmed, for the defendant's failure to show cause against it, it is said to be "made absolute." See Black's Law Dict. 1047 (6th ed 1990)(defining "nisi," "nisi decree," and "nisi prius").

5. **Defendant Brokaw was Denied Constitutional Trial by Jury and Due Process of Law in a Court of Justice having Powers to Fine and Imprison as a Court of Record.**

Defendant Brokaw was denied his right with respect to his criminal matter in a trial court guaranteed by Art. III, § 2, cl. 3 of the U.S. Constitution, with respect to "suits at common law, where the value in controversy shall exceed twenty dollars" by the 7th Amendment. Such right is also preserved by rule of court under Fed. R. Civ. P. 38 and by the 5th Amendment which provides <u>inter alia</u> for indictment by grand jury, and 6th Amendment which contains further specifications as to "public trial" where court is in session and open to the public, was denied. Even the grand jury investigation was fatally flawed in that it was not conducted in a judicial court capable of hearing a bill of indictment read in "open court" with the grand jurors present, because, strictly speaking a court that is open must be in "session," as applied to a <u>court of justice</u> which actually sits and during which it shall be open for the transaction of judicial business. See Black's Law 1371 (6th ed. 1990)(defining "session").

Brokaw's liberty interest is a <u>private right</u>, which is unalienable and absolute, so-called because such a right belongs to particular men, merely as individuals, not depending upon the will of government. Private rights are not subject to waiver or being taken away by government without a forensic hearing in a court of justice.

The Supreme Court of the United States has reminded us that the Founders carried this idea forward into the Vesting Clauses of the Constitution. Those Clauses were understood to play a role in ensuring that <u>courts of justice</u> alone could act to deprive individuals of private rights because the power to act

-26-

conclusively against those rights was the core of the judicial power in adjudicating private rights disputes. Liberty, as Petitioner/Movant has stated is one of those cardinal unalienable rights. It is that basic freedom which the due process clause in the 5th amendment protects, rather than the particular rights and privileges conferred by specific laws and regulations. See Meachum v. Fano, 427 U.S. 215, 230, 49 L.Ed.2d 451, 96 S.Ct. 2532.

The distinction between private rights and public rights is significant to the understanding of U.S. Const. Art. III, for which the legislative and executive branches of government may dispose of public rights at will, including through non-Art. III hearings. However, an exercise of the judicial power is required "when the government want(s) to act authoritatively upon core private rights that had vested in a particular individual." Nelson, Adjudication in the Political Branches, 17 Colum. L. Rev. 559, 567 (2007).

6. **Defendant Brokaw was Punished for a Public Rights Violation of the Revenue Laws in One of the United States District Courts Created Pursuant Act of June 25, 1948, CH. 646 § 1, 62 Stat. 869.**

Petitioner/Movant pointed out that one of the United States District Courts created under that name and enumerated pursuant the aforesaid Act of June 25, 1948, was the United States District Court for the district of Puerto Rico (formerly Porto Rico). See 28 U.S.C. § 119. The Supreme Court of the United States, on more than one occasion, described the character of such district court:

"District court for Porto Rico was a territorial court created under Article IV, Sec. 3, cl. 2, of the Constitution

and was not a true United States Court established under Article III of the Constitution ... . The resemblance of its jurisdiction to that of true United States courts ... does not change its character as mere territorial court." Balzac. v. Porto Rico, 258 U.S. 298, 312; see also Mookini v. United States, 303 U.S. 201, 205; Reynolds v. United States, 98 U.S. 145, 154.

A United States District Court exercises jurisdiction in federal territory and the District of Columbia to serve as military tribunals, and to litigate disputes over "public rights." See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, at 64-70 (plurality opinion). Such court is not a "District Court of the United States," which has its historic significance as a constitutional court created under article 3 of the Constitution. Territorial courts are legislative courts of general jurisdiction, properly speaking, and are not District Courts of the United States. Even though Congress vested territorial courts with similar jurisdiction to that vested in the District Courts of the United States, does not make it a "District Court of the United States." See Mookini, supra, at 205.

Non-Article III United States district courts conducting proceedings within the legislative jurisdiction of any of the fifty States of the American Union, are operating extrajudicially, and all their judgments are void ipso jure. A correct statement of the law is expressed in the universally accepted maxim: Judicium a non suo judice datum est momenti, which translates to "a judgment given by a person who is not its proper judge (not in the proper jurisdiction) is of no consequence."

When a suit is brought and determined in a court which has

-28-

no jurisdiction, then it is said to be <u>coram non judice</u> (in the presence of a person, not a judge) and the judment is void." Black's Law Dict. 337 (6th ed. 1990)(defining "coram non judice").

The decisions, orders and decrees in these Article IV courts are not final judgments that are conclusive as to the rights of the parties, res judicata. They are usurpers of jurisdiction and imposters violating separation of powers, which cannot be consent cured.

7. **Federal Statutes Confirm Brokaw's Trial on Criminal Violations of the Revenue Law Proves the Trial Court of First Instance was a Court Lacking Powers of a Court of <u>Limited Jurisdiction</u> Having Article III Judicial Powers, in Contradistinction to a Court Having only <u>General Jurisdiction</u>, Lacking any Judicial Powers Whatsoever to Issue a Legally Binding Judgment.**

On more than one occasion, the Supreme Court has conclusively affirmed that any statute, state or federal, is intended to be confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power. With respect to the assertion that federal statutes lack extraterritorial application, it held:

"This view accords with the usual canons of construction that <u>all legislation is prima facie territorial</u> (American Banana Co. v. United Fruit Co., 213 U.S. 347, 357, 53 L.Ed. 826, 832, 29 S.Ct. 511, 16 Ann. Cas. 1047; Ex Parte Blain, LR 12 Ch. Div. 522, 528, 4 Eng. Rul. Cas. 1-Ca; State v. Carter, 27 NJL 499), and that the legislation of Congress, unless the contrary intent appears is construed to apply only within the territorial jurisdiction of the United States, particularly where, as here, criminal penalties are involved. Blackmer v. United States, 284 U.S. 421, 437, 76 L.Ed. 375, 382 S.Ct. 252." <u>Vermilya-Brown Co. v. Connell</u>, 355 U.S. 377, 93 L.Ed. 76, 81 (1949).

More recently, the Supreme Court reaffirmed this principle in <u>Bond v. United States</u>, 572 U.S. \_\_\_\_, 134 S. Ct. 2077, 2088, 189 L.Ed.2d 1, 12, 2014 US LEXIS 3988:

-29-

"We presume, absent a clear statement from Congress, the federal statutes do not apply outside the United States. Morrison v. National Australia Bank Ltd., 561 U.S 247, 255, 130 S.Ct. 2869, 177 L.Ed. 535 (2010)." Ibid.

The federal statute, 18 U.S.C. § 371, under which Petitioner/Movant was prosecuted discloses no intention of Congress to give it extraterritorial effect in Colorado Springs, where he was domiciled for at least 10 years and at the time of prosecution, within the legislative jurisdiction of Colo. state. Furthermore, where the states have broad powers to enact legislation for the public good, called a "police power," the Federal government, by contrast has no such power. For nearly two centuries it has been clear that lacking a police power, Congress cannot punish felonies generally. See Bond, supra, at 134 S.Ct. 2086. The Constitution enumerates only four provisions wherein the Framers delegated to Congress the power to punish: (1) counterfeiting the Securities and current Coin of the United Stes, (2) Piracies and Felonies committed on the high Seas and (3) offenses against the Law of Nations, and (4) Treason. As Chief Justice Marshal stated, "It is a rule of construction, acknowledged by all, that the exceptions from a power mark its extent." Gibbons v. Ogden, 9 Wheat. 1, 189-191 (1824)(emphasis added).

Title 18 U.S.C. § 3231 provides original jurisdiction to the United States district courts over all offenses against the United States, exclusive of the courts of the states. Original, exclusive jurisdiction is synonymous with legislative jurisdiction. "Most federal crimes are codified in title 18 of United States Code, though other Code titles also include specific crimes." Black's Law Dict. 611 (6th ed. 1990)(defining

"federal crimes"). Such exclusive jurisdiction extends to crimes established by provisions of the Internal Revenue Code. See United States v. Tedder, 787 F.2d 1328, 1329-30 (7th Cir. 1984); United States v. Koliboski, 732 F.2d 978, 980-81 (8th Cir. 1983), cert. denied sub nom, 464 U.S. 942 (1983).

Title 26 U.S.C. § 7402 provides for and defines the jurisdiction of the district courts "[t]o issue orders, processes, and judgments" necessary or appropriate for enforcement of the the internal revenue laws. Subparagraph (f) (General jurisdiction), defines the general jurisdiction of the district courts of the United States in civil actions involving internal revenue under section 1340 of title 28 of the United States Code, which provides "[t]he district courts have original jurisdiction of an civil action arising under any Act of Congress providing for internal revenue... ." The grant of original jurisdiction under 28 U.S.C. § 1340 is a grant of general jurisdiction. See State Marine Lines, Inc. v. Shultz, (1973, DC SC) 359 F.Supp 512; Mill Factors Corp. v. United States, (1975, SD NY) 391 F.Supp 387, 74 USTC-1 ¶ 9334, 35.

This proves conclusively that Brokaw's prosecution, trial, conviction and condemnation to imprisonment of 78 months by the United States District Court, District of Colo., Denver Division was/is a court of court of general jurisdiction lacking judicial powers of an U.S. Const. Art. III court of justice, litigating matters of governmental public right, unlawfully, under constitutional prohibition of a bill of pains and penalties, to the exclusion of his private rights to liberty and property. Such court was incapable of conducting proceedings as a

step taken in the prosecution or defense of an action, suit or civil action taken in a <u>court of justice</u> for the determination of a case or controversy, in a legally constituted court capable of dispensing **due process of law** and having judicial authority to render an authentic decision or judgment capable of binding parties before it.

The Supreme Court decision in <u>United States ex rel. Toth v. Quarles</u>, 350 U.S. 11, 100 L.Ed 8, 76 S.Ct 1 (1955) confirms there are severe limits on Congress' authority to displace Art. III courts. The Court emphasized that "[t]he provisions of Article III were designed to give judges maximum freedom from possible coercion or influence by the executive or legislative branches of the Government." Id., at 16, 100 L.Ed 8 76 S.Ct 1. Accordingly, Congress' power to circumvent criminal trials in Art. III tribunals would not "be inferred through the Necessary and Proper Clause," but would instead call "'for limitation to the least possible power adequate to the end proposed.'"id., at 22-23, 100 L.Ed 8, 76 S.Ct 1 (emphasis omitted), quoting <u>Anderson v. Dunn</u>, 6 Wheat 204, 231, 5 L.Ed 242 (1821). Quarles and its progeny foreclose the conclusion that Congress may use its. Art. I powers to create legislative tribunals such as Article IV courts to divest Art. III courts of their authority to conduct federal criminal proceedings. See <u>United States v. Raddatz</u>, 447 U.S. 667, 706-708 (1980). It is the sole business of Article III courts to try cases and controversies between individuals and the government on criminal cases.

Petitioner/ Movant Brokaw was impermissbly tried in a court without judicial powers and jurisdiction to deprive him of

his private rights of liberty and property, thereby rendering any judgment of conviction issued, _void_ ab initio, and his imprisonment unlawful and beyond the pale of justice.

## III.
### GROUND THREE

Violations of Acts of Congress arising under the revenue laws authorize seizures on land mandating proceedings in rem under admiralty, subjecting any taking to Judicial courts having common-law jurisdiction and constitutional trial by jury.

Admiralty in rem proceedigs for violations of Acts of Congress arising under the revenue laws authorizing takings and seizures on land against property (the "res") require plaintiff's compliance with Civil Rules of Procedure and Supplemental Rules for Certain Admiralty and Maritime Claims mandatory. Plaintiff's non-compliance with such rules subjects plaintiff's cause to mandatory dismissal under Fed. R. Civ. P. 41(b), and renders such cause a non-suit. Any judgment issued under a condition precedent of non-complaince with court's rules is void, ab initio. All federal prosecutions on revenue matters in contemporary United States district courts enumerated in title 28 U.S.C. §§ 81 et seq., are void for lack of jurisdiction over the defendant and the subject matter.

### A.
### All Law Relates to "Persons," "Things," or to "Actions"

Various Roman and English jurists tell us that "all law relates either to persons, to things, or to actions. Black's Law Dict. 1304 (6th ed. 1990)(defining "res").

1. **Persons.**

"Person. In general usage, a human being (i.e. natural person) though by statute term may include ... corporations,

legal representatives, trustees ... ." Black's Law Dict. 1142 (6th ed. 1990)(defining "person").

**"Corporation.** A corporation is a "person" within meaning of Fourteenth Amendment equal protection and due process provisions of United States Constitution. In corporate law, "person" includes individuals and entity. Rev. Model Bus. Corp. Act, § 140." id.

**"Illegitimate child.** Illegitimate children are "persons" within meaning of Equal Protection Clause of Fourteenth Amendment. <u>Levy v. Louisiana</u>, 391 U.S. 68, 88 S.Ct 1509, 1511, 30 L.Ed.2d 436." id.

2.   <u>**Things.**</u>

In the civil law, a <u>thing</u>, an <u>object</u>, is called the "<u>res</u>," which is Latin referring to "the subject of a trust." "<u>Res</u> is everything that may form an <u>object of rights</u> and includes an <u>object</u>, <u>subject-matter</u> or <u>status</u>." Black's Law Dict., supra, defining "res." (emphasis added).

The term "object" means the end or design meant to be accomplished differing from the subject which is the mattter to which it relates. So, the <u>object of rights</u> is the end or design meant to be accomplished as it relates to the subject-matter of rights. Thus, <u>res</u> is everything perceived by the mind or senses used by design to accomplish the ends embracing the subject-matter of rights.

<u>Things</u> represent "[t]he objects of dominion, or property as contradistinguished from 'persons.' The <u>object of a right</u>; i.e., whatever is treated by the law as the object over which one person exercises a right, and with reference to which another person lies under a duty." Black's Law Dict. 1479 (6th ed. 1990)(defining "things"). Things can be either tangible or intangible.

3.   <u>**Actions.**</u>

-34-

Law also relates to <u>actions</u>. This means conduct, behavior, or something done, the condition of acting; an act or series of acts. Such acts might relate to acts embracing some civil or criminal liability for a breach of the law. "Liability" is "the state of being bound or obliged in law or justice to do something which may be enforced by action; unliquidated claim." Black's Law Dict. 914 (6th ed. 1990)(defining "liability").

The term "'action' in its usual legal sense means a lawsuit brought in court; a formal complaint within the jurisdiction of a <u>court of law</u>. The legal and formal demand of one's rights from another person or party made or insisted on in a <u>court of justice</u>. An ordinary proceeding in a <u>court of justice</u> for the protection of a right, the redress or prevention of a wrong, or the punishment of a <u>public offense</u>." Black's Law Dict. 28 (6th ed. 1990)(defining "action")(emphasis added).

## B.
## The Forms of Action

The forms of action dealing with certain bodies of law are actions at law (common law), equity and admiralty law, which have, since the effective date of the Unification Act of July 1, 1966, been merged into one form of action, which was to effect unification of civil and admiralty procedure. Just as the 1938 rules abolished the distinction between actions at law and suits in equity, this change would abolish the distinction between civil actions and suits in admiralty. See Notes of Advisory Committee on 1966 Amendments. There is now just one form of action called a "civil action" brought to enforce, redress or protect rights. See Fed. R. Civ. P. 2.

-35-

A ground for a legal action called a "civil action" is denominated a "cause" which is a "suit," litigation or action involving any question, civil or criminal, contested before a court of justice, which is court having constitutional judicial powers under U.S. Const. Art. III, § 2, cl. 1, which Petitioner/Movant has discussed at length under Ground II of this Memorandum.

## 1.   Actions are Lodged Against Persons or Property.

Actions are lodged against persons or property. "Actions seeking judgment against a person involving his personal rights and based on jurisdiction of his person [in personam jurisdiction], as distinguished from a judgment against property (i.e. in rem)." Black's Law Dict. 791 (6th e. 1990)(defining "in personam"). "In rem jurisdiction refers to an action that is taken directly against the defendant's property." Black's Law Dict. 794 (6th ed. 1990)(defining "in rem jurisdiction"). An in rem proceeding is one which is brought to enforce a right in the thing itself. "'In rem' proceedings encompass any action brought against person in which essential purpose of suit is to determine title to or to affect interests in specific property located within territory over which court has jurisdiction." Black's Law Dict. 793 (6th ed. 1990)(defining "in rem").

As discussed above, a "thing" is called the "res" which can be a trust, property or status. A "judgment in rem [is] an adjudication [under admiralty] pronounced upon the status of some particular thing or subject matter, by a tribunal having competent [judicial] authority. Black's Law Dict. 845 (6th ed. 1990)(defining "judgment in rem"). An in rem proceeding is an

action to enforce a right in the thing itself. "Things in action is a right to recover money or other personal property by judicial proceeding." Black's Law Dict. 1479 (6th ed. 1990)(defining "things in action"). "[T]he court is required to have control of the thing or object which binds the whole world and not simply the interests of the parties to the proceeding." id.

## 2. The Designation of Things for an In Rem Action.

It is important to note that in the court caption of legal matters, the name of a thing is written in "[t]he heading or introductory part of a pleading, motion, deposition, or other legal instrument which indicates the names of parties, name of the court, docket or file number, title of the action, etc. Fed. R. Civ. P. 10(a)." Black's Law Dict. 212 (6th ed 1990)(defining "caption"). The word "caption" comes from the Latin word "captio," which means "a taking or seizure; arrest; receiving; holding of court." Black's Law Dict. 212 (6th ed. 1990)(defining "captio").

In any action against a thing, the name of the thing has an assumed name or fictitious name, because it is not a natural person that can have a Christian or given name and one surname or family name. A name is "[t]he designation of an individual person [natural person], or of a firm or corporation [a legal fiction], used to distinguish person or thing or class [status]." Black's Law Dict. 1023 (6th ed. 1990)(defining "name").

Status designates "[t]he legal relation of individual to rest of the community. The rights, duties, capacities and incapacities which determine a person to a given class. A legal

-37-

personal relationship, not temporary in its nature nor terminable at the mere will of the parties, with which third persons and the state are concerned." Black's Law Dict. 1410 (6th ed. 1990)(defining "status").

The way fictions are distinguished from natural persons is typically with the spelling of a name orthographicallly, employing the rules of the English language. Under such rules, names of natural persons are written in upper and lower case letters, as in **John James Doe**, as opposed to the fictional or assumed name of a trust having the same name, which is written in total capital letters as **JOHN JAMES DOE**, a Trust. The trust corpus is written as **JOHN JAMES DOE**.

A "fictio," under Roman Law, is a fiction; an assumption or supposition of the law. Such was a term of pleading, and signified a false averment on the part of the plaintiff which the defendant was not allowed to traverse ... . The object of the fiction was to give the court jurisdiction." Black's Law Dict. 623 (6th ed. 1990)(defining "fictio").

Under admiralty law the res or thing must be seized, arrested, or held by the court. As already pointed out, the heading of the first pleading is called the "caption" which comes from the Latin word "captio," which is indicative of "[t]he arrest or seizure of a person by legal process." See Black's Law Dict. 203 (7th ed. 1999)(defining "caption").

The name of the defendant is styled in total capital letters, which is the assumed name of a fiction, thing, or res, having corporate capacity or status. Such is indicative of an in rem action in admiralty as opposed to a personal action.

-38-

### C.
### Action In Rem for Violation of the Revenue Laws on Land Subjects the Res to Seizure & Condemnation In Common-Law Jurisdiction of a Court of Justice With Trial By Jury

The judgment and sentence of a court having jurisdiction for the violation of the revenue laws and acting in rem under such cause, authorizes the taking and forfeiture of proptery to the government, which process is called "condemnation." "The acts of Congress, under which it is instituted, provide that property seized under these laws may be condemned in the district court." Page v. United States, 78 U.S. 268, 20 L.Ed 135, 136 (1871). The "district court" referenced here was called "District Court of the United States," which was the one created under the Judiciary Act of 1789 and the First Congress, which was an Article III, judicial court, unlike the non-judicial trial court of today called a "United States District Court," created pursuant the Act of June 25, 1948.

According to Black's Law Dictionary:

"The judgment or sentence of a court having [admiralty] jurisdiction and acting in rem, by which ... that property seized for an alleged violation of the revenue laws, etc., was lawfully seized, and is, for such cause, forfeited to the government." Black's Law Dict. 292 (6th ed. 1990)(defining "condemnation under admiralty law")(emphasis added).

### 1.    The Res as a Trust.

The name of a "taxpayer" under the revenue laws is written in all capital letters. Taxpayers are typically identified by their social security number. Social security is a national program of contributory social insurance where contributions are pooled in special trust funds. The name of the beneficiary of a trust is written in all capital letters. The name is the res or

the subject matter of a trust, specifically a cestui que vie trust for the life of the beneficiary, "the person for whose benefit a trust is created or who is to enjoy the income or the avils of it." Black's Law Dict. 1510 (6th ed. 1990)(defining "cestui que trust"). See also Black's Law definition of "cestui que vie trust" at p. 229.

2. **How Principles of Equity may Apply.**

With respect to revenue matters, the "taxpayer" is holding money owed to another (the U.S. Government) and has a fiduciary duty to file returns and pay any tax owed to the government. This is a trust relationship where the taxpayer assumes the role of a trustee. It is a voluntary trust, not an express trust. In the sense it arises by operation of law, it is a "constructive trust."

Paying taxes is a business transaction. "Whenever circumstances of a transaction are such that the person who takes the legal estate in property [taxes owed] cannot enjoy the beneficial interest without violating some established principle of equity, the court will immediately raise a constructive trust, and fasten it upon the conscience of the legal owner, so as to convert him to a trustee for the parties who in equity are entitled to the beneficial enjoyment." Black's Law Dict. 1510 (6th ed. 1990)(defining "constructive trust")(emphasis added). Such trusts arise by operation of law, and fraud, active or constuctive, as to their essential element. It comprehends the acquisition of property wrongfully for which a constructive trust arises to prevent the wrongful holder from unjust enrichment. Equitable estoppel applies and the accused is not allowed to

-40-

traverse the presumption.

3.   **Only Courts Having Judicial Powers Have Jurisdiction to Entertain In Rem Proceedings in Admiralty.**

Admiralty and equity courts are judicial courts under Art. III, § 1 and § 2. No other court can apply the principles thereunder. Article I courts, which include Article IV courts, lack powers under equity or admiralty and therefore, lack <u>subject-matter jurisdiction</u> to hear any litigation involving revenue matters. They entertain such matters at their own peril because **all of their judgments are void**, ab initio.

D.
<u>Civil Rules of Procedure & Supplemental Rules of Admiralty Must be Complied with to Prevent Court from Losing jurisdiction</u>

Title 28 U.S.C. §§ 2071-2074 provide applicability of Federal Rules of Civil Procedure to U.S. district courts and courts of appeal. Supplemental Rules for Certain Admiralty and Maritime Claims also apply. For actions in rem, Supplemental Rules apply as well as Rule of Civil Procedure where they are not inconsistent. See Supplemental Rule A(2); Fed. R. Civ. P. 1. Where Supplemental Rules conflict with Civil Rules, <u>Supplemental rules trump</u>. <u>Slaven v. BPAm., Inc.</u>, (C.D. Cal. Feb. 7., 2000), 190 FRD. 649.

1.   **Involuntary Dismissal for Plaintiff's Failure to Follow Rules of Procedure.**

Failure of plaintiff to prosecute or comply with rules of procedure for purposes of delay or contumacious conduct that threatens the integrity of proceeding, often to the prejudice of the defense, plaintiff is <u>subject to involuntary dismissal</u>, with prejudice under **Fed. R. Civ. P. 41(b)**. This is called a "judgment of non-suit." See Black's Law Dict. 1058 (6th ed. 1990)(defining

"nonsuit"). Such dismissal is involuntary with or without motion of defendant or the court, sua sponte. Under the framework of Fed. R. Civ. P. 1, the rules shall be construed to secure just determination of every action inherent in court's interest of orderly administration of justice.

2.  **Complaint to be Valid Must be Verified and Made upon Oath of Plaintiff Before a Magistrate.**

In the federal courts, a complaint is to be made upon <u>oath</u> before a magistrate. Fed. R. Crim. P. 3. If it appears from the complaint that probable cause exists and the person named in the complaint committed the alleged crime, a warrant (q.v.) for his arrest will be issued. Fed. R. Crim. P. 4. An "<u>oath</u>" is "[a]n affirmation of truth of a statement, which renders one willfully asserting untrue statements punishable for perjury." Black's Law Dict. 1071 (6th ed. 1990)(defining "oath"). This is called "<u>verification</u>," which is "[c]onfirmation of correctness, truth, or authenticity by affidavit, oath, or deposition. For example, a "<u>verified complaint</u>" typically has an attached affidavit of plaintiff to the effect that the complaint is true." Black's Law Dict. 1561 (6th ed. 1990)(defining "verification").

Under Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C(2), in an action in rem, the complaint must:

    (a) be <u>verified</u>;
    (b) describe with reasonable particularity the property (res) as the subject of the action; and
    (c) state that the property (res) is within the district or will be within the district while the action is pending.

When a <u>verified complaint</u> is submitted into court, judicial authorization for arrest or seizure of the res is issued under Supplemental Rule C(3). Furthermore, a person who asserts a right of possession or any ownership interest in the property (the res)

-42-

must file a <u>verified statement of right of interest</u> within 14 days of execution of process or within time that the court allows. The <u>statement of right of interest</u> must describe the interest in the property that supports the persons demand for its restitution. Please refer to Suplemental Rule C.

"An indictment is merely a charge which must be proved at trial beyond a reasonable doubt before defendant can be convicted. An indictment is only an accusation; it is the physical means by which a defendant is brought to trial. Its sole purpose is to identify defendant's alleged offense, and it is not to be considered as evidence by the jury during its deliberations." See "Indictment," Black's 6th, p. 772.

The aforesaid constitutional infirmities were even further compounded in 1985 with additional amendments preserving the special procedures of arrest and attachment unique to admiralty law. Because the rules had been challenged as violating the principles of procedural due process enunciated in the Supreme Court's decision in <u>Sniadach v. Family Finance Corp.</u>, 395 U.S. 337 (1969), and later developed in <u>Fuentes v. Shevin</u>, 407 U.S. 67 (1972); <u>Mitchell v. W.T. Grant Co.</u>, 416 U.S. 600 (1974); and <u>North Georgia Finishing, Inc. v. Di-Chem., Inc.</u>, 419 U.S. 601 (1975). These Supreme Court decisions provide five basic criteria for a constitutional seizure of property: (1) <u>effective notice to persons having interests in property seized</u>, (2) <u>judicial review</u> prior to attachment, avoidance of conclusory allegations in the complaint, (4) <u>security posted by the plaintiff</u> to protect the owner of the property under attachment, and (5) a meaningful and timely hearing after attachment.

There is absolutely no evidence in current in rem seizures on land for violations of the revenue laws demonstrating plaintiff's compliance with rules of procedure, either civil or

-43-

Supplemental Admiralty rules or with the aforesaid criteria established for constitutional seizure of property, the res.

3. **Plaintiff's Prosecution of Petitioner/Movant and Defendant, George Thomas Brokaw, Concerning Alleged Violations of the Revenue Laws, was Never in Compliance with Rules of Procedure Applicable to Actions In Rem, Rendering the Trial Court Without Jurisdiction to Decide the Matter Brought Before it, Thereby Making the Judgment of Conviction VOID, Ab Initio, and Subsequent Imprisonment Unlawful.**

It is patently obvious that in an action in rem, when the plaintiff by and through its attorney does not comply with the Federal Rules of Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims, the plaintiff's case is subject to involuntary dismissal under Fed. R. Civ. P. 41(b). Failure to file a verified complaint, a verified statement of interest or post a security to protect the owner of the property under attachment, threatens integrety of proceedings and deprives the court of jurisdiction to enter any judgement that can bind parties. Any judgment rendered through court's usurpation of jurisdiction is VOID, ab initio, and must be set aside pursuant Federal Rules of Civil Procedure 60(b). See Citi-Mortgage v. Paniagua-Latimer, (D.P.R. Dec. 27, 2010) 756 F. Supp 2d 211; United States v. 84,750.00 U.S. Currency, (9the Cir. Cal. Apr. 16 (1990), 900 F.2d 1402.

Finally, any action in rem under admiralty for a violation of the revenue laws, or any act of Congress, mandating seizure of property on land, can only be heard in a court having common-law jurisdiction, called a court of justice having Article III judicial powers and requiring constitutional trial by jury. Any other court or fake jury of special commissioner in an Article IV legislative/territorial court is void for lack of jurisdiction,

to wit;

> "'The judgment of conviction pronounced by a court without jurisdiction is void ... .' Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct 1019, 1025, 82 L.Ed 1461' ... if it shall appear that the (trial) court had no jurisdiction to render the judgment ... it will be the duty of this Court to his (habeas corpus petitioner) discharge.'" Ex Parte Bain, 121 U.S. 1, 7 S.Ct 781, 782, 30 L.Ed 849.

## IV
## GROUND FOUR

Circumstance of being tried in a court lacking judicial powers to deprived the defendant in this case of his private rights to liberty and property, without any objection of court appointed counsel, to either the court's lack of jurisdiction or court's failure to enforce rules of procedure against Plaintiff's contumacious conduct of failure to comply with the rules of court, justify presumptiveness of <u>ineffective assistance of counsel</u> under U.S. Const., Amendment 6.

## A.
## <u>Sixth Amendment Right to Counsel Exists in Order to Protect the Fundamental Right to a Fair Trial</u>

The Supreme Court of the United States emphasized that Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." <u>Strickland v. Washington</u>, 466 U.S. 688, 684, 80 L.Ed.2d 674, 104 S.Ct 2052. The benchmark of the right to counsel is "the fairness of the adversary proceeding." <u>United States v. Cronic</u>, 466 U.S. 648, 653, 80 L.Ed.2d 657, 104 s.Ct. 2039 (1984).

Resort to a law dictionary provides further enlightenment:

> "**Trial.** A <u>judicial examination</u> and determination of issues between parties to action, whether they be issues of law or of fact, before a court that has jurisdiction." Black's Law Dict. 1504 (6th ed. 1990)(defining "trial").

> "**Trial by jury.** A jury for the trial of a cause was [is] a body of twelve men described as upright, well-qualified, and

-45-

lawful men ... duly impanelled under the direction of a <u>competent court</u> sworn to render a true verdict according to the law and the evidence given them ... ." black's Law Dict. 1505 (6th ed. 1990)(defining "trial by jury")(emphasis added).

Black's Law Dictionary further tells us that a <u>"competent court</u> is "[a] court that has the power and authority ... recognized by law as possessing the right to adjudicate a controversy." Black's Law Dict. 406 (9th ed. 2009)(defining "court of competent jurisdiction"). Only an Article III judicial <u>court of justice</u> is court competent by the "case or controversy" requirement under U.S. Const. Art. III, § 2, cl. 1.

Defendant Brokaw was not tried in a court of competent jurisdiction by a constitutional jury capable of rendering a fair verdict that was reliable and not suspect.

Court appointed counsel was so ineffective he was incapable of counseling defendant at any critical stage of the proceedings. He was unable to discern the nature and cause of the action against the accused as an action in rem under admiralty or provide adversarial confrontation that was meaningful. He provided no bona fide defense to the charge against Defendant Brokaw and instead created one by attempting a useless charade, failing to hold the prosecution to its heavy burden of proof beyond a reasonable doubt to survive the crucible of meaningful adversarial testing envisioned by the Sixth Amendment. Counsel failed to exercise the skill, judgment, and diligense of a reasonably competent defense attorney. To hold otherwise is to "convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that the accused be given the assistance of counsel. The

constitutional guarantee of assistance of counsel cannot be satisfied by mere formal appointment." <u>Avery v. Alabama</u>, 308 U.S. 444, 446, 84 L.Ed 377, 60 S.Ct 321 (1940).

No amount of showing of want of prejudice would cure counsel's ineffective assistance. The result of the sentencing proceeding in the present case was neither fair nor reliable to produce anything other than an unjust result, that was neither constitutional nor binding.

## RELIEF REQUESTED

THEREFORE, Petitioner/Movant respectfully requests this Court mandate and secure his release from the Federal Correctional Institution-Englewood Satellite Camp in Littleton Colorado, immediately. Petitioner believes relief should not be limited to mere release from prison confinement alone. Petitioner has been damaged in his person, property and reputation and is entitled to compensatory and punitive damages for the outrageous conduct of certain departments of the Federal government, violative of Petitioner's constitutional rights, loss suffered as well as pain and suffering. Such compensatory damages reasonable to be damanded for false imprisonment itself and the mental anguish Petitioner has suffered should be guided by principles enunciated by the U.S. Court of Appeals for the 11th Circuit in <u>Tresevant v. City of Tampa</u>, 741 F.2d 336; 1984 U.S. App. LEXIS 18863.

In addition to compensatory damages, Petitioner is entitled to exemplary or punative damages for the wantonly malicious, reckless and oppressive wrongs complained of. Also where false claims have been asserted that Petitioner requested refund money

-47-

owed to the United States for income taxes owed by Petitioner's co-defendants, accused as being co-conspirators, Petitioner is entitled to treble damages.

SUBMITTED this _15th_ day of January, 2018 as true and correct to the best of my knowledge, with no intent to falsify or mislead and signed with unsworn declaration under penalty of perjury under the laws of the United States of America.

ALL RIGHTS RESERVED,

By: _George Thomas Brokaw_
Autograph for:
George Thomas Brokaw

-48-